Matthew T. Christensen, ISB: 7213
ANGSTMAN JOHNSON
199 N. Capitol Blvd, Ste 200
Boise, Idaho 83702
Telephone: (208) 384-8588
Facsimile:  (208) 629-2157
Email: mtc@angstman.com

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>BEST VIEW CONSTRUCTION & DEVELOPMENT, LLC,<br><br>    Debtor. | Case No. 20-00674-JMM<br>Chapter 11<br><br>MOTION FOR LEAVE TO INCUR SECURED INDEBTEDNESS & PAY CERTAIN POST-PETITION OBLIGATIONS |

The Debtor, Best View Construction & Development, LLC ("Best View"), by and through its attorney of record, ANGSTMAN JOHNSON, moves the Court for an order allowing Debtor to incur additional secured indebtedness with BRMK Lending, LLC ("Broadmark").  This Motion is made pursuant to 11 USC§364(c)(2) and (3), FRBP 4001, and LBR 4001.1.  This Motion is supported by the Affidavit of Gaven King in Support of Motion for Leave to Incur Secured Indebtedness ("King Affidavit"), filed contemporaneously and to which are attached the exhibits identified in this Motion.

**INTRODUCTION**

Best View seeks this Court's authorization to obtain additional credit from Broadmark in the approximate amount of $1,500,000.00 at 12.00% interest, for credit to complete the remaining

MOTION FOR LEAVE TO INCUR SECURED INDEBTEDNESS & PAY CERTAIN POST-PETITION OBLIGATIONS – PAGE 1
Matter: 9670-001

construction required on the Debtor's property.  Best View estimates the total needed will be as stated in the budget, attached as Exhibit A to the King Affidavit.  The credit will be extended to Best View, with a personal guarantee from King.  Funds from the financing will also be used to pay certain post-petition construction obligations.

## BACKGROUND

The Debtor expects total revenue of $4,350,000.00 from the sale of the Property being constructed using the loan proceeds.  Repayment of the post-petition loan (and the existing pre-petition loan amounts) will be made from the sale of each parcel, with partial payments and partial releases at the time each property closes.  The term of the post-petition funding will be approximately six months, and will mature on September 31, 2021.

Best View and Broadmark have a pre-petition lending relationship.  On or around September 30, 2019, Broadmark agreed to lend Best View up to $1,780,000.00 as a "line of credit" to complete construction of the projects.  On the petition date, Best View had withdrawn approximately $1,021,399.95 of the pre-petition loan amount.  The terms of the remaining borrowing will be similar to the terms of the pre-petition loan (with the exception of the maturity date and monthly interest payments.)  Broadmark will retain the security interest (and priority) it currently holds on the Debtor's property related to the pre-petition loan.  Broadmark will also be provided a "superpriority" first position lien on the real property to secure the post-petition financing.

There are certain additional creditors with a security interest against various parcels owned by the Debtor.  Those creditors hold security interests which are likely senior to Broadmark's pre-petition lending.  To the extent those security interests are senior to Broadmark's pre-petition lending, those interests will be *junior* to Broadmark's post-petition lien.  To the extent the secured

creditors position is junior to Broadmark's pre-petition loan, that interest would be affected by the post-petition Broadmark loan.  However, to the extent those creditors hold junior positions to Broadmark, they hold those positions subject to notice that Broadmark had a senior lien of up to $1,780,000.00.

In addition to Broadmark, the Debtor also sought funding from a different lending source, and the potential Buyer's funding source.  In all cases, the potential lenders were not willing to make an unsecured loan and would require a first position lien priority in order to make the loan.  Accordingly, the Debtor is confident there is not alternative financing available on better terms (i.e., lower-priority lien amount or no lien at all)  to what Broadmark is willing to offer.

To secure the post-petition loan, Best View will grant Broadmark a new lien to secure the post-petition financing, with all post-petition financing to be secured by a first-position lien on all six lots.  Additionally, the existing personal guarantee from Gaven King will also guarantee the post-petition funds provided by Broadmark.

Best View believes that, in its best business judgment, this financing is in the best interest of the estate, the Debtor, and all of the creditors.  Best View's proposed Chapter 11 Plan depends on proceeds from the sale of completed four-plexes, which will not be realized without the continuing financing from Broadmark and completion of the project.  If the Debtor is unable to accept and use the post-petition Broadmark loan proceeds, it will be unable to continue its operations and complete the construction of the project, which will be a significant loss for the Debtor's creditors and stakeholders.

# **ARGUMENT**

The Debtor requests an order authorizing the Debtor to borrow the post-petition Broadmark loan funds.  The Broadmark loan will be secured financing that primes all existing liens on the property.  Under Section 364(c) and (d), the Debtor may obtain post-petition financing:

> (c) If [the Debtor in Possession] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt
> …
>
> (d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
>
> (A) the [Debtor in Possession] is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
> …

11 U.S.C. § 364(c) and (d).

As required by LBR 4001.1, Best View represents the following:

> *(1) Identity of the lender, vendor or other creditor (hereafter "creditor") and relationship, if any, of the creditor to the debtor.*

The name and address of the lender is BRMK Lending, LLC, c/o Pyatt Broadmark Management, LLC, 1420 Fifth Avenue, Ste 2000, Seattle, WA 98101.  There is no relationship between the Debtor and Broadmark except debtor-creditor, including the pre-petition debtor-creditor relationship.

> *(2) If funding is to be incremental, timing of funding or method by which funding is to be determined.*

Loan funds will be disbursed as the Debtor requests, usually according to the budget attached here as Exhibit 1.

MOTION FOR LEAVE TO INCUR SECURED INDEBTEDNESS & PAY CERTAIN POST-PETITION OBLIGATIONS – PAGE 4
Matter: 9670-001

(3) *A line-item budget listing projected income and expenses for an appropriate period given the request made. If interim financing is requested, the budget shall also include projected income and expenses until the time of the final hearing on the motion.*

See Exhibit A attached to the King Affidavit.

(4) *If the creditor is a pre-petition creditor, the following information: (A) the balance owed to the creditor, as of the date the petition was filed, including any accrued, unpaid interest, cost or fees provided in the agreement; (B) If the lender is secured by receivables, an accounts receivable aging statement; (C) A description of the collateral which allegedly secured the creditor's claims, an estimate of its fair market value, and the basis of the estimate.*

Broadmark is a pre-petition creditor. It has previously advanced funds which are currently due and form the basis of its pre-petition claim. Its pre-petition claim, on which both Best View and Gaven King are liable, is estimated to be $1,028,828.50. Broadmark is not secured by anything other than the personal guarantee and the existing lien on the real property. The actual fair market value of the collateral will be continually increasing as the construction is complete. At completion, the value of the collateral will be $725,000.00 per lot ($4,350,000.00) total.

(5) *A description of the collateral, if any, to secure the post-petition financing, and the current fair market value of that collateral.*

The collateral for the post-petition financing is the same as the pre-petition financing (with the addition of one lot that does not secure the pre-petition loan); personal guarantee and lien on real property. As stated above, the as-finished value of the real property is $4,350,000.00.

(6) *If any other entity has, or claims, an interest in the collateral proposed to secure the post-petition credit or financing, (A) the balance owed to that entity; (B) Whether the interest of that entity is to be subordinated to the post-petition financing, and if so (i) Whether the subordinated entity has consented; or (ii) in the absence of consent, how the interest of that entity is to be adequately protected.*

Several other parties claim an interest in the various lots being provided as collateral. In some cases, those liens may hold priority positions higher than Broadmark's pre-petition lien, and

in some cases lower. Those parties are Susan Perry ($125,000 position in Lot 2; $25,000.00 position in Lot 3); Sherman Liebow ($125,000.00 position in Lot 4) and Josiah Silva Trust ($400,000.00 position in Lot 5). Those creditors will retain their same lien as they held on the petition date. It is believed that each of these vendee liens are senior in priority to Broadmark's pre-petition claim. These liens will be affected and subordinated to the new funding from Broadmark, thus leaving these vendee lien holders junior to Broadmark's post-petition financing. These vendee lien holders have not consented to subordinate their position to Broadmark's post-petition financing. However, the value of the individual real property lots will sufficiently secure both Broadmark's post-petition lending, and the remaining vendee lien claims. (See the simultaneously-filed Motion to Approve Sale of Property for an outline of proposed sale disbursements showing the projected payment of these liens.)

In addition to the vendee liens, there are certain creditors who have claimed contractor's liens in the various property. None of these lienholders have consented to subordinate their liens. Those lien claims, as well as the Debtor's comments on the validity of the liens, are as follows:

| **Lien Claimant** | **Lien Date** | **Debtor's comments** | **Adequate Protection Status** |
|---|---|---|---|
| Professional Construction Services | August 12, 2019 | Debtor has objected to claim. If valid, secured amount is approximately $4600. Lien is claimed on Lot 6 only. | Secured interest will be junior only to Broadmark's post-petition financing and will remain fully secured. |
| Pro Con Homes | Feb 4, 2020 | Debtor has objected to claim, both in substance and for not having a valid legal description. If valid, the lien is junior to Broadmark's pre-petition lien as well as the vendee liens | Due to the existing status of the contractor's lien, the Debtor does not believe the existing lien status has any value. Nonetheless, the total value of the lots securing this |

MOTION FOR LEAVE TO INCUR SECURED INDEBTEDNESS & PAY CERTAIN POST-PETITION OBLIGATIONS – PAGE 6
Matter: 9670-001

| | | applicable to Lots 2, 4, and 5. | lien (2, 4, 5 and 6) is sufficient to secure the lien value as properties are completed. |
|---|---|---|---|
| Nalin Enterprises | April 2020 | Debtor has objected to claim, both in substance and for not having a valid legal description. If valid, the lien is junior to Broadmark's pre-petition lien as well as the vendee liens applicable to Lots 3, 4, and 6. | Due to the existing status of the contractor's lien, the Debtor does not believe the existing lien status has any value. Nonetheless, the total value of the lots securing this lien (3, 4, 5 and 6) is sufficient to secure the lien value as properties are completed, if the lien is determined to be valid. |
| ABC Supply | March 2020 | Debtor has objected to claim, both in substance and for not having a valid legal description. If valid, the lien is junior to Broadmark's pre-petition lien as well as the vendee lien applicable to Lot 6. Further, this claim is duplicated by the Nalin Enterprises claim listed above. | Due to the existing status of the contractor's lien, the Debtor does not believe the existing lien status has any value. Nonetheless, the total value of the lot securing this lien is sufficient to secure the lien value as properties are completed, if the lien is determined to be valid. |

MOTION FOR LEAVE TO INCUR SECURED INDEBTEDNESS & PAY CERTAIN POST-PETITION OBLIGATIONS – PAGE 7
Matter: 9670-001

> *(7) A statement of whether or not the debtor proposes any provision contained in the Guidelines Regarding Motions to Use Cash Collateral or to Obtain Credit, or Stipulations Regarding the same which is other than a provision normally approved.*

Bestview proposes a post-petition super-priority lien be provided to Broadmark. That post-petition lien will be a separate lien from the lien Broadmark held pre-petition for its pre-petition claim. These provisions may impact paragraphs (b)(4), (5), and (15)[1] of the Guidelines.

Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money. *See Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod, Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). As one court has noted, "[m]ore exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985). Bankruptcy courts generally defer to the business judgment of a trustee or a debtor in possession regarding the need for and the proposed use of funds unless such decision is arbitrary and capricious. *See In re Curlew Valley Assocs.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981).

Courts generally will not second-guess a Debtor-in-Possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." *Id.* at 513-14 (footnotes omitted). Under section 364(c), a debtor may, in the exercise of its business judgment, incur secured debt if the debtor has

---

[1] Only to the extent the Debtor proposes to use post-petition financing to pay certain post-petition debts incurred.

been unable to obtain unsecured credit and the proposed borrowing is in the best interest of the estate. *See, e.g., In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (observing that with respect to post-petition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Simasko Prod, Co.*, 47 B.R. at 448-449 (authorizing interim financing where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estate).

"Some courts apply a three-part test to assess debtor in possession financing requests under section 364(c), requiring a showing that (1) the debtor cannot obtain credit unencumbered or without superpriority status under section 364(b), (2) the credit transactions are necessary to preserve assets of the estate and (3) the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor in possession-borrower and the proposed lender."  3 COLLIER ON BANKRUPTCY ¶ 364.04[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (collecting cases).

In this case, the post-petition Broadmark loan meets this standard and should be approved. *See id.; In re Aqua Assocs.*, 123 B.R. 192, 195-196 (Bankr. E.D. Pa. 1991) (applying test to conclude that "[o]btaining credit should be permitted not only because it is not available elsewhere, … but also because the credit acquired is of significant benefit to the debtor's estate and the terms of the proposed loan are within the bounds of reason").  The Debtor negotiated the post-petition loan at arms' length while also seeking financing from other sources.  The Debtor submits in its reasonable business judgment that it would be unable to obtain financing from any capital source on more favorable terms, particularly as a Chapter 11 Debtor. Accordingly, the Debtor believes that the terms and conditions of the post-petition Broadmark loan are reasonable and justified under the circumstances and well within the Debtor's sound business judgment.  The Debtor's

business judgment is that the proposed post-petition financing is necessary to preserve the Debtor's assets, pay for post-petition work already completed, and complete construction and is in the best interests of the Debtor's estate. It is essential that the Debtor obtain the financing necessary to continue, among other things, the orderly completion of construction of the property and completion of the Debtor's Chapter 11 Case. Accordingly, the Bankruptcy Court should approve the post-petition Broadmark loan under section 364(d) and approve a first-position security interest for Broadmark.

### REQUEST FOR ALLOWANCE OF SECTION 503(B) ADMINISTRATIVE CLAIMS AND PROPOSED PAYMENT OF THOSE CLAIMS

The Debtor, by this motion, proposes to pay (with the post-petition financing) certain creditors who performed construction work on the property during the post-petition time period. Those post-petition creditors are as follows:

| **Creditor** | **Post-petition amount** | **Work performed:** |
|---|---|---|
| Stalls & Stripes, Inc. | $1,611.00 | Signing and striping for parking lot area |
| Firebird Construction | $8,640.00 | Parking lot gutters |
| Firebird Construction | $14,334.00 | Sidewalks and pedestrian ramps to parking lot. |
| Asphalt Driveways & Patching | $35,136.00 | Asphalt parking lot |
| G & S Excavation | $69,041.78 | Parking lot and other excavation |
| North West Contracting Services | $50,000.00 | Framing, Siding and Windows |
| **TOTAL** | **$178,762.78** | |

The Debtor requests the Court allow these creditor claims as post-petition claims pursuant to 11 U.S.C. §503(b) as actual and necessary costs of preserving the estate. This Court has previously recognized the standards for allowing post-petition administrative expense claims:

MOTION FOR LEAVE TO INCUR SECURED INDEBTEDNESS & PAY CERTAIN POST-PETITION OBLIGATIONS – PAGE 10
Matter: 9670-001

> The Bankruptcy Code affords a priority status for administrative expenses. *11 U.S.C. § 507(a)(2)* (providing second priority status to "administrative expenses allowed under *section 503(b)* of this title . . . ."). Whether a claim constitutes a priority administrative expense is determined under *§ 503(b)*, which provides, in pertinent part:
>
>> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>>> (1)(A) the actual, necessary costs and expenses of preserving the estate[.]
>
> *11 U.S.C. § 503(b)(1)(A)*. This provision is construed narrowly by the courts. A strict construction regarding administrative expenses serves, in part, to maximize and protect the limited assets of the bankruptcy estate for the benefit of the unsecured creditors. The Ninth Circuit Bankruptcy Appellate Panel has summarized the requisite elements to establish administrative expense priority as follows:
>
>> [a]dministrative status is allowed when a claim (1) is incurred postpetition, (2) directly and substantially benefits the estate, and (3) is an actual and necessary expense.
>
> *Gull Indus., Inc. v. John Mitchell, Inc. (In re Hanna)*, 168 B.R. 386, 388 (9th Cir. B.A.P. 1994) (citation omitted). "The applicant must prove by a preponderance of the evidence entitlement to the administrative expense." *Id.*

*In re Lettunich*, 2010 Bankr. LEXIS 412, *5-6 (Bankr. D. Idaho, 2010) (some internal citations omitted).

Here, the Debtor asserts that the post-petition claims listed above are entitled to administrative expense priority. There is no dispute that they were incurred postpetition and were incurred specifically to preserve the property being developed by the Debtor. The sidewalk and parking lot work was done in order to complete it prior to overnight freezes caused by the winter weather. The framing and siding was done to preserve the buildings similarly from the elements. All of this work was needed in order to complete the construction of the development and was actual and necessary expense incurred. Because all of these claims meet the three requirements for administrative expense status, the Debtor requests the Court include in its order a finding that

the Debtor has met its burden of showing these elements; that these claims are entitled to administrative expense status; and may be paid from the construction loan funds provided by the post-petition Broadmark loan.

## CONCLUSION

For the reasons set forth herein, the Debtor respectfully requests that this Court enter an Order allowing the post-petition financing sought above and allowing the use of that financing to pay certain post-petition construction debts incurred.

DATED this 18th day of February, 2021.

                                        /s/ Matt Christensen
                                        MATTHEW T. CHRISTENSEN
                                        Attorney for Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of February, 2021, I filed the foregoing document electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Heidi Buck Morrison | heidi@racineolson.com |
| Brett R. Cahoon | ustp.region18.bs.ecf@usdoj.gov |
| Matthew Todd Christensen | mtc@angstman.com |
| D. Blair Clark | dbc@dbclarklaw.com |
| Kevin E. Dinius | kdinius@diniuslaw.com |
| Timothy D. Ducar | orders@azlawyers.com |
| Thomas E. Dvorak | ted@givenspursley.com |
| Daniel C. Green | dan@racinelaw.net |
| Matthew W. Grimshaw | matt@grimshawlawgroup.com |
| Jonathan W. Harris | jwharris@bakerharrislaw.com |
| Trevor L. Hart | tlh@perrylawpc.com |
| Kirk J. Houston | khouston@whitepeterson.com |
| Andrew Seth Jorgensen | andrew.jorgensen@usdoj.gov |
| Jay J Kiiha | jkiiha@whitepeterson.com |
| Jed W. Manwaring | jmanwaring@evanskeane.com |
| Chad Moody | chad@angstman.com |
| Mark B. Perry | mbp@perrylawpc.com |
| Randall A Peterman | rap@givenspursley.com |
| US Trustee | ustp.region18.bs.ecf@usdoj.gov |

Any others as listed on the Court's ECF Notice.

I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants via U.S. Mail, postage prepaid:

See attached mailing matrix.

/s/ Matt Christensen
Matthew T. Christensen