Matthew T. Christensen, ISB: 7213
ANGSTMAN JOHNSON
199 N. Capitol Blvd, Ste 200
Boise, Idaho 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@angstman.com

Attorney for Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 20-00674-JMM |
| BESTVIEW CONSTRUCTION & DEVELOPMENT, LLC, | Chapter 11 (Subchapter V) |
| Debtor. | |

## DEBTOR'S SECOND AMENDED

## CHAPTER 11 PLAN OF REORGANIZATION

### (Subchapter V)

This Second Amended Plan is for a small business debtor under Subchapter V of Chapter 11 of the U.S. Bankruptcy Code. Pursuant to the requirements of 11 U.S.C. § 1190, this Plan includes "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization."

A.    Brief History of the Business Operations of the Debtor.  BestView Construction & Development, LLC, was created when Gavin and Zandra King decided to develop and build a multifamily development comprised of quads plexes on a parcel of ground they owned and resided on.  The Kings refinanced their home and used the money to hire a civil engineer and surveyor to assist them in a lot split and preliminary plat approval for the quadplex development.

The Kings hired Jim Coslett from Rock Solid Civil Engineering primarily because he was one of the few civil engineers who would entertain the project. He completed the preliminary approval of what was ultimately titled the "Best View Quads" named after the construction company because the city had rejected the initial subdivision name proposed. After the proposed

plat was approved Best View determined it would consult with a General Contractor and hired a friend named Scott Fenwick and his consulting company. Mr. Fenwick advised Best View of initial construction and development costs. Fenwick was later terminated.

Fenwick assisted Best View in hiring Phil Dumon from Bulldog Excavation from Boise, Idaho to complete the horizontal development and utility install of water and sewer. Phil indicated it would take him approximately 3 weeks to complete that work. The contract allowed up to three months. Best View ended up dismissing Bulldog Excavation from the site after 8.5 months of incomplete and incompetent work. Best View then hired DirtPros to finish up the horizontal and help with the other excavation work. DirtPros corrected much of Bulldog Excavations work. The completed lots were sent to the city of Nampa for final plat approval, and that took much longer than expected as well, which eroded trust between Best View and people with whom it had contracts for subcontracting as well as purchasing. As Best View labored to complete the construction as quickly as possible under contract restraints and demands as well as incompetent and uncooperative subcontractors, it understood it would exceed lending time frames requiring additional extensions and costs. As those additional costs were piling up and unaccounted for with end buyers, Best View contacted existing buyers with concerns about items left out of their contracts and the prices of the items. They insisted Best View should pay for their price increases. Under an unexpected amount of strain from previous stresses Best View determined it could no longer perform the contracts and pay for the additional items left out of the initial purchasers contracts. Best View discussed its situation with attorneys and eventually discussed the problems with the Angstman Johnson attorneys. At about that same time, two of the buyers (Susan Perry and Sherman Leibow) sued Best View to enforce their contracts. This led to Best View filing the Chapter 11, subchapter V bankruptcy petition to obtain the highest and best value for the properties, and protect its subcontractors and equity holders.

B.   Liquidation Analysis. To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as *Exhibit A*. Pursuant to the liquidation analysis, assuming the properties are not fully completed and a Chapter 7 Trustee liquidates them without completion, there would be approximately $113,000.00 available for payment to unsecured creditors.

C.   Feasibility Projections. The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

i.   The Debtor have provided projected financial information as *Exhibit B.* *Exhibit B* includes the Debtor's projected expenses to complete the remaining construction of the project. In addition to the expenses outlined on Exhibit B, the Debtor anticipates approximately $200,000.00 in additional expenses based on post-petition work performed that remains unpaid.

ii.   The Debtor' financial projections are based on projected sales of the development lots at $725,000.00 per lot, and show that the Debtor will have

projected disposable income (as defined by § 1191(d) of the Code) for the period described in § 1191(c)(2) of $615,000.00 for payment to unsecured creditors, depending on the allowed nature of unsecured creditor claims. Based on the anticipated class of unsecured creditors, the Debtor project general unsecured creditors will receive between 45-100% of their allowed claim amount, provided the real property is sold and all claim objections are resolved.

iii.   The following chart summarizes the amounts required to complete the plan, and the total unsecured claims in various scenarios.

| Plan calculations | |
|---|---|
| Secured claims | $ 1,824,153.50 |
| Broadmark (post-petition lender (appx.)) | $ 1,500,000.00 |
| Additional cost | $    200,000.00 |
| **SUBTOTAL** | $ 3,524,153.50 |
| | |
| Total w/  All unsecured: | $ 4,897,424.72 |
| Total w/Nonobjectionable Unsecured | $ 3,815,891.07 |
| | |
| Total w/ Nonobjectionable + tardy | $ 3,863,256.76 |

iv.   The final Plan Payment is expected to be paid on or around September 31, 2021.

v.   **You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections**.

## ARTICLE 1

## SUMMARY

1.1    This Plan of Reorganization under Chapter 11 of the Code (the "Plan") proposes to pay the Debtor's creditors from cash flow from completed building and income from the sale of the property as set forth herein.

1.2    This Plan provides for:

| One (1) | Classes of priority claims |
|---|---|
| Seven (7) | Classes of secured claims |
| Two (2) | Classes of potentially-secured claims |
| Two (2) | Classes of non-priority unsecured claims |

| One (1) | Class of equity security holders |
|---------|----------------------------------|

1.3     Non-priority unsecured creditors holding allowed claims will receive pro rata distributions totaling approximately $615,000.00 to the class. This Plan also provides for the payment of administrative and priority claims. The Plan also provides for payment of lower-level non-priority unsecured claims (i.e., tardy unsecured claims).

1.4     All creditors and equity security holders should refer to Articles 3 through 7 of this Plan for information regarding the precise treatment of their claim.

1.5     **Your rights may be affected. You should read this Plan carefully and discuss it with your attorney, if you have one. If you do not have an attorney, you may wish to consult one**.

## <u>ARTICLE 2</u>

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1.    <u>Class 1</u>. This class shall consist of all allowed claims entitled to priority under §507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8).

2.2.    <u>Class 2</u>. This class shall consist of the pre-petition claim of BRMK (Broadmark) to the extent allowed as a secured claim under § 506 of the Code.

2.3.    <u>Class 3</u>. This class shall consist of the claim of Susan Perry related to Lot 2 of the Debtor's real property, to the extent allowed as a secured claim under § 506 of the Code.

2.4.    <u>Class 4</u>. This class shall consist of the claim of Susan Perry related to Lot 3 of the Debtor's real property, to the extent allowed as a secured claim under § 506 of the Code.

2.5.    <u>Class 5</u>. This class shall consist of the claim of Sherman Leibow related to Lot 4 of the Debtor's real property, to the extent allowed as a secured claim under § 506 of the Code.

2.6.    <u>Class 6</u>.  This class shall consist of the claim of Josiah Silva Living Trust (the "Silva Trust") related to Lot 6 of the Debtor's real property, to the extent allowed as a secured claim under § 506 of the Code.

2.7.    <u>Class 7</u>.  This class shall consist of the claim of John F. Obraza Revocable Trust ("Obraza Trust") related to Lot 1 of the real property, to the extent allowed as a secured claim under § 506 of the Code.

2.8.    <u>Class 8</u>.   This class shall consist of the post-petition claim of BRMK Lending (Broadmark) related to the funds for final completion of the construction of the quadplex.

2.9.    <u>Class 9</u>.  This class shall consist of the potentially-secured claim of ProCon Homes. This claim is currently subject to a claim objection proceeding.

2.10.   <u>Class 10</u>.   This class shall consist of the potentially-secured claim of Nalin Enterprises and/or ABC Supply.  This claim is currently subject to a claim objection proceeding.

2.11.   <u>Class 11</u>.  This class shall consist of all <u>timely-filed</u> (or not required to be filed) unsecured claims allowed under § 502 of the Code that are not entitled to priority and not expressly included in the definition of any other class. This class includes, without limitation, claims arising out of the rejection of any executory contract or unexpired lease, each allowed claim secured by a lien on property in which the Debtor has an interest to the extent that such claim is determined to be unsecured pursuant to 11 U.S.C. § 506(a), or unsecured by way of avoidance pursuant to 11 U.S.C. § 522(f), and each such claim of the class described in 11 U.S.C. § 507(a), to the extent that the allowed amount of such claim exceeds the amount which such claim may be afforded priority thereunder.  This class is referred to as the "General Unsecured Creditors" class.

2.12.   <u>Class 12</u>.  This class shall consist of all <u>tardily-filed</u> unsecured claims allowed under § 502 of the Code that are not entitled to priority and not expressly included in the definition of any other class.

2.13.   <u>Class 13</u>. This class shall consist of the interests of the individual equity security holders of the Debtor in property of the estate.

## <u>ARTICLE 3</u>

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS ND COURT FEES

3.1.    <u>Unclassified Claims</u>. Pursuant to § 1123(a)(1), administrative expense claims allowed under §507(a)(2) and priority tax claims under § 507(a)(8) are not in a class.

3.2.    <u>Administrative Claims</u>. Except as otherwise provided under the Plan, each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of the Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.  At this point, the administrative claims known to the Debtor are counsel for the Debtor and the subchapter V trustee, as well as certain vendors who performed post-petition services for the Debtor (to the extent those vendors seek and are granted administrative claim status).

3.3. <u>Priority Tax Claims</u>. With respect to a claim of a kind specified in § 507(a)(8), the holder of any allowed such claim will receive on account of such claim full payment of the allowed amount on the Effective Date.  No penalty shall accrue on such priority tax claims after the Petition Date. The non-priority general unsecured portion(s) of the allowed claims of the holders of priority tax claims, including the penalty and interest accrued thereon, shall be treated in the timely-filed unsecured class within this Plan, and shall be subject to any discharge granted to the Debtor under § 1192.

3.4. <u>Post-Confirmation Tax Claims</u>. All tax claims that are incurred after Confirmation shall be payable when due under applicable non-bankruptcy law.

## <u>ARTICLE 4</u>

## TREATMENT OF CLAIMS, LIENS AND INTERESTS UNDER THE PLAN

4.1     Claims and interests shall be treated as follows under the Plan:

| Class No. | Holder of Claim or Interest | Impaired (Yes/No) | Plan Treatment |
|---|---|---|---|
| 1 | Allowed claims entitled to priority (except admin and tax claims) | No | The Debtor is unaware of any allowed claims entitled to priority, so proposes no treatment for this class. |
| 2 | BRMK (Broadmark) | Yes | The secured claim of Broadmark shall be allowed in the amount owed as of the Petition Date, plus any additional amount lent during the time period of the bankruptcy and Plan. Broadmark shall retain its lien on the parcels on which it had a pre-petition lien.<br><br>Payments to Broadmark shall consist of an equal payment of 1/5 of the amount owed to Broadmark each time a parcel of real property closes (to be paid at closing of the sale of Lots 2-6).  In return for each payment, Broadmark shall issue a partial release of its lien.  Interest shall accrue on Broadmark's unpaid loan amount at the rate of 12% per annum until paid in full.<br><br>The Debtor anticipates final payment to Broadmark on or before September 31, 2021. Disbursements made to Broadmark shall be |

| | | | |
|---|---|---|---|
| | | | made directly by the Debtor and shall not be paid through the subchapter V Trustee. |
| 3 | Susan Perry (Lot 2 claim) | No | The secured claim of Susan Perry related to Lot 2 shall be allowed in the amount of $25,000.00. This amount will be paid upon the closing of the sale of the real property located at Lot 2 of the Best View Quads subdivision.  Until that time, Susan Perry shall retain a lien on Lot 2 to secure her repayment.  Interest shall accrue on this secured claim at the rate of six percent (6%) from the date the funds were paid by Ms. Perry until the date the secured amount of $25,000.00 is paid.  The accrued interest shall be added to the allowed unsecured claim held by Ms. Perry and paid as part of Class 11.<br><br>Disbursements made to Susan Perry shall be made directly by the Debtor and shall not be paid through the Trustee. |
| 4 | Susan Perry (Lot 3 claim) | No | The secured claim of Susan Perry related to Lot 3 shall be allowed in the amount of $125,000.00.  This amount will be paid upon the closing of the sale of the real property located at Lot 3 of the Best View Quads subdivision.  Until that time, Susan Perry shall retain a lien on Lot 3 to secure her repayment. Interest shall accrue on this secured claim at the rate of six percent (6%) from the date the funds were paid by Ms. Perry until the date the secured amount of $125,000.00 is paid.  The accrued interest shall be added to the allowed unsecured claim held by Ms. Perry and paid as part of Class 11.<br><br>Disbursements made to Susan Perry shall be made directly by the Debtor and shall not be paid through the Trustee. |
| 5 | Sherman Leibow | No | The secured claim of Sherman Leibow related to Lot 4 shall be allowed in the amount of $125,000.00.  This amount will be paid upon the closing of the sale of the real property located at Lot 4 of the Best View Quads subdivision.  Until that time, Sherman Leibow |

| | | | |
|---|---|---|---|
| | | | shall retain a lien on Lot 4 to secure his repayment. Interest shall accrue on this secured claim at the rate of six percent (6%) from the date the funds were paid by Mr. Leibow until the date the secured amount of $125,000.00 is paid. The accrued interest shall be added to the allowed unsecured claim held by Mr. Leibow and paid as part of Class 11.<br><br>Disbursements made to Sherman Leibow shall be made directly by the Debtor and shall not be paid through the Trustee. |
| 6 | Josiah Silva Living Trust | No | The secured claim of Josiah Silva Living Trust related to Lot 6 shall be allowed in the amount of $375,983.25. This amount will be paid upon the closing of the sale of the real property located at Lot 6 of the Best View Quads subdivision. Until that time, the Josiah Silva Living Trust shall retain a lien on Lot 6 to secure its repayment. Interest shall accrue on this secured claim at the rate of six percent (6%) from the date the funds were paid by the Silva Trust until the date the secured amount of $375,983.25 is paid. The accrued interest shall be added to the allowed unsecured claim held by the Silva Trust and paid as part of Class 11.<br><br>Disbursements made to the Silva Trust shall be made directly by the Debtor and shall not be paid through the Trustee. |
| 7 | John F. Obraza Trust | Yes | The secured claim of the Obraza Trust relates to Lot 1, which is still owned by the Obraza Trust. Upon closing of the Debtor's post-petition loan, this claim shall be paid in full in the amount of $125,000.00. In return for payment of this claim, Obraza Trust shall transfer Lot 1 to the Debtor via warranty deed.<br><br>Disbursements made to the Obraza Trust shall be made directly by the Debtor and shall not be paid through the Trustee. |

| 8 | Post-petition claim by BRMK Lending, LLC | No | This class shall consist of the post-petition claim of BRMK Lending (Broadmark) related to the funds for final completion of the construction of the quadplex units to the extent allows as a secured claim under §506 of the Code. Distributions on this claim will be in accordance with the post-petition loan documents, which are attached here as Exhibit C. |
| 9 | ProCon Homes | No | This class shall consist of the potentially-secured claim of ProCon Homes. This claim is currently subject to a claim objection proceeding. In the event the claim is determined to be valid and secured, it shall be paid in full upon the closing of the sale of the property securing this claim (or from proceeds of the sale, if the sale occurs prior to the final determination of the claim objection). If this claim is determined to be valid and unsecured, it will be paid with the unsecured claims described in Class 11. |
| 10 | Nalin Enterprises (including the amount of ABC Supply included in this claim) | No | This class shall consist of the potentially-secured tardily-filed claim of Nalin Enterprises. This claim is currently subject to a claim objection proceeding. In the event the claim is determined to be valid and secured, it shall be paid in full upon the closing of the sale of the property securing this claim (or from proceeds of the sale, if the sale occurs prior to the final determination of the claim objection). If this claim is determined to be valid and unsecured, it will be paid with the unsecured claims described in Class 12. |
| 11 | All Allowed Non-Priority Unsecured Claims ("General Unsecured Claims") | Yes | This class shall consist of the allowed unsecured claims not entitled to priority and not expressly included in the definition of any other class. This class includes, without limitation, allowed claims arising out of the rejection of any executory contract, each allowed claim secured by a lien on property in which the Debtor has an interest to the extent such claim is determined to be unsecured pursuant to 11 U.S.C. §506(a) (such as the unsecured portion of Class 6), or unsecured by way of avoidance pursuant to 11 U.S.C. §522(f), and each such |

| | | | |
|---|---|---|---|
| | | | claim of the class described in 11 U.S.C. § 507(a), to the extent that the allowed amount of such claim exceeds the amount which such claim may be afforded priority thereunder.<br><br>Once the previously-described secured classes are paid in full through the ongoing closings of the sale of the quadplexes, the net proceeds not paid on account of secured claims shall be paid to creditors in this class, on a pro rata basis, until the parcels are all sold and all net proceeds distributed.<br><br>Depending on the outcome of various claim objection proceedings, the Debtor projects payment of between 45 and 100% of the allowed claims in this class. |
| 12 | All Allowed Non-Priority Unsecured Claims that are tardily filed ("Tardily-filed General Unsecured Claims") | Yes | This class shall consist of the allowed unsecured claims not entitled to priority and not expressly included in the definition of any other class, which consist of claims filed after the claims bar deadline.<br><br>After all allowed claims in Class 11 are paid, the Debtor will then pay net proceeds from the sales of real estate parcels to this class, on a pro rata basis, until claims in this class are paid in full, or until the parcels are all sold and all net proceeds distributed.<br><br>In the event the Debtor prevails in all claim objection proceedings, the Debtor projects payment of 100% of the allowed claims in this class. However, in the event the allowed claims in Class 11 exceed the amount of the Debtor's projections, there may be insufficient funds to pay this class. |
| 13 | Equity Security Holders | | The Equity Security Holders (owners) of the Debtor shall retain all ownership rights in the Debtor. To the extent there are sufficient net proceeds from the sale of estate assets to pay all other classes listed above, the balance of net proceeds shall be paid to this Class. |

4.2     Waiver of Secured Status and Lien Rights by Claimants. ***In the event any of the claimants listed or scheduled as secured file a proof of claim stating that no part of the claim is secured, then the claim shall be deemed entirely unsecured and treated as such pursuant to this Plan***.

4.3     Proof of Claim Controls Over Amount Scheduled by Debtor(s). The amount listed on a timely filed proof of claim (subject to allowance of the claim) shall control over any contrary amount listed in the Debtor' schedules and deemed filed pursuant to 11 U.S.C. § 1111(a).

4.4     Voiding of Liens. Except as otherwise provided under the Plan, Confirmation will void pursuant to § 506(d) all liens in excess of the Allowed Secured Claims.

# ARTICLE 5

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.1     Objection to Claims. The Debtor or any party in interest may file an objection to any claim in any class on or before the first anniversary of the Effective Date. Objections not filed within such time will be deemed waived. If any claim or portion thereof is challenged by an objection, the claim shall be treated as a disputed claim.

5.2     Disputed Claim. A disputed claim is claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor(s), or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.3     Delay of Distribution on Disputed Claims. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. Notwithstanding this delay of distribution on disputed claims, distribution may, in the Debtor' sole discretion, be made on any portion of such disputed claim which is undisputed, pending resolution of the claim allowance as a whole.

5.4     Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. Following Confirmation and closing of the case, the Debtor shall retain the authority to settle and compromise claims with consent of the settling claimholder, and without the need for Court intervention or approval.

## ARTICLE 6

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1    The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the Effective Date:

| Name of Other Party to Executory Contract/Lease | Description | Assignee |
|---|---|---|
| KYCO Services LLC | Drywall installation | |
| | | |
| | | |

6.2    Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under Article 6.01 of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date. Any creditors that believe they hold claims with respect to contracts rejected hereunder shall file a proof of claim on or before thirty (30) days after confirmation of this Plan. Any such timely filed allowed claims will participate in the distribution for General Unsecured Creditors set out within this Plan.

## ARTICLE 7

### MEANS FOR IMPLEMENTATION OF THE PLAN

7.1    The Debtor will continue to develop the real property it owns and close on each Lot as they are finished.  The Debtor has a buyer willing to purchase all 6 lots, which sale was approved by the Bankruptcy Court at a hearing held on March 18, 2021.  At that same hearing, the Bankruptcy Court approved post-petition lending to the Debtor to finance the remaining construction so the sale could be closed.  The Debtor anticipates the income from selling the property will be used to fund this Plan.

7.2    Gavin and Zandra King are the current owners of the Debtor.  After confirmation of this Plan, both of the Kings shall remain as owners of the Debtor.  Gavin King shall be the sole officer and/or director of the Debtor, who will continue to provide services to the Debtor.  Mr. King will not be paid a salary for his services in getting the construction completed and sales closed.

7.3    As outlined in Article 4 above, the Debtor anticipates all distributions to creditors will be made by the Debtor (via a closing agent, in some cases), with no distributions by the Subchapter V Trustee.  While the Debtor does not anticipate any distributions by the Subchapter V Trustee, in the event the subchapter V Trustee is required to make any distributions, the Debtor

anticipates the Trustee will receive a maximum administrative commission equivalent to two percent (2%) of the funds received and disbursed after Confirmation; and that Plan Payments will be made from the Debtor to the Trustee through Electronic Funds Transfers (EFTs) or other medium of efficient monetary transactions from the Debtor to the Trustee, as agreed and arranged between them.

## ARTICLE 8

## GENERAL AND MISCELLANEOUS PROVISIONS

8.1    <u>Definitions and Rules of Construction</u>. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the below listed definitions. Therefore, the following terms, when used in this Plan, shall have the following meanings:

(a) "Adequate Protection Payments" shall mean payments made by the Debtor to creditors holding claims secured by property of the Debtor, from the Petition Date to the Effective Date, whether or not such payments were made directly to the creditor or deposited into an account, and whether or not such payments were made pursuant to an order of the Court.

(b) "Code" shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

(c) "Confirmation" shall mean the entry by the Court of an order confirming the Plan.

(d) "Court" shall mean the United States Bankruptcy Court for the District of Idaho and the Judge assigned to this case.

(e) "Debtor" shall mean Best View Construction & Development, LLC, with the status of and rights conferred to Debtor-in-possession by § 1107 of the Code.

(f) "Disposable Income" shall mean all surplus income received by the Debtor after the payment of the reasonable and necessary living expenses of the Debtor and dependents.

(g) "Effective Date" shall mean the later of (i) the first business day of the second full month following Confirmation, or (ii) the first business day after an appeal of an order confirming this Plan has become final and unappealable.

(h) "Interests" shall mean the ownership interests held by the Debtor in Property.

(i) "Petition Date" shall mean July 22, 2020.

(j) "Plan" shall mean this Chapter 11 Plan as the same may be modified from time to time in accordance herewith or pursuant to applicable law.

(k) "Plan Payments" shall mean all funds remitted by the Debtor, the Reorganized Debtor, and/or third parties on behalf of the Debtor or Reorganized Debtor to be distributed pursuant to the Plan.

(l) "Reorganized Debtor" shall mean the Debtor after Confirmation.

8.2     <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.3     <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.4     <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.5     <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Idaho govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.6     <u>Retention of Jurisdiction of the Court</u>. In addition to the continued jurisdiction after plan Confirmation that is provided for as a matter of law by the Code and Bankruptcy Rules, the Court shall retain exclusive jurisdiction for the following:

(a) To determine any and all objections to the allowance, extent, priority or nature of any claims, the amount and proper classification of the claim of any holder and the determination of such objections as may be filed to any claims;

(b) To determine any and all applications for compensation and reimbursement pursuant to §§ 330 or 331 of the Code;

(c) To determine any and all applications for the assumption or rejection of executory contracts and unexpired leases, and the allowance of any claims resulting from rejection thereof;

(d) To determine any and all applications, adversary proceedings and litigated matters that may be filed in this Court;

(e) To interpret, enter final orders relating to, and otherwise act upon or in regard to the terms and provisions of the Plan;

(f)   To cause the correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation order as may be necessary to carry out the purposes and intent of the Plan;

(g)   To consider the modification of this Plan after the date of Confirmation as allowed pursuant to the Federal Rules of Bankruptcy Procedure and the Code;

(h)   Except as otherwise provided in this Plan, to make any determinations and to issue any final orders to enforce, interpret or effectuate the Plan;

(i)   To enter a final order concluding and terminating this case;

(j)   To review the reasonableness of any post-Confirmation professional fees paid by the Reorganized Debtor pursuant to Sections 10.02 and 10.04 of this Plan; and

(k)   To determine such other matters as may be provided for in the Confirmation order.

8.7    <u>Withdrawal of Plan</u>. At the option of the Debtor, this Plan may be withdrawn at any time prior to Confirmation. Such option shall be exercised by filing with the Court a notice of withdrawal and mailing a copy of such notice to all creditors, equity security holders and persons specially requesting all notices in this case.

8.8    <u>Retention of Claims</u>. Pursuant to § 1123(b)(3)(B) of the Code, the Debtor shall retain each and every claim, demand or cause of action whatsoever which the Debtor may have had power to assert immediately prior to Confirmation, including without limitation, actions for the avoidance and recovery pursuant to § 550 of the Code of transfers avoidable by reason of §§ 544, 545, 547, 548, 549 or 553(b) of the Code.

8.9    <u>Continued Reporting Requirements</u>. Pursuant to Fed. R. Bank. P. 2015, the Debtor is required to file monthly operating reports until Confirmation. After Confirmation, the Debtor is required to file quarterly reports until the case is closed, dismissed, converted to another chapter of the Code, or a final decree is entered by the Court, pursuant to LBR 2015-2.

8.10    <u>Exemptions from Transfer Tax</u>. The issuance, transfer or exchange of a security or the recording of any instrument evidencing the transfer of assets contemplated under the Plan, including the post-Confirmation sale of any property, shall not be taxed under any law imposing a stamp tax or similar tax pursuant to § 1146(c) of the Code.

8.11    <u>Modification of the Plan</u>. The Debtor may propose amendments or modifications of this Plan at any time prior to Confirmation with leave of the Court. After Confirmation, the Debtor, with approval of the Court, and so long as they do not materially or adversely affect the interests of creditors, may remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the order of confirmation in such a manner as may be necessary to carry out the purposes and effect of this Plan. The foregoing provisions of this paragraph do not limit the ability the Debtor to modify the Plan under § 1193 and applicable rules.

8.12    <u>Early Payment</u>. Nothing herein shall prohibit the Reorganized Debtor from making an early payment of an allowed claim, provided the funds used to pay that claim will not cause a reduction of the distributions to the unsecured claims in amount. In addition, nothing herein shall be construed as imposing a temporal requirement on the Debtor to wait the proposed length of the Plan to satisfy all Plan Payments, and the Reorganized Debtor shall not be prohibited from making an early payment of the projected amount to Class 12 claims, provided that the Debtor is current on any payments then required to Class 1 through Class 11 claims.

8.13    <u>Preservation of Claims and Causes of Action</u>. The Debtor retains and reserves all causes of action. It is the intent of the Debtor that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor' schedules or this Plan. The Debtor shall have the widest possible latitude in deciding whether or not to pursue any possible cause of action, including without limitation any preference or other avoidance action. Except as expressly provided in the Plan, the Confirmation order shall not bar the Debtor by *res judicata*, collateral estoppel or otherwise from collecting, prosecuting or defending any matter, avoidance action, or cause of action. Any and all creditors identified in Questions 6 and/or 7 to Debtor' Statement of Financial Affairs in this Chapter 11 case, which includes all creditors receiving payments from the Debtor in the 90 days preceding the Petition Date and insiders receiving payments in the year preceding the Petition Date that aggregated at least $6,425.00, may be the defendant of an avoidance action or other cause of action. These identified claims are not intended to be an exhaustive list, and the Debtor may add to or amend the identified claims after Confirmation and reserves their right to do so. Each creditor and party in interest is advised to review closely the Plan, the Disclosure Statement, and the Debtor's filed Schedules and Statement of Financial Affairs to determine whether any cause of action or avoidance action may be pursued against it. Avoidance actions to recover preferences pursuant to Section 547 of the Code may exist against every person who received a payment from the Debtor within 90 days prior to the Petition Date.

8.14    <u>Default Under Plan</u>. Confirmation shall effect a cure of any existing default under a debt, and notwithstanding the provision of any lease or loan document that may survive the Confirmation, an event of default as to any claim after Confirmation shall exist only if the Debtor (i) fails to make a monetary payment when due under the Plan and that default is not cured within twenty (20) days following delivery of written notice of that default, (ii) fails to insure the property securing the creditor's claim for the value of the property, or (iii) disposes of the property securing the claim, normal wear and tear excepted, without either the consent of the creditor holding the claim, the satisfaction of the lien on that property, or the payment of the net proceeds to that creditor.

8.15    <u>Notice</u>. Unless otherwise directed by the Debtor in writing, notice of default shall be sufficient if delivered as follows:

If to the Debtor or Reorganized Debtor:        Best View Construction &
Development, LLC
1625 Mustang Mesa Avenue
Middleton, ID 83644

With copy to:                     Matthew T. Christensen
                                  ANGSTMAN JOHNSON
                                  199 N. Capitol Blvd, Ste 200
                                  Boise, ID  83702
                                  mtc@angstman.com

With additional copy to:          Matthew W. Grimshaw
                                  800 W. Main Street, Ste 1460
                                  Boise, ID 83702
                                  matt@grimshawlawgroup.com


## ARTICLE 9

### EFFECT OF CONFIRMATION, DISCHARGE AND INJUNCTION


9.1    <u>Vesting of Property</u>. Except as otherwise expressly provided in the Plan, Confirmation of the Plan shall vest all the property of the Debtor's estate in the Debtor.

9.2    <u>Property Free and Clear</u>. Except as otherwise provided in the Plan, all property shall be free and clear of all claims, liens and interests of any party as of the Confirmation of the Plan. This Plan will evidence the release of any and all liens or encumbrances against all property, unless such lien or encumbrance is specifically retained in the Plan.

9.3    <u>Legal Binding Effect</u>. The provisions of this Plan shall bind all claimants, whether or not they accept this Plan or whether or not their claim is impaired.

9.4    <u>Effect on Third Parties</u>. Nothing contained in the Plan or in the documents to be executed in connection with the Plan shall affect any claimant's rights against any third party, except as otherwise expressly provided in this Plan and except that any creditor or party in interest may only recover from any third-party guarantor or co-obligor the amount owed to it in excess of the amount to be paid on the underlying obligation pursuant to the Plan.

9.5    <u>Release of Claims</u>. The consideration to be distributed under the Plan shall be in exchange for, and in complete satisfaction and release of, all claims against the Debtor or any of its assets or properties, including without limitation any claim accruing after the Petition Date and prior to the Effective Date.

9.6    <u>Permanent Injunction</u>. Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation order shall provide, among other things, that all claimants and persons who have held, hold or may hold claims that existed prior to the Effective Date, are permanently enjoined on and after the Effective Date against the: (i) commencement or

continuation of any judicial, administrative, or other action or proceeding against the Debtor on account of claims against the Debtor, or on account of claims released pursuant to section 9.05 of the Plan; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any property; or (iii) creation, perfection or enforcement of any encumbrance of any kind against the Debtor arising from a claim. This provision does not enjoin the prosecution of any claims that arise on or after the Effective Date nor does it enjoin the determination in the Bankruptcy Court of the amount of any claims that arose prior to the Effective Date. Claimants and parties asserting entitlement to payment of administrative claims incurred prior to the date of Confirmation shall be permanently enjoined from asserting any Claim against the Debtor or their retained assets based upon any act or omission, transaction or other activity that occurred prior to the Confirmation date, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such claim or interest is allowed under Section 502 of the Code.

9.7    <u>Exculpation</u>. Except as otherwise provided in the Plan or Confirmation order, the Debtor and the professionals for the Debtor shall neither have nor incur any liability to any entity or person for any act taken or omitted to be taken (exclusive of an act constituting fraud, gross negligence or intentional misconduct) in connection with or related to this Chapter 11 case, including, without limitation, actions related to the formulation, preparation, dissemination, implementation, administration, Confirmation or consummation of the Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan.

9.8    <u>Discharge [if under § 1191(a)]</u>. If this Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor may be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code.  However, the Debtor will not be discharged from any debt (i) imposed by this Plan; (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure;  or (iii) excepted from discharge 11 U.S.C. § 1141(d)(3).   Because this Plan contemplates the liquidation of the Debtor's assets, in the event the Plan is confirmed under § 1191(a), the Debtor does not believe a discharge will be entered.

9.9    <u>Discharge [if under § 1191(b)]</u>. If the Plan is confirmed under § 1191(b), Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on the completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt (i) on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE 10

## CLOSING OF THE CASE AND CONTINUED EXECUTION OF THE PLAN

10.1   Closing of the Case. After the Effective Date, upon the payment of all outstanding administrative claims and the commencement of payments to priority creditors and secured claimants, the Reorganized Debtor will seek an Order closing the case through the filing of a final accounting and a motion for a final decree as required under Bankruptcy Rule 3022.

10.2   Professional Fees after Confirmation. In the period after the date of Confirmation, but before closing of the case, the Reorganized Debtor may continue to avail itself of the services of professional persons whose employment was approved at or prior to the date of Confirmation in completing administration of the case and in the consummation and performance of the Plan and, if necessary, employ additional professional persons to render services in and in connection with the case. With respect to services rendered and expenses incurred in or in connection with the case by any professional person during such period, the professional person may render periodic billing thereafter to the Reorganized Debtor and the Trustee, who shall promptly pay the same, but each such payment shall be subject to review and approval by the Court as to the reasonableness thereof, as set forth hereinbelow. In any *Motion for Final Decree*, the Reorganized Debtor shall detail all amounts paid during such period to professional persons as compensation for services rendered or reimbursement of expenses incurred, with respect to which no prior application for allowance thereof has been made to the Court. At any hearing upon the Reorganized Debtor' *Motion for Final Decree*, the Court shall consider and determine whether or not such payments shall be approved as reasonable.

10.3   Continued Execution of the Plan after Closing. After closing of the case, the Reorganized Debtor shall remit all Plan Payments to the appropriate holders of allowed claims provided for in the Plan. Upon all payments having been distributed, the Reorganized Debtor shall be authorized to reopen the case, satisfy any additional requirements under the Code and receive a discharge.

/
/
/
/
/
/
/
/
/
/
/
/
/

/

10.4    <u>Professional Fees after Closing</u>. After closing of the case, the Reorganized Debtor may continue to avail itself to the services of professional persons whose employment was approved at or prior to closing of the case in performance of the Plan. In the event such professional services are rendered, or expenses are incurred by any professional person therewith, an itemized bill shall be furnished by such professional person to the Reorganized Debtor, who shall promptly pay the same, subject to any objection being raised by the Reorganized Debtor, or the Trustee, in the event the Trustee remains in place to receive and distribute funds under the Plan. Pursuant to Section 8.06(j) of this Plan, the Court will retain jurisdiction to review the reasonableness of each such payment in the event of such an objection or dispute.

DATED this 2nd day of April, 2021.


/s/ Gavin King
Best View Construction & Development, LLC
By: Gavin King, manager


/s/ Matt Christensen
Matthew T. Christensen
Attorney for the Debtor

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 2nd day of April, 2021, I filed the foregoing electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Matthew T. Christensen | mtc@angstman.com |
| Chad Moody | chad@angstman.com |
| U.S. Trustee | ustp.region18.bs.ecf@usdoj.gov |
| Matthew W. Grimshaw | matt@grimshawlawgroup.com |
| Heidi Buck Morrison | heidi@racineolson.com |
| Thomas E Dvorak | ted@givenspursley.com |
| Jared Harris | jharris@bakerharrislaw.com |
| Jay J. Kiiha | jkiiha@whitepeterson.com |
| Jed W. Manwaring | jmanwaring@evanskeane.com |
| Mark B. Perry | mbp@perrylawpc.com |
| Randall A. Peterman | rap@givenspursley.com |

Any others as listed on the Court's ECF Notice.

I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants via U.S. Mail, postage prepaid:

All parties listed on the attached mailing matrix.

/s/ Matt Christensen
Matthew T. Christensen

Label Matrix for local noticing
0976-1
Case 20-00674-JMM
District of Idaho
Boise
Fri Apr  2 11:47:08 MDT 2021

ABC Supply Co.
Attn: Chris Linkhart
925 N Franklin Blvd
Nampa, ID 83687-6771

ABC Supply Co.
One Abc Parkway
Beloit, WI 53511-4466

BRMK Lending, LLC
c/o Perry Law PC
P.O.  Box 637
Boise, ID 83701-0637

BRMK Lending, LLC
c/o Perry Law, P.C.
2627 W. Idaho Street
Boise, ID 83702-4732

Best View Construction & Development, LLC
1625 Mustang Mesa Avenue
Middleton, ID 83644-4745

Broadmark Realty Capital
1420 5th Ave
Suite 2000
Seattle, WA 98101-1348

Heidi Buck Morrison
Racine Olson, PLLP
201 East Center Street
Pocatello, ID 83201-6329

Brett R Cahoon
OFFICE OF THE US TRUSTEE US DEPT
720 Park Blvd., Ste. 220
Boise, ID 83712-7785

Matthew T. Christensen
Angstman Johnson, PLLC
199 N. Capitol Blvd.
Ste 200
Boise, ID 83702-6197

Matthew Todd Christensen
Angstman Johnson, PLLC
199 N. Capitol Blvd., Ste. 200
Boise, ID 83702-6197

D Blair Clark
967 E. Parkcenter Boulevard #282
Boise, ID 83706-6721

Copperhead Electric
Attn: Casey Fouts
10326 West Shadybrook
Boise, ID 83704-3942

Kevin E Dinius
Dinius Law
5680 E Franklin Rd 130
Nampa, ID 83687-9012

Timothy D Ducar
Law Offices of Timothy D. Ducar, PLC
7430 E Butherus Drive, Suite E
Scottsdale, AZ 85260-2450

Thomas E Dvorak
POB 2720
Boise, ID 83701-2720

Gale Contractor Services
2908 Brandt Ave.
Nampa, ID 83687-6856

Gale Contractor Services
PO Box 534451
Atlanta, GA 30353-4451

Gaven King
1625 Mustang Mesa Ave.
Middleton, ID 83644-4745

Daniel C Green
POB 1391
Pocatello, ID 83204-1391

Matthew W Grimshaw
Grimshaw Law Group, P.C.
800 W. Main Street, Ste. 1460
Boise, ID 83702-5983

Jonathan W Harris
BAKER & HARRIS
266 W Bridge
Blackfoot, ID 83221-2109

Trevor L Hart
PERRY LAW PC
PO Box 637
Boise, ID 83701-0637

Kirk J Houston
Smith and Malek, PLLC
101 S Capitol Blvd
Ste. 930
Boise, ID 83702-7716

Idaho Department of Labor
317 W Main Street
Boise, ID 83735-0610

Idaho Power
P.O. Box 70
Boise, ID 83707-0070

Idaho State Tax Commission
P.O. Box 36
Boise, ID 83722-0410

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

James Crowley Living Trust
c/o Karene Alton/Capital Grp
2440 S. Titanium Place
MERIDIAN, ID 83642-6703

Joe Silva Living Trust
10085 E Saranac Drive
Boise, ID 83709-0448

Joe Silva Living Trust
2543 E. Goshen Ave
VISALIA, CA 93292-8063

John F. Obraza Living Trust
1118 Capello Way
Ojai, CA 93023-3434

John F. Obraza Revocable Trust Dated Februar
Jay J. Kiiha
White Peterson
Ste. 200
Nampa, ID 83687-8368

Andrew Seth Jorgensen
Office of the U.S. Trustee
720 Park Blvd., Ste. 220
Boise, ID 83712-7785

Josiah Silva Living Trust
10085 West Saranac
Boise, ID 83709-0448

KYCO Services
2090 W. 500 N., Unit 6
Springville, UT 84663-1098

Kevin Dinius
5680 E. Franklin Road
Suite 130
Nampa, ID 83687-9012

Jay J Kiiha
White, Peterson, Gigray & Nichols, PA
5700 E. Franklin Road, Ste. 200
Nampa, ID 83687-7901

Kyco Services, LLC
136 E South Temple, Ste 1900
c/o Pia Anderson & Moss
Salt Lake City, UT 84111-1135

Kyco Services, LLC
Pia Anderson Moss Hoyt
Attn: Anthony Grover
136 E. South Temple, Suite 1900
Salt Lake City, UT 84111-1135

Sherman Leibow
Givens Pursley LLP
c/o Thomas E. Dvorak
601 W. Bannock St.
P.O. Box 2720
Boise, ID 83701-2720

MR Realty, LLC
c/o Mickey Reynolds
530 E. Warm Springs Avenue
Boise, ID 83712-6219

MR Realty, LLC, dba Heart in Home Realty
530 E Warm Springs Ave
Boise, ID 83712-6219

Jed W. Manwaring
Evans Keane LLP
 1161 W. River St.
Suite 100
PO Box 959
Boise, ID 83701-0959

Chad Moody
Angstman Johnson
199 N. Capitol Blvd., Ste. 200
Boise, ID 83702-6197

Jason Ronald Naess
OFFICE OF THE US TRUSTEE US DEPT
720 Park Blvd, Ste 220
Boise, ID 83712-7785

Nalin Enterprises
PO Box 191203
Boise, ID 83719-1203

Native Builders
4472 N Abruzzo Ave
Meridian, ID 83646-5093

Mark Bradford Perry
Perry Law, P.C.
POB 637
Boise, ID 83701-0637

Susan Perry
Givens Pursley LLP
c/o Thomas E. Dvorak
601 W. Bannock St.
P.O. Box 2720
Boise, ID 83701-2720

Randall A Peterman
Givens Pursley LLP
601 W. Bannock St.
P.O. Box 2720
Boise, ID 83701-2720

PlyGem Residential Solutions
5020 Weston Pkwy
Suite 400
Cary, NC 27513-2322

Porta Pros, LLC
3716 Airport Rd.
Nampa, ID 83687-8633

Pro. Construction Services
Attn: Lance Robinson
1106 N 39th St
Nampa, ID 83687-3171

ProCon Homes, Inc.
1900 N 4000 W
Dayton, ID 83232

ProCon Homes, Inc.
Attn: Sharon Kropf
1990 N 4000 W
Dayton, ID 83232-5130

Professional Construction Services, Inc.
Dinius Law
5680 E. Franklin Rd Suite 130
Nampa, ID 83687-9012

Professional Construction Services, Inc.
c/o Kevin E. Dinius
5680 E. Franklin Rd., Suite 130
Nampa, ID 83687-9012

Sawtooth Land Surveying LLC
2030 S Washington Avenue
Emmett, ID 83617-9090

Sherman Leibow
c/o Tom Dvorak
601 W Bannock St
Boise, ID 83702-5919

Simonton Windows  Doors
5020 Weston Pkwy
Suite 400
Cary, NC 27513-2322

Stellar Plumbing
Attn: Andy Bouk
804 S. Powerline Rd.
Nampa, ID 83686-5616

~~Susan Perry~~
~~c/o Tom Dvorak~~
~~601 W Bannock St~~
~~Boise, ID 83702-5919~~

~~Trevor L. Hart~~
~~Perry Law, P.C.~~
~~2627 W. Idaho Street~~
~~Boise, ID 83702-4732~~

~~US Trustee~~
~~Washington Group Central Plaza~~
~~720 Park Blvd, Ste 220~~
~~Boise, ID 83712-7785~~

Wadsworth Reece
Attn: Frederick Wadsworth
6206 N Discovery Way
Boise, ID 83713-1525

Zandra King
1625 Mustang Mesa Ave.
Middleton, ID 83644-4745

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)American Builders & Supply

(d)MR Realty, LLC, dba Heart in Home Realty
530 E. Warm Springs Avenue
Boise, ID 83712-6219

(d)Nalin Enterprises, LLC
PO Box 191203
Boise, ID 83719-1203

(u)The John F. Obraza Revocable Trust, dated

End of Label Matrix
Mailable recipients    66
Bypassed recipients     4
Total                  70

**Attachment 1 - Table of Unsecured Claims**

The Debtor's general unsecured debts (i.e., not including priority unsecured claims), as reflected in the Debtor' schedules or timely filed proof of claim is shown below. The amount listed on a timely filed proof of claim (subject to allowance of the claim) shall control over any contrary amounts listed in the Debtor's schedules and deemed filed pursuant to 11 U.S.C. § 1111(a).

This list includes ALL timely filed or scheduled unsecured claims. It does NOT include claims that were scheduled as Contingent, Unliquidated, or Disputed, for which no timely Proof of Claim was filed. It also does NOT included untimely-filed claims (those are listed separately below). It also INCLUDES claims which may be subject to objection by the Debtor or another party (such claims are delineated with an * next to the parties name).

| Name of Creditor | Amount of Claim | Source of Amount |
|---|---|---|
| Gale Contractor Services | $ 5,685.00 | Sch. F |
| Idaho Power | $ 264.22 | Sch. F |
| KYCO Services | $ 25,667.58 | Claim 7 |
| Native Builders | $ 29,312.91 | Sch. F |
| Porta Pros, LLC | $ 210.14 | Sch. F |
| PCS* | $ 12,536.86 | Claim 1 |
| ProCon Homes* | $ 72,152.95 | Claim 3 |
| Simonton Windows & Doors | $ 4,527.72 | Sch F |
| Wadsworth Reece | $ 1,050.00 | Sch. F |
| Susan Perry* | $ 226,999.42 | Claim 4 |
| Susan Perry* | $ 256,433.42 | Claim 4 |
| Sherman Leibow* | $ 224,910.34 | Claim 5 |
| Josiah Silva Trust* | $ 219,100.00 | Claim 8 (Amended) |
| John Obraza Living Trust | $ 225,000.00 | Claim 9 |
| Heart in Home Realty* | $ 49,500.00 | Claim 19 |
| Internal Revenue Service* | $ 16,900.66 | Claim 2 |
| Internal Revenue Service* | $ 3,000.00 | Claim 13 |
| Idaho State Tax Commission | $ 20.00 | Claim 11 |
| **TOTAL** | $ 1,373,271.22 | |
| **TOTAL (w/o objectionable)** | $ 291,737.57 | |

**Untimely-filed Proofs of Claim**

| Name of Creditor | Amount of Claim | Source of Amount |
|---|---|---|
| Copperhead Electric | $ 14,229.99 | Claim 12 |
| Nalin Enterprises, LLC* | $ 197,009.10 | Claim 14 |
| Stellar Plumbing, LLC | $ 33,135.70 | Claim 15 |
| **TOTAL** | $ 244,374.79 | |

# EXHIBIT A

## Best View Liquidation analysis

| | Best View liquidation value | Lien 1 | Lien 2 | Lien 3 | Costs of Sale | Net liquidation value |
|---|---|---|---|---|---|---|
| Lot 1 | $ - | $ - | $ - | $ - | $ - | $ - |
| Lot 2 | $ 400,000.00 | $ 210,000.00 | $ 25,000.00 | $ 67,333.00 | $ 32,000.00 | $ 65,667.00 |
| Lot 3 | $ 400,000.00 | $ 210,000.00 | $ 125,000.00 | $ 67,333.00 | $ 32,000.00 | $ (34,333.00) |
| Lot 4 | $ 400,000.00 | $ 210,000.00 | $ 125,000.00 | $ 67,333.00 | $ 32,000.00 | $ (34,333.00) |
| Lot 5 | $ 400,000.00 | $ 210,000.00 | | $ 67,333.00 | $ 32,000.00 | $ 90,667.00 |
| Lot 6 | $ 400,000.00 | $ 210,000.00 | $ 375,000.00 | $ 67,333.00 | $ 32,000.00 | $ (284,333.00) |
| Misc Office Equipment | $ 800.00 | | | | $ 200.00 | $ 600.00 |
| | | | | | | |
| | | | | | Chapter 7 Trustee | $ 43,250.00 |
| | | | | | Net Distribution | $ 113,084.00 |

Notes:
1. Real Property value is based on petition date value plus value of additional improvements done through Plan date.
2. Lot 1 is not titled to the Debtor; consequently no value is attributed to that parcel
3. Broadmark loan is secured by Lots 2-6.  For purposes of this analysis, it is divided equally among those lots, represented by Lien 1.
4. Lien 2 is the Vendee lien claims from various previous buyers
5. Lien 3 is the Vendor's lien claimed by Obraza on Lots 2-6, split equally between those lots.
6. Costs of sale is based on estimated 8% closing costs and Realtor commission if sold by a Chapter 7 Trustee
7. Chapter 7 Trustee's fee is based on only selling net value property, and is based on statutory Trustee's fee.
8. Office Equipment assumes a 25% sale cost.

# EXHIBIT B

| phase | bid amount |
|---|---|
| permits | $18,600.00 |
| site supervisor | $0.00 |
| site corrections | $0.00 |
| prep | $16,500.00 |
| foundation | $20,298.00 |
| framing | $87,600.00 |
| structural steel | $5,000.00 |
| Windows | $16,000.00 |
| plumbing | $31,500.00 |
| electrical | $37,500.00 |
| roofing | $14,938.00 |
| sheetrock | $34,000.00 |
| HVAC | $32,000.00 |
| paint-interior | $6,795.00 |
| paint-exterior | $2,320.00 |
| insulation | $5,680.00 |
| finish carpentry | $4,500.00 |
| siding | $20,321.43 |
| counters | $4,850.00 |
| doors | $10,000.00 |
| stairs | $5,600.00 |
| appliances | $14,560.00 |
| park | $1,500.00 |
| sidewalks | $5,000.00 |
| brick siding | $4,800.00 |
| cabinets | $9,800.00 |
| flooring | $12,000.00 |
| parking | $0.00 |
| landscaping | $0.00 |
| fire sprinklers | $12,489.00 |
| building cost | $434,151.43 |

| | Building 1 | | | Budget | Building 2 | | | Budget |
|---|---|---|---|---|---|---|---|---|
| 1 | permits | | 1 | $18,600.00 | permits | | | |
| 2 | excavation pad prep | | 1 | $16,500.00 | excavation pad prep | | | |
| 3 | Foundation | | 2 | $20,298.00 | Foundation | | | |
| 4 | framing, | | 3 | $92,600.00 | framing, | | | |
| 4.2 | Windows | | 3 | $16,000.00 | Windows | | 1 | $16,000.00 |
| 4.5 | Roofing, | | 3 | $14,938.00 | Roofing, | | 1 | $14,938.00 |
| 4.8 | siding | | 3 | $25,121.43 | siding | | 1 | $25,121.43 |
| 5 | Plumbing | | 4 | $31,500.00 | Plumbing | | 2 | $31,500.00 |
| 5.5 | hvac | | 4 | $32,000.00 | hvac | | 2 | $32,000.00 |
| 6 | Fire Sprinklers, | | 4 | $12,489.00 | Fire Sprinklers, | | 2 | $12,489.00 |
| 7 | Electric, | | 4 | $37,500.00 | Electric, | | 2 | $37,500.00 |
| 8 | Air Seal, | | 4 | $1,200.00 | Air Seal, | | 2 | $1,200.00 |
| 9 | Insulation, | | 4 | $5,680.00 | Insulation, | | 2 | $5,680.00 |
| 9.5 | Doors, | | 4 | $10,000.00 | Doors, | | 2 | $10,000.00 |
| 10 | Drywall, tap n textur | | 5 | $34,000.00 | Drywall, tap n textur | | 4 | $34,000.00 |
| 11 | Paint | | 6 | $9,115.00 | Paint | | 4 | $9,115.00 |
| 12 | Cabinets, | | 5 | $9,800.00 | Cabinets, | | 5 | $9,800.00 |
| 13 | Finish Carpentry, | | 6 | $4,500.00 | Finish Carpentry, | | 4 | $4,500.00 |
| 14 | Flooring, | | 5 | $12,000.00 | Flooring, | | 5 | $12,000.00 |
| 14.3 | Balcony | | 6 | $350.00 | Balcony | | 5 | $350.00 |
| 14.5 | Railings | | 6 | $1,212.50 | Railings | | 5 | $1,212.50 |
| 15 | Fixtures, | | 5 | $4,500.00 | Fixtures, | | 5 | $4,500.00 |
| | Appliances, | | 5 | $14,560.00 | Appliances, | | 5 | $14,560.00 |
| | Inspection, | | | | Inspection, | | | 0 |
| | counters | | 5 | $4,850.00 | counters | | 5 | $4,850.00 |
| | | | | $429,313.93 | | | | 281315.93 |

| | | |
|---|---|---|
| Total to complete | $1,293,164.15 | carports | 40000 |
| | | play ground | 5500 |

BestView Amended Ch. 11 Plan

Exhibit B-1

## Remaining Construction

| Building 3 | | Budget | Building 4 | | Budget |
|---|---|---|---|---|---|
| permits | | | permits | | |
| excavation pad prep | | | excavation pad prep | | |
| Foundation | | | Foundation | | |
| framing, | | | framing, | | |
| Windows | | | Windows | | |
| Roofing, | | | Roofing, | | |
| siding | 1 | $20,321.43 | siding | 1 | $20,321.43 |
| Plumbing | | 0 | Plumbing | | 0 |
| hvac | 1 | 16500 | hvac | 1 | 16500 |
| Fire Sprinklers, | | 0 | Fire Sprinklers, | | 0 |
| Electric, | 1 | 12500 | Electric, | 1 | 12500 |
| Air Seal, | 1 | $1,200.00 | Air Seal, | 1 | $1,200.00 |
| Insulation, | 1 | $5,680.00 | Insulation, | 1 | $5,680.00 |
| Doors, | 1 | $10,000.00 | Doors, | 1 | $10,000.00 |
| Drywall, tap n textur | 2 | $34,000.00 | Drywall, tap n textur | 2 | $34,000.00 |
| Paint | 2 | $9,115.00 | Paint | 2 | $9,115.00 |
| Cabinets, | 3 | $9,800.00 | Cabinets, | 3 | $9,800.00 |
| Finish Carpentry, | 2 | $4,500.00 | Finish Carpentry, | 2 | $4,500.00 |
| Flooring, | 3 | $12,000.00 | Flooring, | 3 | $12,000.00 |
| Balcony | 3 | $350.00 | Balcony | 3 | $350.00 |
| Railings | 3 | $1,212.50 | Railings | 3 | $1,212.50 |
| Fixtures, | 3 | $4,500.00 | Fixtures, | 3 | $4,500.00 |
| Appliances, | 3 | $14,560.00 | Appliances, | 3 | $14,560.00 |
| Inspection, | | 0 | Inspection, | | 0 |
| counters | 3 | $4,850.00 | counters | 3 | $4,850.00 |
| | | 161088.93 | | | 161088.93 |

BestView Amended Ch. 11 Plan

Exhibit B-1

| Building 5 | | Budget | Building 6 | | Budget |
|---|---|---|---|---|---|
| permits | | | permits | | |
| excavation pad prep | | | excavation pad prep | | |
| Foundation | | | Foundation | | |
| Framing, | | | Framing, | | |
| Windows | | | Windows | | |
| Roofing, | | | Roofing, | | |
| siding | 1 | $20,321.43 | siding | | |
| Plumbing | | | Plumbing | | |
| hvac | 1 | 16500 | hvac | | |
| Fire Sprinklers, | | | Fire Sprinklers, | | |
| Electric, | | | Electric, | | |
| Air Seal, | 1 | $1,200.00 | Air Seal, | 1 | $1,200.00 |
| Insulation, | 1 | $5,680.00 | Insulation, | 1 | $5,680.00 |
| Doors, | 1 | $10,000.00 | Doors, | 1 | $10,000.00 |
| Drywall, tap n textur | 2 | $34,000.00 | Drywall, tap n textur | 2 | $34,000.00 |
| Paint | 2 | $9,115.00 | Paint | 2 | $9,115.00 |
| Cabinets, | 3 | $9,800.00 | Cabinets, | 3 | $9,800.00 |
| Finish Carpentry, | 2 | $4,500.00 | Finish Carpentry, | 2 | $4,500.00 |
| Flooring, | 3 | $12,000.00 | Flooring, | 3 | $12,000.00 |
| Balcony | 3 | $350.00 | Balcony | 3 | $350.00 |
| Railings | 3 | $1,212.50 | Railings | 3 | $1,212.50 |
| Fixtures, | 3 | $4,500.00 | Fixtures, | 3 | $4,500.00 |
| Appliances, | 3 | $14,560.00 | Appliances, | 3 | $14,560.00 |
| Inspection, | | 0 | Inspection, | | 0 |
| counters | 3 | $4,850.00 | counters | 3 | $4,850.00 |
| | | 148588.93 | | | 111767.5 |

BestView Amended Ch. 11 Plan

Exhibit B-1

Post-petition payables

| | |
|---|---|
| fire sprinklers | $14,330.00 |
| siding | $71,000.00 |
| insulation | $5,938.00 |
| sidewalks | $32,000.00 |
| Drywall | $20,719.30 |
| doors | |
| ida pac materials | $17,167.22 |
| paving prep | $65,000.00 |
| paving | $39,600.00 |

**$265,754.52**

Note: Siding and insulation are also accounted for in the Remaining Completion Budget

EXHIBIT C

## CONSTRUCTION LOAN AGREEMENT

THIS CONSTRUCTION LOAN AGREEMENT (the "**Agreement**") is made and entered into this _____ day of _____, 2021, by and between BRMK LENDING, LLC, a Delaware limited liability company ("**Lender**"); BEST VIEW CONSTRUCTION & DEVELOPMENT LLC, an Idaho limited liability company ("**Borrower**"); and GAVEN KING and ZANDRA KING, husband and wife (each individually a "**Guarantor**" and collectively "**Guarantors**").

## RECITALS:

A.     Borrower has requested that Lender make a loan to Borrower in the amount of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00) (the "**Loan**"), which Loan is to be secured by the property located at 1910 Sunnyridge Road, Nampa, Idaho 83686, and more particularly described as follows:

> See <u>Exhibit A</u> attached hereto and incorporated herein by this reference (the "**Property**").

B.     The proceeds of the Loan will be used to develop and construct a project consisting of 6-unit townhomes on the Property (the "**Improvements**"). The Property and the Improvements are collectively referred to as the "**Project**."

C.     Lender is willing to make the Loan to Borrower on the terms and conditions set forth in this Agreement.

## AGREEMENT:

NOW, THEREFORE, in consideration of the foregoing recitals, which are fully incorporated herein, and other good and valuable consideration on the terms, conditions, and covenants hereinafter set forth, Borrower and Lender agree as follows:

**1.     Loan**. The aggregate principal amount of the Loan is up to One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00), which Loan shall be evidenced by a Promissory Note (the "**Note**") executed by Borrower with this Agreement. The payment and interest terms are as set forth in the Note. The terms of the Note are incorporated into this Agreement by this reference. The last day of the term of the Loan is referred to in this Agreement as the "**Maturity Date**." The Loan shall be due and payable in full on the Maturity Date, as the same may be extended in the Lender's sole discretion.

**2.     Loan Fee.** It is understood and acknowledged that on or before the date hereof, Borrower has paid, or will pay, to Lender the sum of two percent (2%) of the Loan amount or Thirty Thousand and 00/100 Dollars ($30,000.00) as an earned and non-refundable loan origination fee in consideration of Lender's agreement to make the Loan evidenced hereby.

**3.     Loan Documents**. In addition to the Note, the Deed of Trust (hereinafter defined) and this Agreement, the Loan will be evidenced, guaranteed and secured by the following

documents, to the extent required by Lender, and any other documents which Lender may require (collectively, with this Agreement and the Note, and all extensions, modifications and renewals of any such documents, the "**Loan Documents**", and each individual document, a "**Loan Document**"), all of which must be acceptable to Lender in form and content:

a. A Deed of Trust, Security Agreement and Fixture Filing With Assignment of Leases and Rents and Fixture Filing (the "**Deed of Trust**") which shall create or constitute (i) a first priority lien on fee simple title to the Property; (ii) a first priority security interest in all fixtures, and tangible and intangible personal property, used in the development, operation, maintenance or management of the Project; (iii) a fixture filing under the Idaho Uniform Commercial Code; and (iv) assignment of all leases, rents, revenues and other cash received or receivable with respect to the Project. In accordance with the foregoing, Lender shall receive assurance satisfactory to Lender in its sole discretion that the obligations secured by the Deed of Trust are debtor-in-possession financing pursuant to 11 USC Section 364 (d) (1), and as a result of order of the bankruptcy court, all amounts owed under the Note and secured by the Deed of Trust have priority over any and all other obligations of Borrower and the Deed of Trust has priority over all matters encumbering the Property or otherwise

b. Such Uniform Commercial Code financing statements ("**Financing Statements**") as Lender may require to perfect any security interests granted to Lender under the Deed of Trust, this Agreement or any other Loan Document.

c. Unlimited Continuing Guaranty of the payment and performance of Borrower's obligations under the Loan Documents (the "**Guaranty**") from Guarantors.

d. Assignment of Architectural Documents.

e. Assignment of Construction Documents.

f. Such other documents, instruments or certificates as Lender may require in its sole discretion, including such documents as Lender deems necessary or appropriate to effectuate the terms and conditions of this Agreement and the Loan Documents, and to comply with the laws of the State of Idaho and the laws of any state in which the Project is located to the extent contrary.

**4.** **Pre-Closing Requirements**. Prior to the closing and initial funding of the Loan, the following conditions must be met to Lender's satisfaction, and Borrower must meet to Lender's satisfaction all other conditions to the closing and initial funding of the Loan as Lender may specify to Borrower:

a. All Loan Documents shall have been executed and delivered to Lender by Borrower, Guarantors and such other persons or entities as Lender may require, and duly recorded and filed in the appropriate recording and filing offices, as applicable.

b. Lender shall be satisfied with the financial condition and credit of Borrower and each Guarantor and all information relating to the Project and its condition are as represented to Lender without any material adverse Change.

c.      Borrower is not in default under any term, covenant or condition of this Agreement or any of the other Loan Documents and there has not been nor is there currently outstanding any event which with the passage of time or giving of notice and lapse of a time would constitute a default under any of the Loan Documents.

d.      Unless otherwise agreed by Lender, Lender and/or the Consultant (as defined below), shall have received, at Borrower's expense, the following with respect to the Project:

(1)      An ALTA mortgagee's extended coverage policy of title insurance (the "**Title Policy**") from Pioneer Title Company of Canyon County (the "**Title Company**") in the amount of the Note, with such endorsements as Lender may require, containing only such exceptions to title as Lender deems acceptable including without limitation such evidence and/or documents to the Lender and the Title Company as shall be sufficient to secure from the Title Company priority insurance over all possible mechanic's lien claims, in the event that construction of the Improvements commenced prior to the recording of the Deed of Trust.

(2)      An All Risk Builders insurance policy in the amount required by Lender and conforming to Lender's requirements, with the Lender as named insured with no co-insurance, including earthquake and flood coverage if applicable, and commercial general liability insurance as well as all other insurance required by the Deed of Trust in the form and amounts provided for in the Deed of Trust.

(3)      Copies of the building permits for the Improvements and development agreements, zoning approvals and all other permits, approvals or licenses necessary or convenient for the Project (the "**Approvals**"); evidence that the Project consists of one or more legal lots and is otherwise in compliance with all applicable laws, ordinances and regulations regarding subdivision and platting; and evidence the Project is in full compliance with all such Approvals as well as Department of Housing and Urban Development (HUD) fair housing standards (if applicable to the Project) and other applicable governmental regulations, including environmental regulations.

(4)      A current ALTA survey of the Property.

(5)      A copy of the appraisal report by Idaho Residential Appraisals dated February 16, 2019, and updated on _____ (collectively, the "**Appraisal**").

(6)      Executed resolutions and other evidence of authority, as applicable from each entity Guarantor and the Borrower.

(7)      Confirmation of the correct address for the Property and evidence that all utilities are available to the Project.

(8)      A copy of the final plans and specifications (the "**Plans and Specifications**") for the Improvements. ANY LATER ADDITIONS, DELETIONS OR MODIFICATIONS TO THE APPROVED PLANS AND SPECIFICATIONS MUST BE APPROVED IN ADVANCE BY LENDER IN WRITING.

(9)    Evidence that the Plans and Specifications and the completed Project are consistent with any covenants, conditions and restrictions of record against the Property and that the Plans and Specifications, and the completed Project will comply with Department of Housing and Urban Development fair housing standards, if applicable to the Project.

(10)    A detailed budget (the "**Project Budget**") acceptable to Lender of the total costs involved in the Project, including accrued interest for the term of the Loan, the cost of the land, building improvements, an interest reserve for the Loan's interest and other costs (for such period requested by Lender), which shall contain a complete statement as to the source of funds from which payment of all such costs will be paid together with a schedule of completion of the Project (the "**Construction Schedule**"). An updated Project Budget and Construction Schedule shall be provided by Borrower with each Draw Request (as defined below) and at any time during the Loan when requested by Lender.

(11)    If access to the Property is by other than a dedicated public road, evidence that a proper easement has been established providing for joint maintenance.

(12)    Evidence as to the adequacy and the purity of the water if the Improvements will be served by other than a public system.

(13)    A copy of the contract with the general contractor for the Project which shall be subject to Lender's prior written approval (the "**Construction Contract**").

(14)    Fixed price contracts and evidence of bonding for all subcontractors whose contracts exceed the amount required by Lender for bonding. All bonding is to be acceptable to Lender and in a form assignable to Lender.

(15)    If requested by Lender, a list of all subcontractors, material providers, equipment providers and professions who will provide work or services for the Project.

(16)    Borrower shall have delivered to Lender lien waivers, in form and substance satisfactory to Lender from all parties with lien rights on the Property as Lender, in its sole discretion, may require.

(17)    Evidence that all offsite work for the Project is fully completed, or bonding or other arrangements for financing the completion of such work have been made.

(18)    A geotechnical report satisfactory to Lender and such other environmental reports, investigations, analyses and testing as Lender may require.

(19)    Copies of the closing documents for the purchase of the Property.

All information, documents and instruments referred to above must be acceptable to Lender in its sole discretion. If Lender disburses funds without requiring the satisfaction of all of the foregoing conditions, Borrower's obligation to meet the unsatisfied conditions shall not be

deemed waived (unless specifically waived in writing by Lender) and Lender may require compliance with each of such conditions before further Loan proceeds are disbursed.

5. **Construction Covenants.**

a. <u>Plans and Specifications; Project Budget</u>. Borrower shall complete the Project in accordance with the Plans and Specifications, the Project Budget and the Construction Schedule approved by Lender. The Loan proceeds shall be allocated to various Project costs as shown in the approved Project Budget, which Project Budget shall not be changed without Lender's prior written approval. The line items in the Project Budget may be adjusted and reallocated from time to time by Borrower, subject to the prior written approval of Lender in Lender's sole discretion. Funds allocated to an interest reserve or a contingency line item shall be used only for such purposes and at such times as Lender may approve. Lender also may initiate and determine reallocations of line items in the Project Budget from time to time when Lender determines, after prior notice to Borrower, such reallocations to be reasonable or appropriate and the overall Project costs remain at or below the Project Budget.

b. <u>Completion of Project</u>. Borrower shall cause the Project to be completed in a good and workmanlike manner of good design and materials, in compliance with all laws as well as the terms and conditions of the building permits and all other Approvals issued for the Project, and the provisions of any applicable covenants, conditions or restrictions, free and clear of all claims, liens and encumbrances other than the Deed of Trust and such other encumbrances as Lender may approve in writing. Borrower also shall comply with all applicable federal, state and local laws, including without limitation federal, state and local environmental, sensitive areas ordinances, zoning ordinances, Federal Fair Housing Act of 1968, the Americans with Disabilities Act of 1990 and all hazardous waste laws.

c. <u>Commencement and Completion</u>. Construction of the Improvements will commence within thirty (30) days after the date of this Agreement, and the Project will be completed and all Certificates of Occupancy (hereinafter defined) issued on or before the Maturity Date, or sooner as required by any agreement or governmental permit or Approval by which Borrower or the Project is bound.

d. <u>Abandonment of Construction</u>. If construction of the Improvements is at any time abandoned or discontinued for fifteen (15) consecutive days or more, or if Lender in good faith determines the work is not being performed in accordance with the approved Project Budget, Plans and Specifications, Construction Schedule and Approvals, Lender may, after five (5) days prior written notice to Borrower, enter onto the Property (or designate a third party to enter onto the Property) to complete the construction or correct any work improperly done or replace any defective material. If Lender exercises the foregoing option, Lender may employ such workmen and furnish such materials as it believes are necessary or appropriate to complete the Improvements, or correct any errors or defects in construction or workmanship, or Lender may declare a default under this Agreement. All costs incurred by Lender pursuant to this paragraph, including a reasonable sum for supervision, attorneys' fees and all related costs and expenses, shall be deemed additional advances to Borrower and secured by the Deed of Trust and the other Loan Documents and by any other collateral for the Loan, and added to the unpaid principal balance of the Loan (even if the costs so incurred, together with prior advances of Loan

proceeds, cause the outstanding principal balance to exceed the original principal amount of the Loan). Lender may disburse funds from the Construction Reserve (as defined in the Interest and Construction Reserve Agreement) to complete or correct any work and any such disbursements shall be added to the principal balance of the Loan. On demand, Borrower shall pay all costs and expenses expended by Lender pursuant to this paragraph. The five (5) day period set forth above shall be extended one (1) day for each day that the abandonment or discontinuation of construction is caused by fire, earthquake or other acts of God, strikes, lockout, acts of public enemy, riot, insurrection or governmental regulation of the sale or transportation of materials, supplies or labor, or any other cause beyond the reasonable control of Borrower; provided, in no event shall such five (5) day period be extended to a period of more than sixty (60) days, unless otherwise agreed in writing by Lender.

e.    Certificates of Occupancy. The final Improvements must be satisfactory to Lender as a condition of any final disbursement. Lender will be furnished, at Borrower's expense, with copies of the final certificates of occupancy as well as any other evidence of completion and approval by all governmental agencies of the Improvements (collectively, the "**Certificates of Occupancy**").

**6.    Consultants.** Lender may retain, at Borrower's expense, a construction consultant (the "**Consultant**") to inspect the Project, review Draw Requests (as defined below), the Plans and Specifications and the Project Budget, visit the Project, and perform such other duties as Lender deems desirable in connection with the Loan. The Consultant may make periodic inspections of the Improvements during construction to review and comment on construction progress and percentage of completion, conformity of the work with the Plans and Specifications, activity and coordination among trades and quality of workmanship, and the accuracy of the statement of percentage of completion reflected in any Draw Request submitted to Lender. Any inspections by Lender or the Consultant shall be solely for the purpose of protecting the interests of Lender, and such inspections shall not be construed as a representation to Borrower or any other person or entity that there has been or will be strict compliance on the part of any contractors or subcontractors with the Plans and Specifications or that construction of the Improvements is or will be free from faulty materials or workmanship. If the Consultant does not approve a Draw Request, or any other materials or information submitted to Lender therewith, Lender will have no obligation to make the requested advance.

**7.    Disbursements.** This Section 7 shall govern the disbursement of Loan proceeds, including any reserves retained by Lender under the Loan Documents or pursuant to this Agreement (collectively, the "**Funds**").

a.    General Conditions. Each disbursement of Funds at the request of Borrower is subject to the following general conditions:

(1)    Neither the Improvements nor any other part of the Project shall have been materially damaged by fire or other casualty, and there shall be no eminent domain or condemnation proceeding pending or threatened against the Project. This condition shall be deemed satisfied if Lender has received insurance or condemnation proceeds or a cash deposit from Borrower sufficient in Lender's judgment to pay the cost of all repairs necessary as a result of the casualty or condemnation and any related costs or expenses.

(2)    Lender shall have received a date-down endorsement to the Title Policy showing no exceptions to title to the Property other than those approved by Lender and otherwise in form and substance acceptable to Lender. In addition, at Lender's option, Lender shall have received, at Borrower's expense, upon completion of the foundations of the Improvements, a foundation endorsement to the Title Policy, in form and content acceptable to Lender, showing no encroachments of the foundations onto other property. Lender shall also have received an as-built survey in a form satisfactory to it.

(3)    Lender is not prohibited from disbursing Funds under any applicable lien laws or stop notice statutes or otherwise.

(4)    Neither Borrower nor any Guarantor is in default under this Agreement or any other Loan Document, and no event or circumstance then exists which with notice, the passage of time or both would constitute a default under any Loan Document.

(5)    No legal or administrative proceeding challenging the validity of or seeking to enjoin, set aside, review or otherwise challenge any governmental permit or Approval applicable to the Project shall be pending or threatened.

(6)    Receipt of all permits and Approvals by all governmental authorities.

(7)    No subsequent financing is filed against the Property.

(8)    All cost overruns on the Project are to be funded by Borrower or any Guarantor(s) as and when they occur.

Notwithstanding the fact of a prior disbursement, and notwithstanding that Lender may waive a requirement in connection with any Draw Request (hereinafter defined) and disbursement of Funds, Lender shall have no obligation to waive such requirement with respect to any future Draw Request and disbursement of Funds and make any future disbursement of Funds requested by Borrower. Lender may elect to make an advance of Funds notwithstanding that any one or more of the foregoing conditions is not satisfied, and by doing so Lender shall not be deemed to have waived its right to require the satisfaction of any such conditions with respect to any other advance of Funds.

b.    <u>Disbursements for Project Costs</u>. Unless otherwise agreed by Lender, all requests for disbursements of Funds shall be pursuant to a draw request ("**Draw Request**") in a form to be provided by Lender to Borrower, which Draw Requests shall be signed by Borrower and Consultant. Draw Requests shall be accompanied by the following, all of which must be acceptable to Lender and its Consultant:

(1)    Progress claims detailing all work items originally budgeted, comparisons of original cost estimates and cost to date, estimated costs to complete and Retention (defined below), by cost category. Draws for soft costs, if permitted by Lender, are to be made against a certified soft costs report indicating costs to date and costs to complete, with funds withheld to cover all unpaid and future soft costs.

(2)     Contractors progress claims with breakdown of subtrade accounts and statutory declarations that all subtrades are in current standing (or other reasonable evidence) substantiating the Project Costs covered by the Draw Request.

(3)     Executed acknowledgements of payment and releases of liens (through the date covered by the immediately preceding monthly advance) from the General Contractor, if any, and all laborers, subcontractors and materialmen performing labor or services or supplying materials in connection with the Project. Unless otherwise agreed by Lender, Lender will withhold from disbursement an amount (the "**Retention**") equal to the amount of the total Project Costs retained by Borrower as shown in the Project Budget, or such other amount deemed appropriate to Lender, to be released with the Final Disbursement.

(4)     Payment of Lender's out of pocket costs of disbursements.

(5)     Engineer's Inspection Certificate.

(6)     Certification from Borrower and the Consultant confirming:

(a)     all construction is in accordance with the approved Plans and Specifications and that construction progress is in keeping with the Construction Schedule; and

(b)     that the Project is within the Project Budget or that the balance of the remaining available Loan, together with additional funds deposited with Lender by Borrower or Guarantor as provided herein, is sufficient to complete the Project.

c.     Final Disbursement. The final disbursement of Funds shall be made only if the conditions set forth below are met to Lender's satisfaction. Furthermore, the amount of the final disbursement shall be subject to Lender's approval.

(1)     The Improvements and the Project are completed in accordance with the Plans and Specifications, Approvals and the Appraisal and such completion has been confirmed by Lender and its Consultant.

(2)     Lender shall have received, at Borrower's expense, an endorsement to the Title Policy insuring the lien-free completion of the Project, without exceptions other than those previously approved by Lender in writing.

(3)     If requested by Lender, Lender shall have received an ALTA as-built survey of the Project and an endorsement to the Title Policy eliminating title exceptions regarding possible encroachments and/or violations of easement rights.

(4)     Lender shall have received copies of all licenses, permits and certificates necessary for the lawful use and occupancy of the Improvements, including but not limited to copies of the final Certificates of Occupancy for the Improvements, which shall be unconditional unless otherwise agreed by Lender, or other evidence acceptable to Lender that the Project is completed and accepted by all necessary governmental authorities.

(5)    If requested by Lender, Lender shall have received a final accounting of Project costs from Borrower.

(6)    A certification from Borrower's architect, the general contractor and the Lender's architect (if any) that the Improvements have been completed substantially in accordance with the Plans and Specifications and the Construction Contract therefor, that the Improvements as built conform with all applicable zoning, environmental, building and land use ordinances and regulations and no municipal authority has issued any notice of violation or nonconformity in connection with the Improvements and that all utilities necessary for the use thereof have been connected to the Improvements.

(7)    A final perimeter survey or, if applicable, a recorded final subdivision plat satisfactory to the Lender and the Title Company, showing the completed Improvements and all easements on the Property together with a certification, addressed to the Lender and the Title Company, by a registered surveyor satisfactory to the Lender that the Improvements lie wholly within the boundaries of the Property without encroachment or violation of any zoning ordinances, building regulations or setback requirements.

(8)    If requested by Lender, Lender shall have received fully executed lien releases from the general contractor, if any, and all persons or entities performing labor or services or supplying materials in connection with the Project, or Borrower shall have provided Lender with an appropriate surety bond from a surety acceptable to Lender or affirmative title insurance coverage acceptable to Lender, with respect to potential laborers', mechanics' or materialmens' liens.

d.    <u>Amount of Disbursements</u>. Lender shall have no obligation to make an advance if (a) the amount of the advance plus the amount required to complete the Project plus Retention is equal or greater than the unfunded portion of the Loan which amount shall be certified to Lender in any Draw Request verified by Lender or the Consultant; (b) the percentage of any Project Cost line item in the Project Budget which is already paid out is greater than the percentage of completion of that line item plus ten percent (10%); or (c) in Lender's reasonable opinion the value of the Property as then improved is not adequate security for the Loan.

e.    <u>Loan Balancing</u>. Lender shall have no obligation to make a requested advance if, in Lender's reasonable opinion, the Loan is not "in balance"; *i.e.*, the undisbursed balance of the Loan, plus Retentions, and additional equity funds which Borrower is required to deposit with Lender pursuant to this Agreement, are not sufficient to pay in full all costs necessary to complete the Project (including without limitation the payment of interest on the Loan) in accordance with the approved Plans and Specifications and the approved Project Budget, free and clear of all liens, encumbrances and conditional sales contracts, whether the deficiency is attributable to changes in the work or in the Plans and Specifications or to any other cause. If Lender determines the Loan is not in balance, within five (5) days after demand, Borrower will deposit with Lender the amount necessary to "balance" the Loan, and all Funds so deposited with Lender shall be held and disbursed by Lender in accordance with this Agreement prior to the disbursement of any additional Loan proceeds. If Lender makes such demand, Lender shall have no obligation to make further disbursements of Funds until such additional funds are deposited with Lender by Borrower. Each Draw Request or other request for

disbursement submitted to Lender will constitute Borrower's representation and warranty to Lender that the Loan is "in balance."

       f.   <u>Use and Application of Funds</u>. Funds disbursed by Lender at Borrower's request shall be used only to pay costs shown on the Project Budget, and only in accordance with Borrower's Draw Requests. Advances of Funds may, at Lender's option, be made directly to the contractors, materialmen, laborers and subcontractors involved in the Project or jointly to Borrower and any of the foregoing. Lender shall have no obligation to assure that Funds advanced to Borrower or others are applied against the cost of the Project. Borrower accepts full responsibility for the proper application of all Funds advanced by Lender at Borrower's request. Lender may rely solely on Draw Requests submitted by Borrower or its agents and upon other affidavits, statements or reports submitted by Borrower in making advances. Borrower shall defend, indemnify and hold Lender harmless from any losses, demands, claims, attorneys' fees and expenses which may arise out of the misapplication or misuse of Loan proceeds (or other Funds) by Borrower or by any other person paid at Borrower's direction.

       g.   <u>Expenses, Fees, Etc</u>. Notwithstanding any other provision of this Agreement, Lender may elect to use Funds to pay when due, any Loan Fee payable to Lender pursuant to this Agreement, interest on the Loan, expenses of Lender which are Borrower's responsibility under this Agreement or any other Loan Document, and such other sums as may be payable from time to time by Borrower to Lender with respect to the Loan. Such payments at the option of Lender may be made by debiting or charging the Funds in the amount of such payments without first disbursing such amounts to Borrower. Borrower hereby authorizes Lender, at its option, to make such other payments as Lender deems necessary or desirable to maintain the validity and priority of the Deed of Trust, including the following, unless Borrower makes the payment within ten (10) days after written notice from Lender:

       (1)   pay delinquent assessments and taxes on the Project;

       (2)   pay title insurance premiums, recording fees, and all other insurance premiums;

       (3)   pay contractor's liens or claims of liens against the Project, subject to any right Borrower may have to contest such liens pursuant to the terms of the Deed of Trust; and

       (4)   pay judgments affecting the Project, subject to any right Borrower may have to contest such judgments pursuant to the terms of the Deed of Trust.

       **8.**   **Reporting Requirements; Additional Borrower Covenants.** Throughout the term of the Loan, Borrower, at Borrower's expense, will provide Lender with the following:

       a.   Within ninety (90) days after the end of each fiscal year each Guarantor's personal financial statements showing Guarantor's financial condition as of the end of the most recent year. All such financial statements shall be prepared in accordance with generally accepted accounting principles consistently applied (or such other accounting practices as Lender may approve) and certified as correct by the applicable person or the chief financial officer of the applicable entity.

b.      Whenever requested by Lender, evidence that taxes and assessments, worker's compensation other insurance, insurance, water charges and all other bills that could result in a lien against the Project are being promptly paid when due.

c.      Whenever requested by Lender, such instruments and documents as Lender may reasonably require as to the financial condition of Borrower or Guarantors or to further evidence the Loan or perfect or continue the perfection of Lender's liens against and security interests in the collateral for the Loan.

d.      Whenever requested by Lender, evidence Borrower is keeping the Improvements and the Project continuously insured in amounts and with insurers satisfactory to Lender, with Lender named as a loss payee and additional insured as required by Lender.

e.      Whenever requested by Lender, access to Borrower books, records, contracts, subcontracts, invoices, bills and statements, copies of which shall be delivered to Lender or its representatives at Lender's request.

f.      Whenever requested by Lender, updates to the Title Policy.

## 9.      Events of Default; Remedies.

a.      Default. Time is of the essence in all Loan Documents. Borrower will be in default under this Agreement if (i) Borrower fails to make any payment when due under the Note or any other Loan Document; (ii) Borrower fails to perform any other covenant, agreement or obligation to be performed by Borrower hereunder or under any other Loan Document, including without limitation any construction on the Property that is not in accordance with the Plans and Specifications; (iii) any representation or warranty contained in any Loan Document or any financial information furnished by Borrower or its agents to Lender in connection with the Loan proves to be false or misleading in any material respect; (iv) there is any litigation involving Borrower or a Guarantor, or any material adverse Change in the financial condition of Borrower or any Guarantor, which Lender in good faith believes will adversely affect Borrower's ability to complete the Project or otherwise pay and perform all obligations under any Loan Document; (v) Borrower defaults under any agreement relating to the construction or operation of the Project, including without limitation any agreement for services or material, and such default is not cured within the applicable cure period, if any; (vi) Borrower, or any Guarantor, is in default with respect to any other loan from Lender to Borrower, or any Guarantor; (vii) there is a default under any other loan to Borrower from any party that is secured in whole or in part by the Property, or any part thereof; (viii) Borrower or any Guarantor fails to pay his, her or its debts generally as they become due or files a petition or action for relief under any bankruptcy, reorganization or insolvency laws or makes an assignment for the benefit of creditors; (ix) an involuntary petition is filed against Borrower or any Guarantor under any bankruptcy, reorganization or other insolvency laws, or a custodian, receiver, or trustee is appointed to take possession, custody or control of the Project or the other properties of Borrower, or the assets of any Guarantor, and such petition or appointment is not set aside, withdrawn or dismissed within thirty (30) days from the date of filing or appointment; (x) a stop work order is issued on the Project by a government, judicial or legal authority with jurisdiction over the Project and the order is not dismissed within ten (10) days after the date the order is issued, or (xi) any liens are

filed against the Project which are not bonded or discharged and released as set forth in Section 11(b) herein.

      b.    <u>Remedies</u>. Upon the occurrence of a default which is not timely cured in accordance with the Loan Documents, Lender may declare the Loan to be immediately due and payable in full; make no further disbursement of Funds; and pursue any one or more of the remedies set forth herein and in any Loan Document, concurrently or successively, in addition to all other remedies available to Lender at law or in equity. No remedy conferred upon or reserved to Lender in any Loan Document, or at law or in equity, shall be exclusive of any other remedy available to Lender, and to the extent permitted by applicable law, all such remedies shall be cumulative and in addition to every other remedy available to Lender.

      c.    <u>Notice and Opportunity to Cure</u>. Notwithstanding any other provision of this Agreement, any other Loan Document, Lender will not accelerate the maturity of the Loan (a) because of a monetary default under any Loan Document unless the default is not cured within ten (10) days of the date on which Lender mails or delivers written notice of the default to Borrower, or (b) because of a non-monetary default under any Loan Document unless the default is not cured within thirty (30) days of the date on which Lender mails or delivers written notice of the default to Borrower. The term "**monetary default**" means a failure by Borrower to make any payment required of it pursuant to the Note or any other Loan Document, and the term "**non-monetary default**" shall mean a failure by Borrower or any other person or entity to perform any obligation contained in any Loan Document, other than the obligation to make payments provided for in the Note or any Loan Document. If a non-monetary default is capable of being cured and the cure cannot reasonably be completed within the thirty (30) day cure period, the cure period shall be extended up to ninety (90) days so long as Borrower has commenced action to cure within the thirty (30) day cure period, and in Lender's opinion, Borrower is proceeding to cure the default with due diligence. None of the foregoing shall be construed to obligate Lender to forbear in any other manner from exercising its remedies and Lender may pursue any other rights or remedies which Lender may have because of a default.

      d.    <u>Completion of Construction</u>. Upon the occurrence of a default which is not timely cured in accordance with the Loan Documents, Lender shall have the right, in person or through a third party designated by Lender, to take possession of the Project and perform any and all work and labor necessary to complete the Project. All sums expended by Lender in so doing shall be deemed to have been advanced under the Note and secured by the Deed of Trust and the other Loan Documents. Any Funds disbursed by Lender in excess of the maximum principal amount of the Loan will be considered an additional loan to Borrower, bearing interest at the interest rates provided for in the Note, and secured by the Deed of Trust and all other Loan Documents. Lender, by electing to so complete the Project will not be deemed to have assumed any liability to Borrower or any other person or entity for completing the Project or for the manner or quality of construction of the Project, and Borrower hereby expressly waives any such liability on behalf of Lender. Borrower hereby constitutes and appoints Lender as its true and lawful attorney in fact with full power of substitution to complete the Project in the name of Borrower and to (a) use any Funds for the purpose of completing the Project; (b) make such additions, changes and corrections in the Plans and Specifications or the Project Budget as Lender deems desirable; (c) employ contractors, subcontractors, architects and other persons as shall be required for such purposes; (d) pay, settle or compromise all existing bills and claims

which may be liens against the Project or as may be necessary or desirable for the completion of the Project or for clearance of title; and (e) do any and all things which Borrower might do on its own behalf in order to complete the Project free and clear of all liens and encumbrances. The power of attorney granted pursuant to this paragraph shall be deemed a power coupled with an interest and irrevocable.

e.    Appraisals. If the Loan has not been paid in full by the Maturity Date as defined and set forth in the Note), or if a default occurs under this Agreement or any other Loan Document, Lender may obtain, at Borrower's expense, a current regulatory conforming appraisal of the Project. In addition, appraisals of the Project may be commissioned by Lender when required by laws and regulations which govern Lender's lending practices. Unless otherwise agreed by Lender, the cost of all such appraisals (and related internal review fees and costs) will be paid by Borrower within fifteen (15) days after request by Lender.

**10.    Security Interest - Funds of Borrower; Offsets.** Borrower, as debtor, whose address is 1625 Mustang Mesa Avenue, Middleton, Idaho 83644, hereby grants Lender, as secured party, whose address is 1420 Fifth Avenue, Suite 2000, Seattle, Washington 98101, a security interest in all of Borrower's right, title and interest in the undisbursed Loan proceeds and in all reserves including, without limitation, under the Interest and Construction Reserve Agreement. Following a default which is not timely cured, Lender may apply any Funds in satisfaction of Borrower's obligations to Lender under the Loan Documents, without notice to Borrower. Furthermore, following a default which is not timely cured, Lender may apply to any obligation of Borrower under any Loan Document, or under any other agreement, any Funds, including the proceeds of the Loan or any other loan Borrower may now have or hereafter have in process with Lender.

**11.    Unauthorized Liens and Encumbrances.**

a.    No Liens or Encumbrances. Unless otherwise agreed by Lender, no equipment, materials, fixtures or any other part of the Improvements shall be purchased or installed under conditional sales agreements or other arrangements where a right is reserved or may accrue to anyone to remove or repossess such items. Furthermore, Borrower will keep the Project free and clear of all liens and claims of any kind, including without limitation, any deeds of trust, whether or not superior to the Deed of Trust, except for permitted exceptions set forth in the Title Policy or otherwise approved in writing by Lender. Furthermore, Borrower may not, without the prior written consent of Lender, enter into any easement, right-of-way or other agreement affecting the Property.

b.    Lien Claims. If any lien or claim of lien is filed against the Project, or if a notice of intent to file such a lien is received by Lender, or if a judgment or other encumbrance is placed against the Property, at Lender's option, such event shall constitute a default under this Agreement unless Borrower obtains a release and satisfaction of such lien, claim of lien, judgment or encumbrance, places a bond in sufficient amount, with sufficient security to bond around the lien in compliance with law or provides Lender with a bond (or other security) acceptable to Lender in the amount as Lender may approve in writing, within twenty (20) days of written notice by Lender to Borrower of the existence of such lien, claim of lien, judgment or encumbrance; however, in lieu of posting such bond (or other security) Borrower may provide

Lender with affirmative title insurance coverage from the issuer of the Title Policy, in form and content acceptable to Lender, with regards to the lien, claim of lien, judgment or encumbrance. In addition, Lender, at its option, may withhold from the Funds such amount as may be required by applicable law, or sufficient, in Lender's opinion, to pay the full amount of the lien, claim of lien, judgment or other encumbrance, plus any related interest, attorneys' fees and costs. Lender's rights under this paragraph shall not be affected by any claim by Borrower that the lien, claim of lien, judgment or encumbrance is invalid, it being understood that the decision of Lender to pay or withhold shall be made by Lender in its reasonable discretion, subject only to Borrower's right to provide a bond or other security satisfactory to Lender as provided above.

**12.     No Third Party Rights; Assignment.** This Agreement is made entirely for the benefit of Borrower, Lender and Lender's successor's in interest, and no third person shall have any rights under this Agreement whatsoever. Neither this Agreement nor the proceeds of the Loan shall be assignable by Borrower without Lender's prior written consent. Any attempted assignment by Borrower without Lender's consent shall be void. Borrower acknowledges it shall have no right, title or interest in and to any of the Loan proceeds until such time as such Funds have been disbursed by Lender in accordance with this Agreement. Lender and its successors and assigns may assign the whole or any part of the Loan or this Agreement or have any participant in the Loan. Each assignee or participant in the Loan shall be entitled to all of the rights and benefits of Lender under the Loan Documents.

**13.     Lien-Free Completion Guarantee by Guarantors.** Guarantors hereby specifically guarantee to Lender that the Project will be completed (a) in a good and workmanlike manner of good design and materials, in compliance with all laws, as well as the terms and conditions of the building permits and all other permits and Approvals issued for the Project, and the provisions of any applicable covenants, conditions or restrictions, and (b) free and clear of all claims, liens and encumbrances other than the Deed of Trust and such other encumbrances as Lender may approve in writing.

**14.     Miscellaneous.**

a.     <u>Costs and Expenses.</u> Whether or not suit is brought, Borrower shall pay on demand all costs and expenses, including attorneys' fees and costs, incurred by or on behalf of Lender in connection with the Loan, including without limitation, costs incurred in collection of the Loan, in protecting the security for the Loan, in foreclosing, enforcing or interpreting any Loan Document, or resulting from Lender being made a party to any litigation because of the existence of the Deed of Trust, any other Loan Document. Without limiting the generality of the foregoing, if Borrower becomes the subject of any bankruptcy or insolvency proceeding, Borrower shall pay all fees and expenses incurred by Lender in connection with such bankruptcy or insolvency proceeding. Lender also shall have the right to commence an action or appear in any proceeding or action affecting the Property, the rights and duties of the parties hereunder, or the payment of funds pursuant to this Agreement. Lender shall have the right to incur expenses, employ counsel and pay legal fees and to charge the Loan account or any other funds of Borrower held by Lender. In addition to the foregoing, Borrower shall pay all fees, expenses and charges of Lender with respect to the Loan, including any costs or expenses incurred by Lender in connection with the satisfaction of any pre-closing or funding conditions, such as credit report services, appraisal and internal appraisal review fees, title insurance charges and other

out-of-pocket expenses of Lender, regardless of whether the Loan is closed, including charges of legal counsel.

b.   <u>Further Assurance</u>. Borrower will, whenever and as often as it shall be requested so to do by Lender, cause to be executed, acknowledged or delivered any and all such further instruments and documents as may be necessary or proper, in the reasonable opinion of Lender, in order to carry out the intent and purpose of this Agreement.

c.   <u>Notices</u>. Any notice, report, or other communication required or permitted to be given hereunder shall be in writing and shall be deemed given on the date of delivery if delivered by courier or by fax; or three (3) days after mailing, if mailed first class mail, postage prepaid, return receipt requested; or one (1) day after delivery by the sender to a nationwide overnight delivery service charges prepaid, return receipt requested. Any notice to Borrower shall be mailed or delivered to the address of the Grantor specified in the Deed of Trust or such other address as Borrower may from time to time specify in writing, and any notice to Lender shall be mailed or delivered to the address of the Beneficiary specified in the Deed of Trust or such other address as Lender may from time to time specify in writing.

d.   <u>Heirs and Assigns; Terminology</u>.  This Agreement applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.  In this Agreement, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.  Unless the context in which used clearly requires otherwise, "or" has the inclusive meaning represented by the phrase "and/or", and the words "shall" and "will" have the same meaning and effect as "must" and indicate a requirement or obligation.

e.   <u>Applicable Law</u>. This Agreement shall for all purposes be governed by and construed in accordance with the internal laws of the State of Idaho, without giving effect to principles regarding conflict of laws, and in the event any action is brought to enforce the provisions of this Agreement the venue of same shall be laid in Canyon County, Idaho. This Agreement is the result of substantial negotiations between Borrower and Lender and shall be construed in accordance with the fair intent and meaning of the language contained in this Agreement in its entirety and not for or against either party, regardless of which party (or its legal counsel) was responsible for its preparation.

f.   <u>Nonwaiver</u>. The failure of Lender to insist upon strict performance of a covenant or obligation of Borrower under this Agreement shall not be deemed a waiver of Lender's right to demand strict compliance therewith in the future, nor will a periodic advance of Funds by Lender waive any condition to advance not fulfilled at the time of the advance.

g.   <u>Modification</u>. No modification or amendment of any provision in this Agreement, any other Loan Document shall be effective unless set forth in writing and signed by Lender and Borrower.

h.   <u>Counterparts</u>. This Agreement and any other Loan Document (other than the Note) may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**NOTICE: ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT IN EXCESS OF $50,000.00, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER IDAHO LAW.**

[Signatures follow on next page]

DATED as of the day and year first written above.

"LENDER"                    BRMK LENDING, LLC,
                            a Delaware limited liability company

                            By:   Broadmark Realty Capital Inc., a Maryland corporation,
                                  its Sole Member


                            By_____
                            Name:      Jeffrey B. Pyatt
                            Title:     President and Chief Executive Officer


"BORROWER"                  BEST VIEW CONSTRUCTION & DEVELOPMENT LLC,
                            an Idaho limited liability company


                            By_____
                              Gaven King, Member


"GUARANTORS"

                            _____
                            Gaven King, individually and on behalf of his marital
                            community


                            _____
                            Zandra King, individually and on behalf of her marital
                            community

**EXHIBIT A**

**Legal Description**

Lots 1 through 6, of Best View Quads Subdivision as shown on the official plat thereof, filed in Book 48 of Page 47, records of Canyon County, Idaho.

Tax Parcel Nos. 32249000 0, 32249010 0.

Address:  1910 Sunnyridge Road, Nampa, Idaho 83686.

**PROMISSORY NOTE**

$1,500,000.00                                                                          Nampa, Idaho

_____, 2021

      FOR VALUE RECEIVED, BEST VIEW CONSTRUCTION & DEVELOPMENT LLC, an Idaho limited liability company ("**Borrower**"), promises to pay to the order of BRMK LENDING, LLC, a Delaware limited liability company ("**Lender**"), at 1420 Fifth Avenue, Suite 2000, Seattle, Washington 98101, or at such other place or places as Lender may in writing designate, the sum of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00) (the "**Principal**"), in lawful money of the United States, together with interest thereon from the date hereof at the rate specified below until such funds are repaid (the "**Loan**").

      1.    <u>Interest Rate</u>. Except as otherwise provided herein, commencing on the date hereof, the annual interest rate shall be twelve percent (12%) (the "**Basic Interest Rate**"). The Basic Interest Rate shall be charged on the amount of Principal actually outstanding on the Loan. The Basic Interest Rate shall be charged for the actual number of days within the period for which interest is being charged based on a 360-day year and shall be compounded monthly, with such monthly period being computed from the last business day of each month to the last business day of the following month. Interest which accrues on the Loan is called the "**Basic Interest**".

      2.    <u>Interest Payments</u>. Borrower shall make monthly payments of interest only on the last business day of each month until this Promissory Note (the "**Note**") is paid in full. Payments shall be equal to the Basic Interest Rate computed as set forth above on twelve percent (12%) of the Principal amount outstanding on the Loan. Payments shall commence on the last business day of the month following the month in which this Note is executed; provided, that Lender shall collect the first interest payment out of the first advance hereunder. Basic Interest not paid when due shall be added to the Principal and bear interest at the Default Rate (defined below).

      3.    <u>Maturity Date</u>. All outstanding Principal and Basic Interest thereon to the date of payment, and any and all other sums due and payable under this Note, shall be due and payable on September 1, 2021 (the "**Maturity Date**"), unless Borrower's obligations hereunder become due sooner because of acceleration.

      4.    <u>Prepayment</u>. Borrower may prepay the Principal, in whole or in part, at any time without notice or penalty. No prepayment of the Principal shall reduce or otherwise entitle Borrower to a refund of any portion of the Loan Fee (defined below), any extension fee or any interest paid hereunder.

      5.    <u>Loan Fee</u>. Borrower shall pay Lender a loan fee equal to Thirty Thousand and 00/100 Dollars ($30,000.00), which shall be paid out of the first disbursement of Loan proceeds (the "**Loan Fee**"). The Loan Fee shall be deemed earned in full on the date of advance hereunder, it being the understanding and acknowledgement of Borrower that Lender would not make this Loan to Borrower without this condition. The Loan Fee shall be advanced on the date of the first advance under this Note and is included in the Principal amount set forth above.

6.      Late Charge. If any payment hereunder is not paid in full within ten (10) days after it is due (or if such day is not a business day, the next business day), Borrower shall pay Lender a "late charge" equal to ten percent (10%) of the overdue payment (including without limitation, any balloon payment or payment due on the Maturity Date) in order to defray part of the increased cost of collection occasioned by any such late payments as liquidated damages and not as a penalty. Borrower agrees that the late charge is a reasonable estimate of the anticipated damages to Lender as a result of the late payment. Such amount shall be due with the next monthly payment (and immediately due in the case of a balloon payment or payment due on the Maturity Date). This provision shall not be deemed to excuse a late payment or be deemed a waiver of any other rights Lender may have, including the right to declare a Default (defined below) hereunder.

7.      Default Rate. In the event of Borrower's failure to make any payment when the same is due, or in the event that Borrower fails to reimburse Lender for any amount advanced by or for the account of Lender within three (3) business days after written demand therefor is made by Lender to Borrower, then such unpaid amount (including, without limitation, payment due on the Maturity Date) or unreimbursed amount shall, to the extent permitted by applicable law, thereafter bear interest at a rate per annum equal to twenty-four percent (24%), and shall be compounded monthly (the "**Default Rate**"). All amounts past due shall be payable on demand.

8.      Due on Sale. The entire balance of Principal outstanding plus accrued interest and any and all other sums due hereunder shall be immediately due and payable if Borrower sells or otherwise transfers the Property, or any interest therein, without Lender's prior written consent, which may be withheld in Lender's sole discretion. A transfer of any interest in Borrower shall constitute a transfer requiring Lender's prior written consent. Borrower and Lender acknowledge and agree that the Property consists of six (6) separate lots which are being improved with the funds advanced under this Note. Lender shall, upon the request of Borrower, and provided Borrower is not in default hereunder, or under any of the other Loan Documents, grant a deed of reconveyance for an individual lot composing the Real Property (the "Lot") when a Lot is sold by Borrower to a third party person or entity, provided, however that, Borrower pays to Lender at closing one hundred percent (100%) of the Net Sales Proceeds for each Lot sold.  As used herein, "Net Sales Proceeds" means the total consideration of every type, nature or description paid or to be paid by any person or entity to Grantor in connection with the purchase of a Lot, less the following expense items (the "**Approved Expense Items**"):

8.1      Commissions to real estate brokers estimated at 3% of gross sales price, if any, and other customary seller's fees and expenses payable to unrelated third parties, estimated at 2% of gross sales price, all as approved by Lender.  Any fees payable to Borrower or any related party of Borrower shall not be an Approved Expense Item.

8.2      A vendee's lien that may attach to the subject Lot to the extent that it is senior to that certain pre-petition Deed of Trust, Security Agreement and Fixture Filing With Assignment of Leases and Rents dated September 30, 2019, and recorded on October 2, 2019, as Instrument No. 2019-047003, records of Canyon County, Idaho in favor of Lender (the "Pre-Petition Deed of Trust").

8.3      Any mechanic's or materialmen's lien that may attach to the subject Lot to the extent that it is senior to the Pre-Petition Deed of Trust referenced above.

8.4      The payment of Lender's allowed claim for its pre-petition loan pursuant to Borrower's confirmed plan of reorganization in Bankruptcy Case No. 20-00674 – JMM, District of Idaho.

9.      <u>Default</u>. Borrower shall be in default under this Note (a "**Default**") if (i) any amount due hereunder is not paid within ten (10) days of the date such amount is due, unless such amount is all of the outstanding Principal and Basic Interest thereon and all other sums due and payable on the Maturity Date, or (ii) this Note is not repaid in full on or before the Maturity Date, or (iii) default shall be made in compliance with any other term, covenant, or condition of this Note, the Deed of Trust (defined below), or any other agreement, assignment, pledge, deed of trust, security agreement, or other document or instrument evidencing or securing (or otherwise executed in connection with) this Note or the Loan evidenced hereby (collectively, the "**Loan Documents**"), which is not cured within ten (10) days after written notice from Lender to Borrower (or such other cure period as may be specified in the applicable Loan Document if longer), or (iii) Borrower is in default under any loan to Borrower from another party, including, without limitation, any loan secured in whole or in part by the Property, or any part thereof, which is securing this Note, or (iv) Borrower, any guarantor of the Loan (each such guarantor, a "**Guarantor**"), any beneficial owner of Borrower, or any entity in which a beneficial owner of Borrower has an interest, is in default under any loan from Lender, or from an entity owned or controlled by Lender or any beneficial owner of Lender, or (v) Borrower or any Guarantor fails to pay his, her or its debts generally as they become due or files a petition or action for relief under any bankruptcy, reorganization or insolvency laws or makes an assignment for the benefit of creditors or an involuntary petition is filed against Borrower or any Guarantor under any bankruptcy, reorganization or other insolvency laws, or (vi) a custodian, receiver, or trustee is appointed to take possession, custody or control of the Property or any other properties of Borrower or the assets of any Guarantor, and such petition or appointment is not set aside, withdrawn or dismissed within thirty (30) days from the date of filing or appointment, or (vii) any representation or warranty contained in this Note or any other Loan Document, or any financial information furnished by Borrower to Lender in connection with the Loan, proves to be false or misleading in any material respect, or (viii) Borrower defaults under any lease or other contract or agreement relating to the Property, and such default is not cured within the applicable cure period, if any, or (ix) there is a Default or an event of Default under any other agreement between Borrower and Lender, or (x) the death, dissolution or liquidation of Borrower or any Guarantor.

10.      <u>Remedies</u>. In the event of a Default hereunder Lender may, at the option of Lender, exercise any and all of the rights, powers, and remedies afforded Lender by law, in equity or under the Loan Documents and any other instrument or documents evidencing or securing (or otherwise executed in connection with) this Note or the Loan evidenced hereby, including without limitation, the right to declare the unpaid Principal of this Note, together with accrued, but unpaid, interest on such Principal and late charges, and all other amounts due hereunder, computed in accordance with the terms hereof, immediately due and payable without demand or notice, and the lien or liens given to secure its payment may be foreclosed. Failure to exercise this option shall not constitute a waiver of the right to exercise such option in the event of any subsequent default. All of the rights of Lender provided for in this Note and in any other

Loan Document are cumulative of each other and not exclusive. The resort to any right shall not prevent the concurrent or subsequent exercise of any other right.

11.    <u>Application of Payments</u>. Payments shall be applied to late charges, to all legal and collection fees, to accrued but unpaid interest, to unpaid Principal, and to any other sums due and unpaid under the Loan Documents, in such manner and order as Lender may elect in its sole discretion.

12.    <u>Financial Reports and Records</u>. Borrower shall provide, or cause to be provided, to Lender, until all outstanding Principal and Basic Interest thereon to the date of payment, and any and all other sums due and payable under this Note, are paid in full, the following financial documents:  (i) quarterly financial statements of Borrower within thirty (30) days of each quarter end; (ii) annual financial statements for each Guarantor within thirty (30) days of each calendar year end; and (iii) the tax returns for Borrower and each Guarantor within thirty (30) days of filing, but in any event not later than two hundred ten (210) days after the date on which returns are first due (prior to any extensions). If any federal tax return is not filed on or before the date on which such returns are first due (prior to any extensions), copy(ies) of IRS extension form(s) (reflecting IRS approval when required for the extension) must also be provided to Lender. At Lender's sole discretion, Lender may from time to time require further financial information from Borrower or any Guarantor, which Borrower shall provide, or cause to be provided, as soon as reasonably possible. Upon ten (10) days written notice by Lender, Borrower shall provide Lender with access to Borrower's corporate records, books and financial records maintained by Borrower as part of its regular course of business.

13.    <u>Costs of Collection</u>. If this Note is placed in the hands of an attorney for collection or is collected through any court or through private enforcement proceedings, then Borrower agrees to pay Lender, in addition to Principal, interest and any other sums owing to Lender hereunder and under the other Loan Documents, all costs and expenses incurred by such holder in trying to collect this Note or in any suit or proceeding, including, without limitation, reasonable attorneys' fees and expenses, investigation costs, whether or not suit is filed hereon, whether before or after the Maturity Date, whether in connection with bankruptcy, insolvency or appeal, and whether collection is made against Borrower or any Guarantor of the Loan or endorser or any other person primarily or secondarily liable hereunder.

14.    <u>Lender's Legal Fees</u>. Borrower shall pay to Lender all of Lender's reasonable attorneys' fees and legal expenses incurred for work done with respect to the preparation and negotiation of this Note and the Loan Documents.  Borrower agrees and acknowledges that the fees and expenses outlined in this paragraph are fully earned, shall be added to the Principal of this Note and will not be subject to refund, except as required by law.

15.    <u>Commercial Purpose</u>. By its execution of this Note, Borrower represents and warrants to Lender that the Loan proceeds will be used exclusively for commercial, investment, or business purposes and that no Loan proceeds will be used for personal, family, household or agricultural purposes. If any term, provision or condition of this Note (or the loan transaction evidenced hereby) enables Borrower to plead successfully the defense of usury or maintain any action thereon or therefor, then and in that event, the parties hereto agree that any such term, provision or condition shall be reduced or amended to the extent the same would otherwise be usurious and such reduced amount shall be the maximum amount and rate of interest herein. The

provisions of this paragraph shall control every other provision of this Note and any instrument securing this Note.

16. <u>Waiver</u>. Borrower waives any right of offset, demand, counterclaim or deduction that Borrower may now or hereafter have against Lender or its successors and assigns, and also waive presentment for payment, demand, protest and notice of dishonor, protest, and demand, and all other notices. The failure of Lender to insist upon strict performance of a covenant or obligation of Borrower under this Note shall not be deemed a waiver of Lender's right to demand strict compliance therewith in the future, nor will a periodic advance of Loan funds by Lender waive any condition to advance not fulfilled at the time of the advance. None of Lender's rights or Borrower's obligations contained in this Note may be waived unless by written agreement signed by Lender.

17. <u>Security</u>. This Note constitutes an actual loan from Lender to Borrower in the amount of the face amount hereof, and the repayment of this Note is secured by a first lien position Deed of Trust, Security Agreement and Fixture Filing With Assignment of Leases and Rents of even date herewith (the "**Deed of Trust**") on certain real property owned by Borrower and commonly known as 1910 Sunnyridge Road, Nampa, Idaho 83686 (the "**Property**"), and by the guaranties of certain entities and individuals. Borrower has filed for bankruptcy protection in Case No. 20-00674 – JMM, District of Idaho, and Lender is only willing to make this loan as debtor-in-possession financing pursuant to 11 USC Section 364 (d) (1), and as a result of order of the bankruptcy court, all amounts owed hereunder have priority over any and all other obligations of Borrower and the related Deed of Trust securing this Note has priority over all matters encumbering the Property or otherwise.

18. <u>Joint and Several Liability</u>. The obligations of each entity or individual comprising Borrower hereunder shall be joint and several. Each entity or individual comprising Borrower has a material financial interest in the purposes for which the proceeds of the Loan are to be applied, will directly benefit from the Loan and has executed this Note and the other Loan Documents as a principal and not as a surety.

19. <u>Notices</u>. Any notice, report, or other communication required or permitted to be given hereunder shall be in writing and shall be deemed given on the date of delivery if delivered by courier or by fax; or three (3) days after mailing, if mailed first-class mail, postage prepaid, return receipt requested; or one (1) day after delivery by the sender to a nationwide overnight delivery service charges prepaid, return receipt requested, to the addresses or fax numbers, as applicable, set forth below.

20. <u>Waiver of Jury Trial</u>. THE PARTIES WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH BORROWER AND LENDER MAY BE PARTIES, ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY PERTAINING TO, THIS NOTE OR ANY OF THE OTHER LOAN DOCUMENTS. IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTION OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS NOTE. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY BORROWER AND LENDER, AND BORROWER AND LENDER HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY

INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. BORROWER AND LENDER FURTHER REPRESENT AND WARRANT THAT THEY HAVE BEEN REPRESENTED IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAVE HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF THEIR OWN FREE WILL, AND THAT THEY HAVE HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

21.    <u>Fees and Costs</u>. In addition to all other sums to be paid hereunder, Borrower agrees to pay, on or before the date hereof, (i) Lender's reasonable attorneys' fees and costs for services rendered in connection with the negotiation and consummation of the Loan evidenced hereby, including preparation of the Loan Documents (including this Note and the Deed of Trust); (ii) the cost of an ALTA Extended Coverage Loan Policy or Policies of Title Insurance issued by Pioneer Title Company of Canyon County (the "**Title Company**") (or such other title insurance company selected by Lender) to insure Lender's interest in the Deed of Trust; (iii) real property appraisal fees, appraisal review fees and environmental audit and review fees and expenses and all other fees and expenses related to the Loan; and (iv) settlement fees, escrow related costs and charges of the Title Company to close this Loan. The foregoing amounts shall be paid out-of-pocket by Borrower.

22.    <u>Heirs, Successors and Assigns</u>. Whenever reference is made to Borrower or Lender, such reference shall be deemed to refer to and include the heirs, executors, legal representatives, successors and assigns thereof, the same as if in each case expressed, it being expressly agreed that the rights and obligations of all parties named in or liable under this Note shall inure to the benefit of and be binding upon such parties and their respective successors in title, heirs, executors, legal representatives, successors and assigns. Notwithstanding the foregoing sentence, Borrower shall have no right to assign, transfer, or encumber any right or obligation under this Note without prior written consent of Lender. Lender may, at any time, without notice to or the consent of Borrower, sell, transfer, or assign this Note and the other Loan Documents, and any or all rights with respect thereto.

23.    <u>Construction of Documents</u>. Notwithstanding any other contrary provision, in the event of any conflict between this Note and any other document referred to or executed in connection with this Note, the provisions of this Note shall control. The parties hereto agree and acknowledge that no rule of construction permitting or requiring any claimed ambiguities to be resolved against the drafting party shall be employed in the interpretation of this Note or any of the other documents referred to or executed in connection with this Note.

24.    <u>General Provisions</u>. Time is of the essence with respect to Borrower's obligations under this Note. A determination that any provision of this Note is unenforceable or invalid shall not affect the enforceability or validity of any other provision and the determination that the application of any provision of this Note to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances. Lender is hereby authorized to disseminate any information it now has or hereafter obtains pertaining to the Loan, including, without limitation, any security for this Note and credit or other information on Borrower, any of its principals and any Guarantor of this Note, to any actual or prospective assignee or participant with respect to the Loan, to any of Lender's affiliates, and to any other parties as necessary or appropriate in

Lender's reasonable judgment. Captions and headings in this Note are for convenience only and shall be disregarded in construing it. In any action or proceeding to recover any sum herein provided for, no defense of adequacy of security or that resort must first be had to any security or to any other person shall be asserted.

25.    Governing Law. This Note and the rights and duties of the parties hereto shall be construed and determined in accordance with the internal laws of the State of Idaho, without giving effect to principles regarding conflict of laws. The parties hereby submit to the exclusive jurisdiction of the United States District Court for the District of Idaho and of any Idaho state court sitting in Canyon County, Idaho for purposes of all legal proceedings arising out of or relating to this Note, the other Loan Documents or the transactions contemplated hereby or thereby.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT IN EXCESS OF $50,000.00, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER IDAHO LAW.**

"BORROWER"                    BEST VIEW CONSTRUCTION & DEVELOPMENT LLC,
                              an Idaho limited liability company


                              By_____
                                 Gaven King, Member


**ADDRESSES:**

To Lender:         BRMK Lending, LLC
                   1420 Fifth Avenue, Suite 2000
                   Seattle, WA  98101
                   Telephone:  (206) 971-0800

To Borrower:       Best View Construction & Development LLC
                   1625 Mustang Mesa Avenue
                   Middleton, ID  83644
                   Telephone:  (208) 914-1774

**RETURN ADDRESS:**
BRMK Lending, LLC
1420 Fifth Avenue, Suite 2000
Seattle, WA  98101

---

# DEED OF TRUST, SECURITY AGREEMENT
# AND FIXTURE FILING WITH
# ASSIGNMENT OF LEASES AND RENTS

THIS DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF LEASES AND RENTS ("Deed of Trust") is made as of _____, 2021, by BEST VIEW CONSTRUCTION & DEVELOPMENT LLC, an Idaho limited liability company ("Grantor"), as grantor and debtor, whose address is 1625 Mustang Mesa Avenue, Middleton, Idaho 83644; to PIONEER TITLE COMPANY OF CANYON COUNTY ("Trustee"), as trustee, whose address is 610 South Kimball Avenue, Caldwell, Idaho 83605; for the benefit of BRMK LENDING, LLC, a Delaware limited liability company ("Beneficiary"), as beneficiary and secured party, whose address is 1420 Fifth Avenue, Suite 2000, Seattle, Washington 98101.

## WITNESSETH:

GRANTOR HEREBY IRREVOCABLY GRANTS, BARGAINS, SELLS, CONVEYS, TRANSFERS AND ASSIGNS:

A.      To Trustee for the use and benefit of Beneficiary, its successors and assigns, in trust, with power of sale and right of entry and possession, all of its present and future estate, right, title and interest in and to that certain real property located in the County of Canyon, State of Idaho, as more particularly described in Exhibit A attached hereto and made a part hereof, including all hereditaments, privileges, reversions, remainders, development rights and audits, air rights, appurtenances, easements and rights thereto, of every kind and nature, or used in connection therewith or as a means of access thereto, together with all right, title and interest that Grantor now has or may hereafter acquire in the following and any proceeds thereof:

1.      All income, rents, royalties, revenues, issues, profits and proceeds from any and all of such real property, subject, however, to the right, power and authority hereinafter conferred upon Beneficiary or reserved to Grantor to collect and apply such income, rents, royalties, revenues, issues, profits and proceeds.

2019-97                              DEED OF TRUST                                    Page 1 of 33
4815-1467-7980.2

2.      All deposits or other security or advanced payments, including, without limiting the generality of the foregoing, rental payments, made by or on behalf of Grantor to others with respect to (i) utility service for all or any part of said property or any improvements thereon, (ii) insurance policies relating to said property or any improvements thereon, (iii) cleaning, maintenance, repair or similar services for said property or any part thereof or any improvements thereon, (iv) rental of equipment used in the operation of any part of said property or any improvements thereon, and (v) parking services for all or any part of said property.

3.      All fixtures now or hereafter affixed to such real property, including all buildings, structures and improvements of every kind and description now or hereafter erected or placed thereon and any and all machinery, boilers, equipment (including, without limitation, all equipment for the generation or distribution of air, water, heat, electricity, light, telephone, fuel or refrigeration or for ventilating or air-conditioning purposes or for sanitary or drainage purposes or for the removal of dust, refuse or garbage), fire sprinklers and alarms, control devices, partitions, appliances, cabinets, awnings, window shades, blinds, drapes and drapery rods and brackets, screens, carpeting and other floor coverings, incinerators and other property of every kind and description now or hereafter placed, attached, affixed or installed in such buildings, structures or improvements, and all replacements, repairs, additions, accessions or substitutions or proceeds thereto or therefor; but excluding the movable trade fixtures owned by tenants leasing space in the Improvements; all of such fixtures, including buildings, whether now or hereafter placed thereon, being hereby declared to be real property and referred to hereinafter as the "Improvements".

4.      All damages, royalties and revenue of every kind, nature and description whatsoever that Grantor may be entitled to receive from any person or entity owning or having or hereafter acquiring a right to the oil, gas or mineral rights and reservations of such real property, with the right in Beneficiary to receive and receipt therefor and apply the same to the indebtedness secured hereby either before or after any Default (as hereinafter defined) hereunder, and Beneficiary shall have the right to demand, sue for and recover any such payments but shall not be required so to do.

5.      All proceeds and claims arising on account of any damage to or taking of such real property or the Improvements or any part thereof, and all causes of action and recoveries for any loss or diminution in the value of such real property or the Improvements, including the proceeds of any policy of insurance covering the Improvements or the proceeds of any condemnation action or transfer in lieu of condemnation.

All of the property conveyed or intended to be conveyed to Trustee in Paragraph A above is hereinafter referred to as the "Real Property".  Grantor represents that the Real Property meets at least one of the following conditions: (a) it is located within an incorporated city or village as of the date of this Deed of Trust, (b) it does not exceed 40 acres, regardless of its use, or (c) it does not exceed 80 acres and is not principally used for the agricultural production of crops, livestock, dairy, or aquatic goods.

B.     To Beneficiary, as secured party, a security interest in any portion of the Real Property owned by Grantor which may be construed to be personal property and in all other personal property of every kind and description, whether now existing or hereafter acquired and owned by Grantor, or in which Grantor has an interest, now or at any time hereafter attached to, erected upon, situated in or upon, forming a part of, appurtenant to, used or useful in the construction or operation of or in connection with, or arising from the use or enjoyment of all or any portion of, or from any lease or agreement pertaining to, the Real Property, including:

1.     All equipment, machinery, inventory, fixtures, fittings, appliances, apparatus, furnishings, furniture and all other property of every kind and any replacements thereof or additions thereto now or at any time appurtenant to or located upon the Real Property; all personal property of every kind now or at any time hereafter located on or appurtenant to the Real Property and used in connection with the use, enjoyment, occupancy or operation of the Real Property. Without limiting the foregoing general description, such property includes all equipment and facilities for the generation or distribution of air, water, heat, electricity, light, fuel, telephone, or refrigeration, or for ventilation or air conditioning purposes or for sanitary drainage purposes or for the removal of dust, refuse or garbage, or for any activity related to the maintenance or repair of the Real Property, or for the pursuit of any other activity in which Grantor may be engaged on the Real Property, and including without limitation all motor vehicles owned, leased or used by Grantor, tools, musical instruments and systems, cabinets, awnings, window shades, venetian blinds, drapes and drapery rods and brackets, screens, carpeting and other window and floor coverings, decorative fixtures, plants, cleaning apparatus, and cleaning equipment, refrigeration equipment, cables, computers, software, books, supplies, kitchen equipment, tractors, lawn mowers, ground sweepers and tools, swimming pools, Jacuzzis, recreational or play equipment together with all substitutions, accessions, repairs, additions and replacements to any of the foregoing.

2.     All goodwill, trademarks, trade names, all names by which the Property is operated or known, option rights, purchase contracts, goods, consumer goods, documents, books and records and general intangibles of Grantor relating to the Real Property; all accounts, deposit accounts, contract rights, instruments, chattel paper and other rights of Grantor for payment of money, for property sold or lent, for services rendered, for money lent, or for advances or deposits made, and any other intangible property of Grantor related to the Real Property.

3.     All water stock relating to the Real Property, shares of stock or other evidence of ownership of any part of the Real Property that is owned by Grantor in common with others, and all documents of membership in any owners' or members' association or similar group having responsibility for managing or operating any part of the Real Property.

4.     All plans and specifications prepared for construction of the Improvements and all surveys, maps, plats, studies, data and drawings related thereto; and also all contracts and agreements of Grantor relating to such plans and specifications or to such studies, data and drawings, or to the construction, maintenance or repair of the Improvements.

5.    All licenses (including, but not limited to, any gambling licenses, liquor licenses, operating licenses or similar matters), contracts, performance bonds, management contracts or agreements, franchise agreements, permits, authorizations, approvals or certificates required or used in connection with the construction, ownership, operation, repair or maintenance of the Improvements.

6.    All substitutions, accessions, additions and replacements to any of the foregoing; all proceeds of any of the foregoing property, including, without limitation, proceeds of any voluntary or involuntary disposition, diminution in value or claim respecting any such property (pursuant to judgment, condemnation award or otherwise) and all goods, documents, general intangibles, chattel paper and accounts, wherever located, acquired with cash proceeds of any of the foregoing or proceeds thereof.

7.    All books and records of every kind and nature relating in any way to the Real Property.

All of the property assigned or transferred or intended to be assigned or transferred to Beneficiary in Paragraph B above is hereinafter referred to as the "Personal Property". This Deed of Trust also constitutes a Security Agreement under the Idaho Uniform Commercial Code and any other applicable law.

All of the Real Property and the Personal Property is referred to herein collectively as the "Property". The parties intend that the definition of Property is to be broadly construed and in the case of doubt as to whether a particular item is included in the definition of Property, the doubt should be resolved in favor of inclusion.

The Grantor acknowledges and agrees that it has filed for bankruptcy protection in Case No. 20-00674 – JMM, District of Idaho, and Beneficiary is only willing to make the loan secured by this Deed of Trust as debtor-in-possession financing pursuant to 11 USC Section 364 (d) (1), and as a result of order of the bankruptcy court, all amounts owed under the Note and secured by this Deed of Trust have priority over any and all other obligations of Borrower and this Deed of Trust has priority over all matters encumbering the Property or otherwise.

TO HAVE AND TO HOLD the Property bargained and described, together with all and singular the lands, tenements, privileges, water rights, hereditaments and appurtenances thereto belonging or in any way appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all of the estate, right, title, claim and demands whatsoever of Grantor, either in law or in equity, of, in and to the above-bargained property forever,

FOR THE PURPOSE OF SECURING:

1.    Payment of the indebtedness (the "Loan") evidenced by a Promissory Note of even date herewith and any renewals, extensions or modifications thereof and any replacements or substitutions therefor, in the original principal amount of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00), or so much thereof as is advanced by Beneficiary, executed

by Grantor and delivered to Beneficiary (the "Note"), together with the interest thereon, and the fees and other charges as provided by the Note, which is made a part hereof by reference, and such further sums as may be advanced or loaned by Beneficiary to Grantor.

2.      Payment of such further sums as Grantor may hereafter borrow from Beneficiary when evidenced by another note or instrument reciting it is so secured, payable to Beneficiary or order and made by Grantor or any successor in ownership, together with all extensions, renewals, modifications, amendments and replacements thereto.

3.      Performance of each agreement of Grantor herein contained or contained in any other agreement given by Grantor or any other persons or entity to Beneficiary for the purpose of further securing any indebtedness hereby secured, or executed in connection with, the making of the Loan secured hereby, including, without limitation, the Note; this Deed of Trust; Assignment of Leases and Rents; UCC Financing Statement(s); Construction Loan Agreement (if any); and any and all other agreements entered into in connection herewith, but expressly excluding that certain Guaranty (the "Guaranty") of Gaven King and Zandra King, husband and wife (collectively as "Guarantor"), and that certain Environmental Certificate and Indemnity Agreement entered into in connection herewith (the "Environmental Certificate"). The Note, this Deed of Trust, the Assignment of Leases and Rents, the UCC Financing Statement(s), the Construction Loan Agreement (if any) and any and all other agreements entered into in connection herewith, are collectively (except the Guaranty and Environmental Certificate) referred to herein as the "Loan Documents".

GRANTOR REPRESENTS, WARRANTS, COVENANTS AND AGREES AS FOLLOWS:

## ARTICLE I
## COVENANTS

### 1.1     Payment of Note and Performance of Deed of Trust.

Grantor shall pay the principal, interest and other charges payable under the Note according to its terms, and will perform and comply with each and every term, covenant and condition hereof, and of the Note, and all of the other Loan Documents.

### 1.2     Warranty of Title

Grantor represents and warrants that at the time of the delivery of this Deed of Trust: (i) Grantor is seized in fee simple of the Real Property and owns outright every part thereof; (ii) there are no liens or encumbrances against or upon the Real Property other than those permitted by Beneficiary on its mortgagee's policy of title insurance insuring the lien of this Deed of Trust (the "Permitted Encumbrances"), and none will be created or suffered to be created by Grantor during the term of this Deed of Trust, except as have been disclosed to and approved by Beneficiary in writing and upon such terms and conditions as may be satisfactory to Beneficiary; (iii) Grantor has good right to make this Deed of Trust; (iv) Grantor has good and absolute title to all existing Personal Property, and has good right, full power and lawful authority to convey and encumber the same in the manner and form conveyed and encumbered

hereby; (v) the Personal Property, is free and clear of all liens, charges, and encumbrances whatsoever, including, security agreements, conditional sales contracts and anything of a similar nature, and none will be created or suffered to be created by Grantor; (vi) there is no financing statement covering the Property, or any part thereof, on file in any public office; (vii) the Real Property constitutes one or more tax parcels, each with a separate tax assessment independent of any land or improvements not covered by this Deed of Trust; (viii) the Real Property constitutes one or more legal lots capable of being conveyed without violation of any subdivision or platting laws or regulations; and (ix) Grantor will warrant and forever defend the title to the Property against the claims of all persons whomsoever.

### 1.3    Tax Deposits and Insurance.

Upon written demand of Beneficiary after a Default, and until such Default is cured, or at such time as there have been more than four (4) late payments under the Note, Grantor will pay to Beneficiary or its servicing agent on the first day of each month, together with and in addition to the regular installments due under the Note, an amount equal to one-twelfth (1/12) of the yearly taxes, assessments, other similar charges (including any amounts which may become payable to Grantor pursuant to Paragraph 1.5 hereof), and insurance premiums as reasonably estimated by Beneficiary or by Beneficiary's servicing agent to be sufficient to allow the payment at least thirty (30) days before they become due of all taxes, assessments, other similar charges and insurance premiums related to the Property. The arrangement provided for in this Paragraph 1.3 is solely for the added protection of Beneficiary and entails no responsibility on Beneficiary's part beyond the allowing of due credit, without payment of interest or income to Grantor, unless specifically required by law, for the sums actually received by it. Those sums received, but not immediately required for payment of the items set forth above, may be commingled with the other funds of Beneficiary and may be invested or otherwise used by Beneficiary without payment of any interest to or on behalf of Grantor until such time as payment of the items set forth above is required. Upon demand of Beneficiary or its servicing agent, Grantor shall promptly deliver to Beneficiary or its servicing agent such additional sums as are necessary to make up any deficiency in the amount necessary to pay such taxes, assessments, other similar charges and insurance premiums in a timely manner. Upon assignment of this Deed of Trust by Beneficiary, any funds on hand shall be turned over to the assignee and any responsibility of the assignor with respect thereto shall terminate. Each transfer of the Real Property shall automatically transfer to the grantee all rights of the grantor with respect to any funds accumulated hereunder.

### 1.4    Taxes, Liens and Other Charges.

Grantor shall pay when due:

1.4.1    All taxes, assessments and other governmental or public charges affecting the Property, including any accrued interest, cost or penalty thereon and will submit receipts therefor to Beneficiary at least ten (10) days before delinquency;

1.4.2    All encumbrances (including any debt secured by deeds of trust), ground rents, liens or charges, with interest, on the Property or any part thereof, and all costs and fees

related thereto (provided that nothing in this subparagraph 1.4.2 shall be construed as a consent by Beneficiary to any such encumbrances, ground rents, liens, or charges). Grantor shall have the right to contest the amount or validity, in whole or in part, of any such taxes, assessments, encumbrances, liens, or charges payable under subparagraph 1.4.1 or this subparagraph 1.4.2 by appropriate proceedings conducted in good faith and with due diligence, in which event, Grantor, upon prior written notice to Beneficiary, may postpone or defer payment of such encumbrance, lien, or charge, if and so long as:

(1)    such proceedings shall operate to prevent the collection of the encumbrance, lien, or charge;

(2)    neither the Property nor any part thereof would by reason of such postponement or deferment be in danger of being forfeited or lost; and

(3)    Grantor, before the date such encumbrance, lien, or charge becomes delinquent, gives such reasonable security as may be requested by Beneficiary to insure payment of such encumbrance, lien, or charge and prevent any forfeiture or loss of the Property or any part thereof;

**1.4.3**    All charges for utilities or services, including, but not limited to, electricity, gas, garbage, sewer and water; and

**1.4.4**    All costs, fees and expenses of this Deed of Trust, including cost of evidence of title, Trustee's fees and attorneys' fees required to be paid herein.

Grantor's obligations under subparagraph 1.4.1 shall be deemed satisfied if Grantor has promptly and properly paid all of such amounts to Beneficiary or its servicing agent pursuant to Paragraph 1.3 hereof.

### 1.5    Further Taxes.

In the event of the passage, after the date of this Deed of Trust, of any law deducting from the value of the Property for the purposes of taxation, any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or debts secured by deeds of trust, or the manner of the collection of any such taxes, so as to affect the Beneficiary's interest in this Deed of Trust, or imposing payment of the whole or any portion of any taxes, assessments or other similar charges against the Property upon Beneficiary, the indebtedness secured hereby shall immediately become due and payable at the option of Beneficiary; provided, however, that such election by Beneficiary shall be ineffective if such law either (a) shall not impose a tax upon Beneficiary nor increase any tax now payable by Beneficiary, or (b) shall impose a tax upon Beneficiary or increase any tax now payable by Beneficiary, and prior to the due date of such tax: (i) Grantor is permitted by law and can become legally obligated to pay such tax or the increased portion thereof (in addition to all interest, and other charges payable hereunder and under the Note) without exceeding the limits imposed by applicable interest rate laws; (ii) Grantor does pay such tax or increased portion; and (iii) Grantor agrees with Beneficiary in writing to pay, or reimburse Beneficiary for the payment of, any such tax or increased portion

thereof when thereafter levied or assessed against the Property or any portion thereof. The obligations of Grantor under such agreement shall be secured hereby.

     **1.6**    **Insurance.** Grantor shall at all times provide, maintain and keep in force:

     **1.6.1**   Fire insurance on the Improvements on the Real Property and on all Personal Property, including endorsements of extended coverage, vandalism and malicious mischief. Such policies shall be in an amount sufficient to prevent Beneficiary or Grantor from becoming a co-insurer under the terms of the applicable policies, but in any event in an amount not less than the greater of one hundred percent (100%) of the then full replacement cost of the Improvements, as revalued on an annual basis, without deduction for depreciation or the amount of the then outstanding principal balance and accrued interest of the Note. Each of such policies shall contain a replacement cost endorsement for an agreed amount.

     **1.6.2**   Flood insurance upon the Property in the event that the Property is located in a designated flood plain and such insurance is available pursuant to the provisions of the Flood Disaster Protection Act of 1973 or other applicable legislation (Beneficiary reserves the right to require that Grantor secure flood insurance in excess of the amount provided by the Flood Disaster Protection Act of 1973, if such insurance is commercially available, up to the amount of insurance required in subparagraph 1.6.1 hereof), or, in the alternative, a certificate from the appropriate agency as evidence that the Property is not located in a flood hazard area as defined by the U.S. Department of Housing and Urban Development pursuant to the Flood Disaster Protection Act of 1973.

     **1.6.3**   Comprehensive general public liability insurance against claims for personal injury liability, and liability for bodily injury, death, and damage to property, products and completed operations, against any and all claims, including all legal liability to the extent insurable and imposed upon Beneficiary, and all court costs, legal fees and expenses. The limits of liability for such insurance coverage shall be in an amount not less than One Million and 00/100 Dollars ($1,000,000.00) per occurrence and Two Million and 00/100 Dollars ($2,000,000.00) in the aggregate, and shall be without a deductible or self-insured retention together with excess/umbrella liability coverage of not less than Five Million and 00/100 Dollars ($5,000,000.00) per occurrence. Upon request, Grantor shall also carry additional insurance or additional amounts of insurance covering Grantor or the Property as Beneficiary shall reasonably require. If the Property is vacant, Grantor shall provide a standalone vacant land or vacant building policy, consistent with the foregoing limits. A Property is vacant if no authorized person undertakes any activities on the Property, resides or works on the Property, and no other action has been taken with respect to the Property. See subparagraph 1.6.4 for required insurance once construction activities commence.

     **1.6.4**   If Grantor is undertaking construction activities on the Property, at all times during which time such structural construction, material repairs or alterations are being made with respect to the Property, Grantor shall maintain Builder's Risk Insurance under special cause of loss from coverage in an amount satisfactory to Beneficiary.

     **1.6.5**   If Grantor has employees, Grantor shall also maintain workers' compensation insurance, subject to the laws of the state where the Property is located, and

employer's liability insurance with a limit of at least One Million and 00/100 Dollars ($1,000,000.00) per accident and per disease per employee, with respect to any work or operations on or about the Property.

      **1.6.6** If Grantor is required to provide Builder's Risk Insurance under subparagraph 1.6.4, above, Grantor shall cause each general contractor and each other contractor with whom Grantor contracts directly for the Property to provide and maintain comprehensive (commercial) general liability insurance, protective liability insurance and workers' compensation insurance for all employees of such contractor meeting, respectively, the requirements of subparagraphs 1.6.1, 1.6.3 and 1.6.4 above. Beneficiary reserves the right to reject any exclusions from coverage. The policy or policies may not include exclusions for multifamily, condominiums, townhouses, residential structure or tract homes, if Beneficiary is constructing the same. The policy or policies may not exclude Action Over Claims or subsidence coverage. Beneficiary reserves the right to require a Contractor Jobsite Pollution policy. The policy must cover commercial Auto, Hired and Non-Owned, at limits no less than those set forth in subparagraph 1.6.3 above.

      **1.6.7** Such other insurance, and in such amounts, as may from time to time be reasonably required by Beneficiary against the same or other insurable hazards which at the time are commonly insured against in the case of premises similarly situated, due regard being given to the height and type of buildings thereon and their construction, use and occupancy.

      Grantor shall furnish Beneficiary with certificates evidencing each policy required to be provided by Grantor hereunder and certified copies of each policy. All policies for such insurance shall be (a) issued by companies approved by Beneficiary, which shall have an A.M. Best's Key Rating of at A-VIII or higher, or, if a rating by A.M. Best is no longer available, then a similar rating from a similar or successor service; (b) on forms approved by Beneficiary; (c) subject to the approval of Beneficiary as to amount, content, form, and expiration date; and (d) provide that they may not be cancelled without thirty (30) days prior written notice to Beneficiary. All policies, except the general liability policy shall contain a Lender's Loss Payable Endorsement (Form BFU 438, or its equivalent), in favor of Beneficiary insuring that the proceeds thereof shall be payable to Beneficiary (to the extent of its interest). The general liability and builder's risk policies shall name Beneficiary as an additional insured. Upon Beneficiary's request, Grantor shall provide Beneficiary with evidence of the replacement cost of the Property.

      At least thirty (30) days before expiration of any policy required to be provided by Grantor hereunder, Grantor shall furnish Beneficiary proof of issuance of a policy continuing in force the insurance covered by the policy so expiring. Grantor shall furnish Beneficiary receipts for the payment of premiums on such insurance policies or other evidence of such payment reasonably satisfactory to Beneficiary. In the event that Grantor does not deposit with Beneficiary evidence of renewal of expiring insurance and evidence of payment of premium thereon at least thirty (30) days before expiration of any policy, then Beneficiary may, but shall not be obligated to, procure such insurance and pay the premiums therefor or any force-placed insurance. In each such event, Grantor agrees to repay to Beneficiary the premiums thereon

promptly on demand, and until such repayment is received, interest thereon shall accrue at the Default Rate defined in the Note.

Grantor's obligations under this Paragraph 1.6 shall be deemed satisfied if Grantor has timely paid all insurance premiums for such policies to Beneficiary or its servicing agent pursuant to Paragraph 1.3 hereof.

### 1.7    Casualty.

Grantor hereby assigns to Beneficiary all insurance proceeds that it may be entitled to receive, and such proceeds shall be delivered to and held by Beneficiary to be applied as mutually agreed by Grantor and Beneficiary; either to the reduction of the indebtedness secured hereby, or for Grantor to immediately restore any portion or all of the Improvements to their original condition and, in that event, Beneficiary shall make the insurance proceeds available to Grantor as restoration progresses; provided that if, in the opinion of Beneficiary, the amount of insurance proceeds will not be sufficient to restore the Improvements to their original condition, then prior to Beneficiary making any insurance proceeds available to Grantor, Grantor shall deposit the amount of the deficiency with Beneficiary. If such amount is not deposited with Beneficiary within ten (10) days after receipt by Beneficiary of the insurance proceeds then the proceeds shall be applied to the reduction of the indebtedness secured hereby unless Beneficiary elects otherwise. If for any reason Grantor and Beneficiary cannot agree as to the application of such insurance proceeds, Beneficiary shall determine such application. The application of insurance proceeds to the reduction of the principal balance outstanding on the Note shall not serve to cure any existing Default. If the proceeds are sufficient to pay in full the indebtedness and other sums secured hereby, then any excess proceeds shall be paid over to Grantor.

In the event of the foreclosure of this Deed of Trust or other transfer of the title to the Property in extinguishment, in whole or in part, of the indebtedness secured hereby, all right, title and interest of Grantor in and to any insurance policy, or premiums or payments in satisfaction of claims or any other rights thereunder then in force shall pass to the purchaser or grantee notwithstanding the amount of any bid at such foreclosure sale.

Nothing contained herein shall prevent accrual of interest as provided in the Note, which accrual shall continue until such proceeds are actually received and applied to the outstanding principal balance of the Note.

After the happening of any casualty, whether or not required to be insured against under the policies to be provided by Grantor hereunder, Grantor shall give prompt written notice thereof to Beneficiary.

### 1.8    Condemnation.

If the Property or any part thereof is taken or damaged by reason of any public improvement, condemnation proceeding, or conveyance in lieu thereof, or in any other manner, Beneficiary shall be entitled to all compensation, awards and other payments or relief therefor, and shall be entitled, at its option, to commence, appear in and prosecute in its own name any

action or proceeding, or to make any compromise or settlement in connection with such taking or damage. All such compensation, awards, damages, rights of action and proceeds (the "Proceeds") are hereby assigned to Beneficiary who shall deduct therefrom all its reasonable expenses. Thereafter, if the remaining Proceeds are sufficient, in Beneficiary's sole opinion, to restore the Property, Beneficiary shall make the remaining Proceeds available as needed for the restoration of the Property. If the remaining Proceeds are not sufficient to restore the Property, the proceeds shall be applied to the Note and other obligations secured hereunder, in Beneficiary's sole discretion. The application of a condemnation award to the reduction of the outstanding principal balance of the Note shall not serve to cure any existing Default.

Nothing contained herein shall prevent the accrual of interest as provided in the Note, which accrual shall continue until such Proceeds are actually received and applied to the outstanding principal balance of the Note.

**1.9     Care of the Property.** Grantor shall:

**1.9.1**    Keep the Property in good condition and repair and not commit or permit any waste or deterioration of the Property or suffer any act or occurrence that would impair the security for the debt secured hereby;

**1.9.2**    Not remove, demolish or substantially alter any portion of the Property or permit or suffer such to be done, without Beneficiary's prior written consent (except for demolition or construction of tenant improvements and such alterations as may be required by laws, ordinances or regulations of governmental authorities);

**1.9.3**    Replace any work or materials that are not in accordance with the plans and specifications previously approved by Beneficiary and unsatisfactory to Beneficiary, within fifteen (15) days after written notice from Beneficiary or, if such replacement requires more than fifteen (15) days, to commence replacement within fifteen (15) days and diligently proceed thereafter;

**1.9.4**    Comply with all laws, ordinances, rules, regulations and orders of governmental authorities now or hereafter affecting the Property or requiring any alterations or improvements to be made thereon, and perform all of its obligations under any covenant, condition, restriction or agreement of record affecting the Property, and deliver to Beneficiary copies of any permits, approvals or disapprovals issued by any governmental authority relating to the Property within ten (10) days of receipt thereof;

**1.9.5**    Not commit, suffer or permit any act to be done in, upon or to the Property in violation of any law or ordinance or any covenant, condition or restriction affecting the Property;

**1.9.6**    Do any and all acts which, from the character or use of the Property, may be reasonably necessary to protect and preserve the security of Beneficiary, the specific enumerations herein not excluding the general;

**1.9.7**    Perform all of Grantor's obligations or covenants under any encumbrance affecting the Property, including without limitation, leases, declarations, covenants, conditions, restrictions or other agreements relating to or affecting the Property;

**1.9.8**    Not create, suffer or permit any lien or encumbrance against or affecting the Property, including without limitation any Personal Property that Grantor intends to acquire with a purchase money security interest, except the Permitted Encumbrances, without Beneficiary's prior written consent;

**1.9.9**    Not take or permit to be taken any actions that might invalidate any insurance carried on the Property;

**1.9.10**    Except as provided in the Loan Documents, not permit any new building or additions to existing structures to be erected on the Property without the prior written consent of Beneficiary, and not construct any improvements on the Property or undertake any site development work unless approved by Beneficiary, which consent shall not be unreasonably withheld;

**1.9.11**    Not initiate or acquiesce in any change in the use or nature of the occupancy of the Property (including any conversion to condominiums) or in any zoning or other land use classification affecting the Property without the prior written consent of Beneficiary, which consent shall not be unreasonably withheld;

**1.9.12**    Insure that at all times the Property constitutes one or more legal lots capable of being conveyed without violation of any subdivision or platting laws, ordinances, rules or regulations, or other laws regulating the dimension or separation of real property; and

**1.9.13**    Promptly notify Beneficiary of any litigation pending or, to Grantor's knowledge, threatened against Grantor, the Property, any Guarantor, or any other guarantor of the Note whether or not such amount is covered by insurance.

**1.10    Further Assurances.**

If required by Beneficiary at any time during the term of this Deed of Trust, Grantor will execute, acknowledge and deliver to Beneficiary, in form satisfactory to Beneficiary, such chattel mortgages, security agreements or other similar security instruments, in form and substance satisfactory to Beneficiary, covering all property of any kind whatsoever situated on the Property owned by Grantor or in which Grantor has any interest which, in the sole opinion of Beneficiary, is important to the operation of the Real Property covered by this Deed of Trust. Grantor shall further, from time to time, within fifteen (15) days after request by Beneficiary, execute, acknowledge and deliver any financing statement, renewal, affidavit, certificate, continuation statement or other document as Beneficiary may reasonably request and is necessary to perfect, preserve, continue, extend or maintain the security interest under and the priority of this Deed of Trust and any such chattel mortgage or other security instrument. Grantor further agrees to pay to Beneficiary on demand all costs and expenses incurred by Beneficiary in connection with the preparation, execution, recording, filing and refiling of any such instrument

or document including the charges for examining title and obtaining the appropriate title update. However, neither a request so made by Beneficiary nor the failure of Beneficiary to make such request shall be construed as a release of the Property, or any part thereof, from the conveyance of title by this Deed of Trust, it being understood and agreed that this covenant and any such chattel mortgage, security agreement or other similar instrument, delivered to Beneficiary, are cumulative and given as additional security. Any breach of such security agreement or other similar instrument shall constitute a Default under this Deed of Trust.

### 1.11    Leases and Other Agreements Affecting the Property; Assignment.

1.11.1    Grantor shall fully and promptly keep, observe, perform and satisfy each obligation, condition, covenant and restriction affecting the Property or imposed on it under any agreement between Grantor and a third party relating to the Property (including, without limitation, any leases or rental agreements for any portion of the Property (the "Leases") and any contracts relating to the construction, maintenance or management of the Property (the "Contracts")) so that there will be no default thereunder and so that the persons obligated thereon shall be and remain at all times obligated to perform thereunder. Grantor will not permit to exist any condition, event or fact which could allow or serve as a basis or justification for any such person to avoid such performance. All right, title and interest of Grantor in the Leases and the Contracts are hereby assigned to Beneficiary absolutely and irrevocably and not as additional security. Grantor expressly agrees that it is the intention of Grantor and Beneficiary that such assignment is absolute and shall entitle Beneficiary to collect, subject to the license granted in Paragraph 2.2 hereof, Rents (as defined in Paragraph 2.1) due under the Leases without the taking of any additional steps by Beneficiary (including, but not limited to, the taking of possession of the Property or the appointment of a receiver). Notice of such assignment shall be given to the tenant or tenants thereunder as may be required by Beneficiary.

Without the prior written consent of Beneficiary, which consent shall not be unreasonably withheld Grantor shall not:

(1)    accept prepayments of Rent under the Leases exceeding one month, in addition to a security deposit;

(2)    modify or amend any Leases or, except where the lessee is in default, cancel or terminate the same or accept a surrender of the leased premises;

(3)    consent to the assignment or subletting of the whole or any portion of any lessee's interest under any of the Leases which has a term of more than one (1) year or grant any options to renew for a term greater than one (1) year;

(4)    create or permit any lien or encumbrance which upon foreclosure would be superior to any Leases; or

(5)    in any other manner impair Beneficiary's rights and interest with respect to the rents received from the Leases or the Contracts.

**1.11.2**  All Leases and Contracts shall be subject to the prior written approval of Beneficiary, which approval shall not be unreasonably withheld, and at Beneficiary's option, shall be made subordinate to this Deed of Trust.

**1.11.3**  Grantor, or its designees approved in writing in advance by Beneficiary, shall be the exclusive manager of the Property. Any management agreement affecting the Property shall be subject to the prior written approval of Beneficiary, which shall not be unreasonably withheld, shall expressly subordinate to this Deed of Trust and the lien hereof, and shall be terminable by Beneficiary or the purchaser at any foreclosure sale upon such sale or transfer in lieu thereof without payment of any termination fee or other amounts to the manager.

**1.11.4**  Beneficiary shall respond promptly to Grantor's or its manager's request for any consents or approvals required by this Paragraph 1.11. Beneficiary shall be deemed to have given its consent or approval if Beneficiary fails to respond to any such request within five business (5) days.

**1.12**  **Expenses.**

**1.12.1**  Upon a Default, Beneficiary or Trustee shall have the right to employ an attorney in connection with their rights under the Loan Documents and Grantor shall pay all attorneys' fees, costs and expenses, including expenses of retaking, holding, preparing for sale or selling (including cost of evidence or search of title and the costs and expenses of an investigation of the Property for Hazardous Waste (as defined below) and other environmental characteristics) in connection with any action or actions that may be brought for the foreclosure of this Deed of Trust, possession of the Property, the protection of or the defense of the priority of the lien provided for hereby, the appointment of a receiver, or the enforcement of any and all covenants or rights contained in or secured by this Deed of Trust.

**1.12.2**  Grantor will pay within thirty (30) days of written demand all sums expended or expense incurred by Trustee or Beneficiary, including, without limitation, attorneys' fees, under any of the terms of this Deed of Trust. If such sums are not so paid within thirty (30) days of written notice, such sums shall thereafter bear interest at the Default Rate (as defined in the Note).

**1.13**  **Books, Records and Accounts.**

Grantor shall keep and maintain, or cause to be kept and maintained proper and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Property or in connection with any services, equipment or furnishings provided in connection with the operation of the Property or conduct of activities on the Property. After two (2) business days prior notice to Grantor, Beneficiary or its designee shall have the right from time to time at all times during normal business hours to examine such books, records and accounts at the office of Grantor or other person or entity maintaining such books, records and accounts and to make copies or extracts thereof as Beneficiary or its designee shall desire. Grantor shall deliver such financial reports and other information as requested by Beneficiary from time to time.

### 1.14    Subrogation.

Beneficiary will be subrogated for further security to the lien of and to all rights of any beneficiary, mortgagee or lienholder under any encumbrance, whether or not released of record, paid out of the proceeds of the loan secured by this Deed of Trust or advanced pursuant to the terms hereof and of any of the other Loan Documents.

### 1.15    Inspection of Property.

After notice and accompanied by a representative of Grantor or its property manager, Beneficiary is authorized, for itself, its agents or employees to enter at least once a month and at any reasonable time during normal business hours upon any part of the Property for the purpose of inspecting the same, determining Grantor's compliance with the provisions of the Loan Documents and for the purpose of performing any of the acts it is authorized to perform under the terms of the Loan Documents. Grantor agrees to cooperate with Beneficiary to facilitate such inspections.

### 1.16    Property Compliance.

**1.16.1**  The Improvements and their use shall comply fully with (and no notices of violation have been received in connection with) environmental, air quality, zoning, flood plain, planning, subdivision, building, health, labor, discrimination, fire, traffic, safety, wetlands, shoreline and other governmental or regulatory rules, laws, ordinances, statutes, codes and requirements applicable to the Property, including, without limitation, the Fair Housing Act of 1968 (as amended) and the Americans with Disabilities Act of 1990 (as amended) (collectively, the "Building Laws"). Grantor shall use its best effort to insure receipt of such final certificates as may be required or customary to evidence compliance with all building codes and permits, and approval of full occupancy of the Improvements and of all installations therein. Grantor shall cause the Property to be continuously in compliance with all Building Laws (as the same may be amended from time to time). The Property is the only property required to operate the Improvements as constructed in compliance with all Building Laws. All buildings constructed on the Real Property are higher than the 100-year flood plain or are covered by adequate flood insurance.

**1.16.2**  Grantor shall protect, defend, indemnify and hold Beneficiary harmless from and against all liability threatened against or suffered by Beneficiary by reason of a breach by Grantor of the foregoing representations and warranties contained in the preceding subparagraph 1.16.1. The foregoing indemnity shall include the cost of all alterations to the Property (including architectural, engineering, legal and accounting costs), all fines, fees and penalties, and all legal and other expenses (including attorneys' fees), incurred in connection with the Property being in violation of any Building Laws and for the cost of collection of the sums due under the indemnity. In the event that Beneficiary shall become the owner of the Property by foreclosure or deed in lieu of foreclosure of the Deed of Trust, the foregoing indemnification obligation shall survive such foreclosure or deed in lieu of foreclosure.

### 1.17    Collateral Security Instruments.

If Beneficiary at any time holds additional security for any obligations secured hereby, it shall have the right to enforce the terms thereof or otherwise realize upon the same, at its option, either before or concurrently herewith or after a sale is made hereunder, and may apply the proceeds upon the indebtedness secured hereby without affecting the status of or waiving any right to exhaust all or any other security, including the security hereunder, and without waiving any breach or default or any right or power whether exercised hereunder or contained herein or in any such other security.

### 1.18    Suits Affecting Property.

Grantor shall appear in and defend any action or proceeding purporting to affect the Property or this Deed of Trust or any other security for the obligations secured hereby, the interest of Beneficiary or the rights, powers or duties of Trustee hereunder. Grantor agrees to notify Beneficiary before it commences any action or proceeding relating to any part of the Property or the security of this Deed of Trust (except actions to terminate month-to-month tenancies or evict tenants thereunder to the extent permitted by Paragraph 1.11 hereof). Grantor shall pay all costs and expenses, including the cost of evidence of title and attorneys' fees in any action or proceeding in which Beneficiary or Trustee may appear or be made a party, including, but not limited to, foreclosure or other proceeding commenced by those claiming a right to any part of the Property under any prior or subordinate liens, any forfeiture proceeding, in any action to partition or condemn all or part of the Property, and in any action concerning the disposition or availability of insurance proceeds relating to the Property, whether or not such proceedings are pursued to final judgment. Grantor hereby assigns to Beneficiary all proceeds payable by third parties arising from claims or events of impairment or loss to the Property, and agrees that Beneficiary may require that such amount be paid directly to Beneficiary. In any claim, action or proceeding affecting the Property or Beneficiary's security in which Beneficiary appears (including any claim on the title insurance policy insuring the lien of this Deed of Trust), Grantor fully waives, to the extent necessary, in Beneficiary's opinion, to protect Beneficiary's interests hereunder and under any other Loan Document, any rights to privacy or nondisclosure it may have with regard to information provided to Beneficiary in connection with the Loan secured hereby.

### 1.19    Beneficiary's Right to Defend Action and Cure Certain Defaults.

Beneficiary shall have the right to appear in and defend any action or proceeding at law or in equity or in bankruptcy purporting to affect the Property or any security for the obligations secured hereby. Beneficiary shall be allowed and paid all Beneficiary's costs, charges and expenses, including cost of evidence of title and attorneys' fees incurred in such action or proceeding in which Beneficiary may appear.

If Grantor fails to make any payment or to do any act as herein provided, or if Grantor allows, in violation of this Deed of Trust, any lien encumbrance or charge against the Property and Grantor fails to cure such default within thirty (30) days of Beneficiary's delivery of written notice to Grantor, then Beneficiary or Trustee, but without obligation so to do and without

releasing Grantor from any obligation hereof, shall have the right to: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon the Property for such purposes; commence, appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien that in the judgment of either appears to be prior or superior hereto; and, in exercising any such power, incur any liability, expend whatever amounts in Beneficiary's or Trustee's absolute discretion it may deem necessary therefor, including cost of evidence of title and attorneys' fees.

Grantor hereby agrees to pay, within ten (10) days of written demand, all of Beneficiary's costs, charges, expenses and amounts referred to above in this Paragraph 1.19, including the cost of evidence of title and attorneys' fees incurred in such action or proceeding in which Beneficiary may appear. All costs, charges and expenses so incurred, together with interest thereon as aforesaid, shall be secured by the lien of this Deed of Trust. Such amounts, if not paid within ten (10) days of written demand therefor, shall thereafter bear interest at the Default Rate (as defined in the Note).

      **1.20**    **Hazardous Materials.**

      **1.20.1** The term "Environmental Liability" shall mean any claim, demand, obligation, cause of action, accusation, allegation, order, violation, damage (including consequential damage), injury, judgment, penalty or fine, cost of Enforcement or Remedial Action, or any other cost or expense whatsoever, including attorneys' fees and disbursements, resulting from the violation or alleged violation of any Environmental Law or from any Enforcement or Remedial Action. The term "Environmental Law" or "Environmental Laws" means and includes, without limitation, any federal, state or local law, statute, regulation or ordinance pertaining to health, industrial hygiene or the environmental or ecological conditions on, under or about the Property, including without limitation each of the following: the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601 *et seq*.; the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. § 6901 *et seq*.; the Toxic Substance Control Act, as amended, 15 U.S.C. § 2601 *et seq*.; the Clean Air Act, as amended, 42 U.S.C. § 7401 *et seq*.; the Federal Water Pollution Control Act, as amended, 33 U.S.C. § 1251 *et seq*.; the Federal Hazardous Materials Transportation Act, 49 U.S.C. § 1801 *et seq*.; the Idaho Hazardous Substance Response Act, Idaho Code Sections 39-7101 – 39-7115; the Idaho Land Remediation Act, Idaho Code Sections 39-7201 – 39-7211; the Hazardous Waste Management Act of 1983, as amended, Idaho Code Sections 39-4401 *et seq*.; the State Hazardous Waste Facility Siting Act, as amended, Idaho Code Sections 39-5801 *et seq*.; Idaho Code Sections 39-175A – 39-175F; the Idaho Environmental Protection and Health Act, Idaho Code Sections 39-101 – 39-130, and the rules, regulations and ordinances of the U.S. Environmental Protection Agency, the Idaho Department of Environmental Quality and of all other agencies, boards, commissions and other governmental bodies and officers having jurisdiction over the Property or the use or operation thereof. The term "Enforcement or Remedial Action" shall mean any step taken by any person, agency or entity to enforce compliance with or to collect or impose penalties, fines, or other sanctions

provided by any Environmental Law. The term "Hazardous Material" means and includes, without limitation: (i) those substances included within the definitions of "hazardous substances," "hazardous materials," "toxic substances," "pollutants," "hazardous wastes," or "solid waste" in any Environmental Laws; (ii) those substances listed in the U.S. Department of Transportation Table or amendments thereto (49 CFR 172.101) or by the U.S. Environmental Protection Agency (or any successor agency) as hazardous substances (40 CFR Part 302 and any amendments thereto); (iii) those other substances, materials and wastes which are or become regulated under any applicable federal, state or local law, regulation or ordinance or by any federal, state or local governmental agency, board, commission or other governmental body, or which are or become classified as hazardous or toxic by any such law, regulation or ordinance; and (iv) any material, waste or substance which is any of the following: (a) asbestos; (b) polychlorinated biphenyl; (c) designated or listed as a "hazardous substance" pursuant to Paragraphs 307 or 311 of the Clean Water Act (33 U.S.C. § 1251 *et seq*.); (d) explosive; (e) radioactive; (f) a petroleum product; (g) trichlorethane; or (h) trichloethane.

**1.20.2**   Grantor hereby represents and warrants that, except as disclosed in writing to Beneficiary, neither Grantor nor, to the best knowledge of Grantor, any other person, has ever caused or permitted any Hazardous Material to be placed, held, located or disposed of, on, under or at the Property, or any other real property legally or beneficially owned (or in which any interest or estate is owned) by Grantor in any state now or hereafter having in effect a so-called "Superlien" law or ordinance (the effect of which would be to create a lien on the Property to secure any obligation in connection with such real property in such other state). Grantor hereby represents and warrants that neither the Property, nor any part thereof has ever been used (whether by the Grantor or, to the best knowledge of Grantor, by any other person) (a) to generate, manufacture, store, treat or dispose of any Hazardous Material in any manner or quantity which violates an Environmental Law, or (b) for the operation of a gas station, automobile repair facility, dry cleaners, photo developing laboratory, junkyard, landfill, or waste treatment storage, disposal, processing or recycling facility. Grantor further represents and further warrants that neither Grantor, nor to the best knowledge of Grantor, any other person, has ever caused or permitted any asbestos to be located on or in the Property, except as disclosed in writing to Beneficiary. To the best knowledge of Grantor after due inquiry, Grantor has no knowledge of any proceeding or inquiry by any governmental authority (including, without limitation, the United States Environmental Protection Agency and Idaho Department of Environmental Quality) with respect to the presence of any Hazardous Material on the Property or the migration thereof from or to adjoining property. To the best of Grantor's knowledge after due inquiry, there has been no investigation nor does Grantor have any knowledge of any contemplated investigation, by any local, state or federal governmental agency with authority to regulate, promulgate, administer or enforce any Environmental Laws within 2,000 yards of the Property.

**1.20.3**   Grantor shall keep and maintain the Property in compliance with and shall not cause or permit the Property to be in violation of any Environmental Law. If Hazardous Materials are disposed of or discovered on the Property, which under any Environmental Law require any special handling, collection, storage, treatment or disposal, Grantor shall commence with diligence, within thirty (30) days of notice thereof, to take all actions at its sole expense

necessary to comply with any Environmental Laws. Grantor shall not use, generate, manufacture, treat, store, allow to remain or dispose of on, under, or about the Property or transport to or from the Property any Hazardous Materials in any manner or quantity which violates an Environmental Law. In the event of any activity involving any asbestos-containing materials ("ACMs") located on the Property, Grantor shall first perform a comprehensive asbestos survey before demolition or renovation activities, and shall protect all ACMs from damage or remove or dispose of all ACMs in accordance with all applicable Environmental Laws.

Grantor shall immediately advise Beneficiary in writing of (i) any and all enforcement, cleanup, remedial, removal, or other governmental or regulatory actions instituted, completed, or threatened pursuant to any Environmental Law affecting the Property; (ii) all claims made or threatened by any third party against Grantor or the Property relating to damage, contribution, cost recovery compensation, loss, or injury resulting from any Environmental Liability; and (iii) Grantor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property or any part thereof to be subject to any restrictions on the ownership, occupancy, transferability, or use of the Property under any Environmental Laws or require Enforcement or Remedial Action on the Property.

Beneficiary shall have the right to join and participate in, as a party if it so elects, any legal proceedings or actions initiated in connection with any Environmental Liability and to have its attorneys' fees and consultants' fees in connection therewith paid by Grantor. Except in the case of emergencies (which shall be deemed to exist for a maximum of 24 hours), without Beneficiary's prior written consent, which shall not be unreasonably withheld, Grantor shall not take any remedial action in response to the presence of any Hazardous Material on, under or about the Property.

If Grantor fails to comply with any of the foregoing representations, warranties and covenants, Beneficiary may (i) declare a Default under this Deed of Trust, and/or (ii) cause the removal (and/or other cleanup acceptable to Beneficiary) of any Hazardous Material from the Property. Grantor shall be liable for any costs of Hazardous Material removal and/or other cleanup (including transportation and storage costs) incurred by Beneficiary, whether or not the costs exceed the amount of the Loan and whether or not a court has ordered the cleanup, and such costs shall become due and payable, on demand by Beneficiary, and with interest thereon at the Default Rate specified in the Note from the date of such demand. Grantor shall give Beneficiary, its agents and employees, access to the Property to remove or otherwise clean up any Hazardous Material. Beneficiary, however, has no affirmative obligation to remove or otherwise clean up any Hazardous Material, and nothing in this Deed of Trust or the other Loan Documents shall be construed as creating any such obligation.

### 1.21    Conveyance of Property.

In the event that, without Beneficiary's prior written consent, (i) all or any part of, or any interest in, the Property is sold, transferred, conveyed, by way of merger, reorganization, amalgamation, or otherwise, leased (other than a lease of any portion of the space in the Improvements for a term of one (1) year or less, without an option to purchase made in

accordance with Paragraph 1.11), further encumbered, or a contract of sale or other conveyance entered into with respect thereto, or (ii) there is a transfer of more than ten percent (10%) of the beneficial interests in Grantor, in the aggregate, or more than twenty percent (20%) of the voting power in Grantor, in the aggregate (or of the voting power of any person or entity owning twenty percent (20%) or more of Grantor), then, upon the occurrence of any one or more of the foregoing events, Beneficiary shall have the right, at its option, to declare all amounts secured hereby immediately due and payable.

The execution and delivery by Grantor of any joint venture agreement, partnership agreement, declaration of trust, option agreement or other instrument whereunder any other person or entity may become entitled, directly or indirectly, to the possession or enjoyment of more than ten percent (10%) of the Property, or more than ten percent (10%) of the income or other benefits derived or to be derived therefrom, shall in each case be deemed to be a conveyance or assignment of the Grantor's interest in the Property for the purposes of this section, and shall require the prior written consent of the Beneficiary.

### 1.22    Anti-Forfeiture and Anti-Terrorism.

Grantor hereby further expressly represents and warrants to Beneficiary that neither Grantor nor any other person involved with the Property has committed or engaged in any act, enterprise, or omission affording the federal government or any state or local government the right of forfeiture as against the Property, or any part thereof, or the right to any monies paid in performance of its obligations under this Deed of Trust or under any of the other Loan Documents. Grantor hereby covenants and agrees not to commit, permit or suffer to exist any act or omission or engage in any enterprise affording such right of forfeiture. In furtherance thereof, Grantor hereby indemnifies Beneficiary and agrees to defend and hold Beneficiary harmless from and against any loss, damage or injury by reason of the breach of the covenants and agreements or the warranties and representations set forth in the preceding sentence. Without limiting the generality of the foregoing, the filing of formal charges or the commencement of proceedings against Grantor, Beneficiary or all or any part of the Property under any federal or state law for forfeiture of the Property or any part thereof or of any monies paid in performance of Grantor's obligations under the Loan Documents shall, at the election of the Beneficiary, constitute a Default hereunder unless cured by Grantor within thirty (30) days of Beneficiary's delivery of written notice to Grantor.

Grantor covenants that is not a person or associated with a person blocked under Executive Order 13224 and the related anti-terrorism regulations, including, without limitation, 31 CFR Pts. 595-597, as the same may be amended from time to time; and the acquisition of the Property and the loans secured by this Deed of Trust are not transactions blocked by such order and regulations.

### 1.23    Financial Covenants. Upon Grantor's breach of this Deed of Trust or any other Loan Document (without regards to any notice or cure periods), Beneficiary shall be entitled to establish, effective upon delivery of written notice to Grantor, such financial standards upon

Grantor as Beneficiary may reasonably require and the failure to meet and maintain such standards shall be a Default.

## ARTICLE II
## ASSIGNMENT OF RENTS

### 2.1    Assignment of Rents.

Grantor hereby absolutely and unconditionally assigns and transfers to Beneficiary all the income, rents, royalties, revenue, issues, profits and proceeds (collectively, the "Rents") of the Property, whether now due, past due or to become due, and hereby gives to and confers upon Beneficiary the right, power and authority to collect the Rents. Grantor irrevocably appoints Beneficiary its true and lawful attorney at the option of Beneficiary at any time, either by itself, through an agent or a receiver, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, either in the name of Grantor or in the name of Beneficiary, for all the Rents. It is agreed that neither the foregoing assignment of Rents to Beneficiary, nor the exercise by Beneficiary of any of its rights or remedies under this Paragraph 2.1 or under Paragraph 2.2, nor the appointment of a receiver or possession of the Property by a receiver shall make Beneficiary a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy or enjoyment or operation of all or any portion thereof, unless and until Beneficiary in person assumes actual possession thereof. Nothing herein shall require Beneficiary to have a receiver appointed to collect any Rents, but Beneficiary shall be entitled to such appointment at its option in accordance with Paragraph 2.2 hereof. This assignment of Rents is intended to be specific, perfected and choate upon its recording.

### 2.2    License to Collect.

Notwithstanding anything to the contrary herein, so long as no Default exists, Grantor shall have a license to collect all Rents and to retain, use and enjoy the same. Upon any occurrence of a Default hereunder such license shall be revoked upon notice to Grantor from Beneficiary and all rights shall revert to Beneficiary who then shall have the right to exercise all of its rights as absolute owner of the Leases and Rents. Grantor agrees that payments made by tenants or occupants to Beneficiary shall, as to such tenants, be considered as though made to Grantor and in discharge of tenants' obligations to Grantor to the extent of such payments. Nothing herein contained shall be construed as obliging Beneficiary to perform any of Grantor's covenants under any lease or rental agreement. Grantor shall execute and deliver to Beneficiary, upon demand, any further or supplemental assignments deemed desirable by Beneficiary in order to further carry out and confirm the intentions of this Paragraph 2.2 and upon failure of the Grantor so to comply, Beneficiary shall have the right to, in addition to any other rights or remedies, at its option, declare all obligations secured by this Deed of Trust to be immediately due and payable.

## ARTICLE III
## SECURITY AGREEMENT AND FIXTURE FILING

**3.1** **Security Agreement.**

This Deed of Trust creates a lien on the Property, and to the extent the Property is not real property under applicable law, this Deed of Trust constitutes a security agreement under the Idaho Uniform Commercial Code and any other applicable law ("Security Agreement"). If required by Beneficiary, at any time during the term of this Deed of Trust, Grantor will execute and deliver to Beneficiary, in form satisfactory to Beneficiary, additional security agreements, financing statements or other instruments covering all Personal Property or fixtures of Grantor which may at any time be furnished, placed on, or annexed or made appurtenant to the Real Property or used, useful or held for use in the operation of the Improvements. Grantor further agrees that:

**3.1.1** The obligations covered by this Security Agreement include future advances in all forms.

**3.1.2** Beneficiary may commingle any personal property that comes into its possession and require Grantor to assemble the personal property and make it available to Beneficiary at a place to be designated by Beneficiary which is reasonably convenient to both parties. To the extent Beneficiary is required for any reason to provide commercially reasonable notice to Grantor, Grantor agrees that notice mailed by first class mail ten (10) days before the event of which notice is given, is commercially reasonable notice.

**3.1.3** The standard by which Beneficiary's rights and duties under Article 9 of the Idaho Uniform Commercial Code, as amended or corresponding provisions of subsequent superseding Idaho state law, including but not limited to, Part 6 thereof, is measured, shall be gross negligence or willful misconduct.

**3.1.4** Grantor shall notify Beneficiary in writing within thirty (30) days of any change in name of Grantor or its corporate structure. Nothing herein shall be construed as a consent by Beneficiary to a change in name or corporate structure otherwise prohibited hereby.

Grantor hereby irrevocably constitutes and appoints Beneficiary the attorney-in-fact of Grantor, to execute, deliver and file with the appropriate filing officer or office such security agreements, financing statements or other instruments as Beneficiary may request or require in order to impose and perfect the lien and security interest hereof more specifically on the Personal Property or any fixture.

It is understood and agreed that, in order to protect Beneficiary from the effect of Idaho Code Section 28-9-334, as amended or corresponding provisions of subsequent superseding Idaho state law, in the event that (i) Grantor intends to purchase any goods which may become fixtures attached to the Property, or any part thereof, and (ii) such goods will be subject to a purchase money security interest held by a seller or any other party:

a.    Grantor shall, before executing any security agreement or other document evidencing such security interest, obtain the prior written approval of Beneficiary, and all requests for such written approval shall be in writing and contain the following information:

(1)    a description of the fixtures to be replaced, added to, installed or substituted;

(2)    the address at which the fixtures will be replaced, added to, installed or substituted; and

(3)    the name and address of the proposed holder and proposed amount of the security interest,

and any failure of Grantor to obtain such approval shall be a material breach of Grantor's covenant under this Deed of Trust, and shall, at the option of Beneficiary, entitle Beneficiary to all rights and remedies provided for herein upon a Default provided, that Beneficiary shall be deemed to have approved such agreement if it fails to object to such agreement within thirty (30) days of its actual receipt of Grantor's written request for such approval. No consent by Beneficiary pursuant to this subsection shall be deemed to constitute an agreement to subordinate the right of the Beneficiary in fixtures or other property covered by this Deed of Trust.

b.    If at any time Grantor fails to make any payment on an obligation secured by a purchase money security interest in the Personal Property or any fixtures, Beneficiary may, at its option, at any time pay the amount secured by such security interest and the amount so paid shall be (i) secured by this Deed of Trust and shall be a lien on the Property having the same priorities as the liens and security interests created by this Deed of Trust, and (ii) payable on demand with interest at the rate specified in the Note from the time of such payment. Failure of Grantor to make such payment to Beneficiary within ten (10) days after demand, shall, at the election of Beneficiary, constitute a Default hereunder.

c.    Beneficiary shall have the right to acquire by assignment from the holder of such security interest any and all contract rights, accounts receivable, negotiable or non-negotiable instruments, or other evidence of Grantor's indebtedness for such Personal Property or fixtures, and, upon acquiring such interest by assignment, shall have the right to enforce the security interest as assignee thereof, in accordance with the terms and provisions of the Idaho Uniform Commercial Code then in effect, and in accordance with any other provisions of law.

d.    Whether or not Beneficiary has paid the indebtedness secured by, or taken an assignment of, such security interest, Grantor covenants to pay all sums and perform all obligations secured thereby, and a default by Grantor under such security agreement shall, at the election of Beneficiary, constitute a Default hereunder.

**3.2    Fixture Filing.**

To the extent that any of the Property constitutes a fixture, this Deed of Trust shall serve as a Fixture Filing pursuant to the Idaho Uniform Commercial Code.

## ARTICLE IV
## DEFAULTS AND REMEDIES

**4.1**    **Events of Default.**

If any of the following events shall occur (each, a "Default"):

**4.1.1**    Default in payment when due of any indebtedness evidenced by the Note or secured hereby or the failure to pay when due any other sums of money required to be paid by any of the Loan Documents, subject to any applicable notice or cure periods provided in the Loan Documents; or

**4.1.2**    Failure by Grantor or any other party, including a Guarantor, to strictly comply with any of the covenants, terms, conditions, restrictions or agreements contained in this Deed of Trust, the Note, or any of the other Loan Documents, except a failure to pay money as required in subparagraph 4.1.1 above or a default under subparagraphs 4.1.3 through 4.1.9 below; or

**4.1.3**    A default occurs under any of the Loan Documents (after the expiration of any applicable notice or cure periods) or there is a default under any other loan from any party that is secured in whole or in part by the Property, or any part thereof; or

**4.1.4**    Grantor, any member of Grantor, a Guarantor, or any other guarantor of the Note (collectively, a "Loan Party") applies for or consents to the appointment of a receiver or trustee for it or any portion of its property, or if such receiver or trustee is appointed for any Loan Party or its property, or any Loan Party makes an assignment for the benefit of creditors, or any Loan Party admits in writing its inability to pay its debts as they become due, or any Loan Party becomes insolvent, or a petition is filed by any Loan Party pursuant to any of the provisions of the United States Bankruptcy Code, as amended, and such breach is not cured within thirty (30) days of Beneficiary's delivery of written notice to Grantor; or

**4.1.5**    A petition is filed against any Loan Party pursuant to any of the provisions of the United States Bankruptcy Code, as amended, or there is an attachment or sequestration of any of the property of any Loan Party and the same is not discharged or bonded within sixty (60) days; or

**4.1.6**    Any representation or disclosure made to Beneficiary, in this Deed of Trust, the Note or any other Loan Document, by any Loan Party proves to be materially false or misleading on the date when such representation or disclosure was made, whether or not that representation or disclosure appears in this Deed of Trust, or any Loan Party omits to provide any information that makes any such representation or disclosure materially false or misleading; or

**4.1.7**    A transfer of the Property in violation of Paragraph 1.21 hereof occurs; or

**4.1.8**   Grantor fails to comply with the financial covenants contained in Paragraph 1.23 hereof and such breach is not cured within thirty (30) days of Beneficiary's delivery of written notice to Grantor; or

**4.1.9**   A default (after the expiration of any applicable notice or cure periods) occurs under any other loan currently existing or hereafter made by Beneficiary, or an entity owned by any beneficial owner of Beneficiary, to Grantor, a Guarantor, or any entity in which fifty percent (50%) or more of the beneficial interests are owned by one or more persons who own fifty percent (50%) or more of the beneficial interests of Grantor or a Guarantor;

then and in any such event, Beneficiary shall be entitled to exercise all rights, and shall have the benefit of all remedies provided by law or set forth in this Deed of Trust or in any other instrument given to secure the indebtedness evidenced by the Note, including the right to declare all sums secured hereby immediately due and payable.

Notwithstanding the foregoing, upon a Default, Beneficiary shall have the right, in person or through a third party designated by Beneficiary, to take possession of the Property and perform any and all work and labor necessary to complete any on-going improvements being constructed by Grantor on the Property (the "Work"). All sums expended by Beneficiary in so doing shall be deemed to have been advanced under the Note and secured by this Deed of Trust and the other Loan Documents. Any sums disbursed by Beneficiary in excess of the maximum principal amount of the Loan will be considered as additional advances to Grantor bearing interest at the rate of interest provided for in the Note, and secured by the Deed of Trust and all other Loan Documents. Beneficiary, by electing to so complete the Work will not be deemed to have assumed any liability to Grantor or any other person or entity for completing the Work or for the manner or quality of construction of the Work, and Grantor hereby expressly waives any such liability on behalf of Beneficiary. Grantor hereby constitutes and appoints Beneficiary as its true and lawful attorney in fact with full power of substitution to complete the Work in the name of Grantor and to (i) make such additions, changes and corrections in any plans and specifications as Beneficiary deems desirable; (ii) employ contractors, subcontractors, architects and other persons as shall be required for such purposes; (iii) pay, settle or compromise all existing bills and claims which may be liens against the Property or as may be necessary or desirable for the completion of the Work or for clearance of title; and (iv) do any and all things which Grantor might do on its own behalf in order to complete the Work free and clear of all liens and encumbrances. The power of attorney granted pursuant to this paragraph shall be deemed a power coupled with an interest and irrevocable.

Further notwithstanding the foregoing, in the case of a default specified in subparagraph 4.1.2 above, if such default is susceptible of cure by Grantor, Beneficiary shall not exercise any such remedies unless Grantor fails to cure such default within thirty (30) days after written notice thereof from Beneficiary; provided that, if such default is of such nature that it cannot reasonably be cured within such thirty day period, such thirty day period shall be extended (to a period not exceeding ninety (90) days) if and so long as, in Beneficiary's sole judgment, Grantor is diligently prosecuting such cure. No waiver by Beneficiary of any default on the part of Grantor shall be construed as a waiver of any subsequent default hereunder.

### 4.2 Foreclosure Sale.

If a Default occurs and Beneficiary so requests, Trustee shall sell the Property in accordance with Idaho Code Sections 45-1500 et al. (as existing now or hereafter amended) at public auction to the highest bidder. Any person except Trustee may bid at the Trustee's sale. Trustee shall apply the proceeds of the sale as follows (i) to the expenses of sale, including Trustee's fees and attorneys' fees; (ii) to all the indebtedness evidenced by the Note and all other indebtedness secured by this Deed of Trust or any other Loan Document; and (iii) the surplus, if any, shall be distributed in accordance with the Deed of Trust Act. Trustee shall deliver to the purchaser at the sale its deed, without warranty, which shall convey to the purchaser the interest in the Property which Grantor had or had the power to convey at the time of its execution of this Deed of Trust and such as it may have acquired thereafter. The Trustee's deed shall recite the facts showing that the sale was conducted in compliance with all the requirements of the law and of this Deed of Trust, which recital shall be prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers and encumbrances for value. The power of sale conferred by this Deed of Trust and by Idaho Code Sections 45-1500 et al. is not an exclusive remedy, and when not exercised Beneficiary may foreclose this Deed of Trust as a mortgage. Further, Beneficiary reserves all rights granted by Idaho Code Section 45-1512 (as existing now or hereafter amended) to pursue a monetary judgment against Grantor and/or any Guarantor.

Beneficiary shall have the right to proceed as to the Personal Property in accordance with Beneficiary's rights and remedies in respect to real property or sell the Personal Property separately and without regard to the remainder of the Property in accordance with Beneficiary's rights and remedies provided by the Idaho Uniform Commercial Code as well as other rights and remedies available at law or in equity.

### 4.3 Other Remedies Upon Default.

Upon the occurrence of a Default, Beneficiary is authorized, either by itself or by its agent to be appointed by it for that purpose or by a receiver appointed by a court of competent jurisdiction, to enter into and upon and take and hold possession of any portion or all of the Property, both real and personal, and exclude Grantor and all other persons therefrom; to operate and manage the Property and rent and lease the same; to perform such reasonable acts of repair or protection as may be reasonably necessary or proper to conserve the value thereof; and collect any Rents for the benefit and protection of Beneficiary, and from time to time apply or accumulate such Rents in such order and manner as Beneficiary or such receiver, in its sole discretion, shall consider advisable, to or upon the following: the expenses of receivership, if any; the proper costs of upkeep, maintenance, repair and/or operation of the Property; the repayment of any sums theretofore or thereafter advanced pursuant to the terms of this Deed of Trust; the interest then due or next to become due upon the indebtedness secured hereby; the costs of appraisal of the Property; insurance premiums; and the taxes and assessments upon the Property then due or next to become due, or upon the unpaid principal of such indebtedness. The collection or receipt of Rents by Beneficiary, its agent or receiver, after notice of default and notice of sale shall not affect or impair such default or notices or any sale proceedings predicated

thereon. Any Rents in the possession of Beneficiary, its agent or receiver, at the time of sale and not theretofore applied as herein provided, shall be applied in the same manner and for the same purposes as the proceeds of the sale.

Neither Trustee nor Beneficiary shall be under any obligation to make any of the payments or do any of the acts referred to in this Paragraph 4.3, and any of the actions referred to in this Paragraph 4.3 may be taken by Beneficiary regardless of whether any notice of default or notice of sale has been given hereunder and without regard to the adequacy of the security for the indebtedness evidenced by the Note.

### 4.4    Effect of Foreclosure on Leases.

Beneficiary shall have the right, at its option, to foreclose this Deed of Trust subject to the rights of any tenants of the Property, and the failure to make any tenants a party defendant to any foreclosure proceeding will not be asserted by the Grantor as a defense in any action or suit instituted to collect the indebtedness secured hereby or any deficiency remaining after foreclosure. Any such tenant whom Beneficiary elects to not make a party or subject to any foreclosure action shall continue in possession of its leasehold for the unexpired term of its lease and shall attorn to Beneficiary or other purchaser at the sale.

### 4.5    Sale in Parcels; Marshalling.

The Property, real, personal or mixed, may be sold as an entirety or in parcels, by one sale or by several sales held at one time or at different times, all as Trustee or Beneficiary, in its unrestricted discretion, may elect. Grantor, for and on behalf of itself and all persons claiming by, through or under Grantor, waives any and all right to have the Property marshaled upon any foreclosure sale and agrees that, upon foreclosure, the Property may be sold as an entirety and not in parcels.

### 4.6    Appointment of Receiver.

Upon a Default, Beneficiary, separately or in any action to foreclose this Deed of Trust, shall be entitled (without notice and without regard to the adequacy of any security for the Note, the absence of waste or deterioration of the Property or other arguments based on equity) to the appointment of a receiver of the Property, including without limitation, of the Rents, who shall have, in addition to all the rights and powers customarily given to and exercised by such receiver, all the rights and powers granted to Beneficiary by the covenants contained herein. Once appointed, at Beneficiary's option, such receiver may remain in place until the default is cured.

### 4.7    Payment of Proceeds.

Whenever this Deed of Trust requires that amounts payable by a third party be paid directly to Beneficiary (for example, insurance proceeds and proceeds of claims of loss or damage to the Property), Beneficiary may enforce such right with a preliminary injunction or

temporary restraining order. Grantor agrees that irreparable harm may result if such payments are not made directly to Beneficiary.

## ARTICLE V
## GENERAL COVENANTS

### 5.1   No Waiver.

Grantor covenants and agrees that the acceptance by Beneficiary of any sum secured hereby after its due date, or in an amount less than the sum then due, shall not constitute a waiver by Beneficiary of its rights either to require prompt payment when due of all other sums so secured or to declare a default or exercise such other rights as herein provided for failure so to pay. No failure by Beneficiary to insist upon strict performance of any term, covenant or condition hereof, nor failure to exercise any right or remedy hereunder, shall constitute a waiver of any such breach of such term, covenant or condition or of the later exercise of such right or remedy. All waivers shall be in writing.

### 5.2   Remedies Cumulative.

No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute.

### 5.3   Plats, Easements and Other Agreements.

At any time upon written request of Beneficiary, payment of its fees and presentation of this Deed of Trust and the Note for endorsement (in case of full reconveyance, for cancellation and retention), without affecting the liability of any person for the payment of the indebtedness or the effect of the Deed of Trust upon the remainder of the Property, Trustee may (i) consent to the making of any map or plat of said Real Property, (ii) join in granting any easement or creating any restriction thereon; (iii) join in any subordination or other agreement affecting this Deed of Trust or the lien or charge thereof; or (iv) reconvey, without warranty, all or any part of the Real Property. The grantee in any reconveyance may be described as the "person or persons legally entitled thereto," and the recitals therein of any matters or facts shall be conclusive proof of the truthfulness thereof. Grantor agrees to pay Trustee's fee for full or partial reconveyance, together with a recording fee, if Trustee, at its option, elects to record said reconveyance.

### 5.4   Notices.

All notices hereunder shall be deemed to have been duly given if mailed by United States registered or certified mail (return receipt requested and postage prepaid), sent by a reputable overnight delivery service, or personally delivered to the parties at the addresses set forth on page one of this Deed of Trust (or at such other addresses as shall be given in writing by any party to the other), and shall be deemed complete upon any such mailing, sending or delivery.

### 5.5    Heirs and Assigns; Terminology.

This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term "Grantor" shall mean both the original Grantor and any subsequent owner or owners of any of the Property. The term "Beneficiary" shall mean the owner and holder, including pledgees, of the Note, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. The term "and/or" as used herein means one or the other or both, or any one or all, or any combination of the things or persons in connection with which the words are used. The obligations of Grantor hereunder shall be joint and several, binding on the community of which any grantor is a part and on the separate or quasi-community property of any grantor.

The captions and headings are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope or intent of this Deed of Trust nor in any way affect this Deed of Trust.

### 5.6    Severability.

If any provision hereof should be held unenforceable or void, then such provision shall be deemed separable from the remaining provisions and shall in no way affect the validity of this Deed of Trust, except that if such provision relates to the payment of any monetary sum then Beneficiary may, at its option, declare the indebtedness and all other sums secured hereby immediately due and payable, provided that no prepayment fee shall be payable in the event Beneficiary elects to exercise the option to accelerate contained in this Paragraph 5.6.

Grantor acknowledges and agrees that this document constitutes, among others, four (4) separate agreements: a Deed of Trust, a Security Agreement, a UCC Fixture Filing and an Assignment of Leases and Rents, each of which may be construed and enforced independently of the others even though the provisions hereof are common to all.

### 5.7    Time is of the Essence.

Time is of the essence hereof in connection with all obligations of Grantor herein or in the Note. By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

### 5.8    Jury Trials.

It is mutually agreed by Grantor and Beneficiary that they each waive trial by jury in any action, proceeding, or counterclaim brought by either of them against the other on any matter whatsoever arising out of or in any way connected with the Note, this Deed of Trust or the Loan secured hereby.

5.9    **Oral Agreements.**

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND
CREDIT IN EXCESS OF $50,000.00, OR TO FORBEAR FROM ENFORCING
REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER IDAHO LAW.**

5.10    **Non-Agricultural Use.**

The Real Property that is the subject of this Deed of Trust is not used principally or
primarily for agricultural purposes.

5.11    **Waiver of Homestead Exemption.**

Grantor hereby waives all rights to any homestead exemption to which Grantor would
otherwise be entitled under any present or future constitutional, statutory, or other provision of
applicable state or federal law.

5.12    **No Personal, Family or Household Use.**

The indebtedness evidenced by the Note shall not be used for personal, family or
household use.

5.13    **Governing Law.**

This Deed of Trust is to be governed by and construed in accordance with the laws of the
State of Idaho.

5.14    **Deed Releases.**

5.14.1    Beneficiary shall, upon the request of Grantor, and provided Grantor is not
in default hereunder, or under any of the other Loan Documents, grant a deed of reconveyance
for an individual lot composing the Real Property (the "**Lot**") when a Lot is sold by Grantor to a
third party person or entity, provided, however that, Grantor pays to Beneficiary at closing one
hundred percent (100%) of the Net Sales Proceeds for each Lot sold.  As used herein, "**Net Sales
Proceeds**" means the total consideration of every type, nature or description paid or to be paid by
any person or entity to Grantor in connection with the purchase of a Lot, less the following
expense items (the "**Approved Expense Items**"):

> (a)    Commissions to real estate brokers estimated at 3% of gross sales
> price, if any, and other customary seller's fees and expenses payable to
> unrelated third parties, estimated at 2% of gross sales price, all as
> approved by Beneficiary.  Any fees payable to Grantor or any related
> party of Grantor shall not be an Approved Expense Item.

> (b)    A vendee's lien that may attach to the subject Lot to the extent that
> it is senior to that certain pre-petition Deed of Trust, Security Agreement

and Fixture Filing With Assignment of Leases and Rents dated September 30, 2019, and recorded on October 2, 2019, as Instrument No. 2019-047003, records of Canyon County, Idaho in favor of Beneficiary (the "**Pre-Petition Deed of Trust**").

(c)     Any mechanic's or materialmen's lien that may attach to the subject Lot to the extent that it is senior to the Pre-Petition Deed of Trust referenced above.

(d)     The payment of Beneficiary's allowed claim for its pre-petition loan pursuant to Grantor's confirmed plan of reorganization in Bankruptcy Case No. 20-00674 – JMM, District of Idaho.

### 5.15    Termination.

Trustee shall reconvey all or any part of the Property covered by this Deed of Trust to the person legally entitled thereto upon written request of Grantor and Beneficiary, or upon satisfaction of the obligations secured hereby and written request of reconveyance made by Beneficiary.

[Signature(s) follow on next page]

IN WITNESS WHEREOF, Grantor has executed this instrument as of the date first written above.

"GRANTOR"                    BEST VIEW CONSTRUCTION & DEVELOPMENT LLC,
                             an Idaho limited liability company


                             By_____
                                 Gaven King, Member



STATE OF IDAHO                    )
                                  ) ss.
COUNTY OF CANYON                  )

I certify that I know or have satisfactory evidence that GAVEN KING is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledged it as the Member of BEST VIEW CONSTRUCTION & DEVELOPMENT LLC, to be the free and voluntary act and deed of said limited liability company, for the uses and purposes mentioned in the instrument.

WITNESS my hand and official seal hereto affixed this _____ day of _____, 2021.


                             _____
                             (Signature of Notary)

                             _____
                             (Print or stamp name of Notary)
                             NOTARY PUBLIC in and for the State of Idaho
                             My Appointment Expires: _____.

**EXHIBIT A**
**LEGAL DESCRIPTION OF REAL PROPERTY**


Lots 1 through 6, of Best View Quads Subdivision as shown on the official plat thereof, filed in Book 48 of Page 47, records of Canyon County, Idaho.


Tax Parcel Nos. 32249000 0, 32249010 0.

Address:  1910 Sunnyridge Road, Nampa, Idaho 83686.

## ASSIGNMENT OF CONSTRUCTION DOCUMENTS

THIS ASSIGNMENT OF CONSTRUCTION DOCUMENTS ("**Assignment**"), is made and entered into as of the _____ day of _____, 2021, by BEST VIEW CONSTRUCTION & DEVELOPMENT LLC, an Idaho limited liability company ("**Borrower**"), to and for the benefit of BRMK LENDING, LLC, a Delaware limited liability company ("**Lender**").

A.    On or about the date hereof, Lender has agreed to make a secured construction loan (the "**Loan**") available to Borrower in the maximum principal amount of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00) for the construction of certain improvements (the "**Improvements**") described in plans and specifications (the "**Plans and Specification**") upon the real property (the "**Property**") described in the Loan Documents (as hereinafter defined) (the "**Property**" and the "**Improvements**" are hereinafter collectively called the "**Project**").

B.    In connection with the Loan, Borrower has executed and delivered a Promissory Note (the "**Note**") in favor of Lender on or about the date hereof in the maximum principal amount of the Loan, the payment of which is secured by, among other things, a Deed of Trust, Security Agreement and Fixture Filing With Assignment of Leases and Rents of even date therewith (hereinafter referred to as the "**Deed of Trust**"), made by Borrower in favor of Lender, and encumbering the Property. The Note, the Deed of Trust, and all other documents executed in connection with the Loan are referred to herein as the "**Loan Documents**" and each individually a "**Loan Document**." Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the applicable Loan Document.

C.    The execution and delivery of this Assignment is a condition precedent to the Loan.

NOW, THEREFORE, in consideration of the foregoing recitals set forth above, which are fully incorporated herein, and other good and valuable consideration, on the terms, conditions, and covenants hereinafter set forth, Borrower agrees as follows:

1.    **Assignment**. Borrower hereby grants, transfers and assigns to Lender all the right, title and interest of Borrower now or hereafter acquired in and to the following:

(a)    the General Contract dated _____, 2021, between Borrower and _____ (the "**General Contractor**"), together with any and all extensions, modifications, amendments, replacements and renewals thereof (collectively, the "**General Contract**");

(b)    all contracts and subcontracts, together with any and all extensions, modifications, amendments and renewals thereof, which are entered into by Borrower or the General Contractor in connection with the performance of the work or the supply of the materials required for the Project;

(c)      all guarantees, warranties and other undertakings covering the quality or performance of the work or the quality of the materials required by the General Contract, and the other contracts and subcontracts referenced above;

(d)      all architectural, engineering and other design contracts;

(e)      all plans, specifications and other design and construction documents, including but not limited to the Plans and Specifications; and

(f)      to the extent assignable, all building permits, governmental permits, licenses, and authorizations now or hereafter issued and all tradenames, trademarks and logos used in connection with the construction and the development or operation of the Improvements.

The items referred to in subsections (a) through (f) above are sometimes hereinafter collectively referred to as the "**Construction Documents**."

This Assignment is given for the purpose of securing the payment of all sums, including, without limitation, the payment of principal and interest due under the Note, now or at any time due Lender under the Loan Documents, and any extensions, modifications, amendments and renewals thereof, and the performance and discharge of the obligations, covenants, conditions, and agreements of Borrower contained herein and in the Loan Documents.

2.      **Borrower's Covenants**. Borrower covenants and agrees:

(a)      To faithfully abide by, perform and discharge each and every obligation, covenant, condition and agreement of the Construction Documents to be performed by Borrower and to enforce performance by the other party thereto of each and every obligation, covenant, condition and agreement to be performed by such other party.

(b)      That the occurrence of any of the following shall constitute a Default hereunder:

(i)      Failure of Borrower for a period of thirty (30) days after written notice from Lender, to observe or perform any covenant or condition contained in this Assignment;

(ii)      Any representation or warranty made by Borrower herein which is not true and correct in any material respect as of the date hereof; and

(iii)      A Default by Borrower under the Note or any of the other Loan Documents, which shall not be cured within any applicable grace period.

(c)      Upon the occurrence of a Default hereunder, Lender shall have all rights granted to Lender under the Loan Documents, and Lender shall have the right (but not the obligation) to correct any default in such manner and to such extent as Lender may deem necessary to protect the security hereof, including specifically, without limitation, the right to appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Lender, and also the right to perform and discharge each and every

obligation, covenant, condition and agreement of Borrower under the Construction Documents, and, in exercising any such powers, to pay necessary costs and expenses, employ counsel and incur and pay reasonable attorneys' fees and expenses. Lender shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under any of the Construction Documents, or by reason of this Assignment.

(d)    At any time after the occurrence of a Default, Lender may, at its option, without notice, and without regard to the adequacy of security for the Loan, either in person or by agent, with or without bringing any action or proceeding, or by a receiver to be appointed by a court at any time hereafter, enforce for its own benefit the Construction Documents, or any of them. The exercise of any rights under this Assignment shall not be deemed to cure or waive any default under any of the Loan Documents, or waive, modify or affect any notice of default under any of the Loan Documents, or invalidate any act done pursuant to such notice.

(e)    That the General Contractor and any other parties to the Construction Documents, upon written notice from Lender of the occurrence of a Default, shall be and are hereby authorized by Borrower to perform for the benefit of Lender in accordance with the terms and conditions thereof without any obligation to determine whether or not such a Default has in fact occurred.

(f)    That in the exercise of the powers herein granted to Lender, no liability shall be asserted or enforced against Lender, all such liability being hereby expressly waived and released by Borrower. Borrower hereby agrees to indemnify and hold Lender, and its officers, directors, employees and agents, free and harmless from and against any and all liability, expense, cost, loss or damage which Lender may incur by reason of any act or omission of Borrower under any of the Construction Documents. Should Lender incur any liability, expense, cost, loss or damage (i) under the Construction Documents for which it is to be indemnified by Borrower as aforesaid, or (ii) by reason of the exercise of Lender's rights hereunder (including, but not limited to, the exercise of the rights granted to Lender under Section 2(c) hereof), the amount thereof, including costs, expenses and reasonable attorneys' fees and expenses, shall be secured hereby and by the Deed of Trust and all other Loan Documents (whether or not such amount, when aggregated with other sums secured by the Deed of Trust, exceeds the aggregate face amount of the Note) and shall (x) be due and payable immediately upon demand by Lender and (y) bear interest at the Default Rate set forth in the Note.

(g)    That all representations, warranties, covenants, powers and rights herein contained shall be binding upon, and shall inure to the benefit of, Borrower and Lender and their respective legal representatives, successors and assigns, except that Borrower not shall have the right to assign any interest under this Assignment without the prior written consent of Lender.

3.    **Borrower's Representations**. Borrower further hereby represents and covenants to Lender that (a) Borrower has not previously assigned, sold, pledged, transferred, mortgaged, hypothecated or otherwise encumbered the Construction Documents or any of them, or its right, title and interest therein, (b) Borrower shall not assign, sell, pledge, transfer, mortgage, hypothecate or otherwise encumber its interests in the Construction Documents or any of them, (c) Borrower has not performed any act which might prevent Borrower from performing its undertakings hereunder or which might prevent Lender from operating under or enforcing any of

the terms and conditions hereof or which would limit Lender in such operation or enforcement, (d) Borrower is not in default under the Construction Documents, or any of them, and to the best knowledge of Borrower, no other party to the respective Construction Documents is in default thereunder except as disclosed in writing to Lender, (e) no amendments to any of the Construction Documents will be made without the prior written consent of Lender, and (f) upon execution of the General Contract or any of the other Construction Documents, Borrower will deliver a copy of such Construction Documents to Lender and will require such of the parties thereto as Lender may designate to execute and deliver to Lender a consent to this Assignment in the form required by Lender. The form of the required consent for the Contractor under the General Contract is attached hereto as Exhibit A.

4.    **Notices**. All notices, demands or documents which are required or permitted to be given or served hereunder shall be in writing and shall be deemed sufficiently given when delivered or mailed in the manner set forth in the Note.

5.    **Nature of Assignment**. This Assignment is made for collateral purposes only and the duties and obligations of Borrower under this Assignment shall terminate when all sums due Lender under the Loan Documents are paid in full and all obligations, covenants, conditions and agreements of Borrower contained in the Loan Documents are performed and discharged.

6.    **Governing Law; Venue**. This Assignment shall for all purposes be governed by and construed in accordance with the internal laws of the State of Idaho, without giving effect to principles regarding conflict of laws, and in the event any action is brought to enforce the provisions of this Assignment, the venue of same shall be laid in Canyon County, Idaho. This Assignment is the result of substantial negotiations between Borrower and Lender and shall be construed in accordance with the fair intent and meaning of the language contained in this Assignment in its entirety and not for or against either party, regardless of which party (or its legal counsel) was responsible for its preparation.

7.    **Third Party Rights**. It is expressly intended, understood and agreed that this Assignment is made and entered into for the sole protection and benefit of Borrower, Lender, and their respective successors and assigns (but in the case of assigns of Borrower, only to the extent permitted hereunder); that no other person or persons shall have any right at any time to action hereon or rights to the proceeds of the Loan; that such Loan proceeds do not constitute a trust fund for the benefit of any third party; that no third party shall under any circumstances be entitled to any equitable lien on any such undisbursed Loan proceeds at any time; and that Lender shall have a lien upon and right to direct application of any such undisbursed Loan proceeds as provided in the Loan Documents.

8.    **Severability**. Borrower and Lender intend and believe that each provision in this Assignment comports with all applicable local, state or federal laws and judicial decisions. However, if any provision or provisions, or if any portion of any provision or provisions, in this Assignment is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision or public policy, and if such court should declare such portion, provision or provisions of this Assignment to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent both of Borrower and Lender that such portion, provision or provisions shall be given force to the fullest possible extent that they

are legal, valid and enforceable, that the remainder of this Assignment shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein and that the rights, obligations and interests of Borrower and Lender under the remainder of this Assignment shall continue in full force and effect.

9.     **Counterparts**. This Assignment may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT IN EXCESS OF $50,000.00, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER IDAHO LAW.**

[Signature(s) follow on next page]

IN WITNESS WHEREOF, Borrower has delivered this Assignment as of the date first written above.

"BORROWER"               BEST VIEW CONSTRUCTION & DEVELOPMENT LLC,
                         an Idaho limited liability company


                         By_____
                            Gaven King, Member

## EXHIBIT A

## CONTRACTOR'S AGREEMENT AND CONSENT TO
## ASSIGNMENT OF CONSTRUCTION DOCUMENTS

The undersigned ("**Contractor**") as general contractor under the General Contract between Best View Construction & Development LLC, an Idaho limited liability company ("**Owner**"), and Contractor, dated _____, 2021 (the "**Agreement**"), which is one of the Construction Documents referred to in that certain Assignment of Construction Documents dated _____, 2021 (the "**Assignment**"), made by Owner to BRMK Lending, LLC, a Delaware limited liability company ("**Lender**"), hereby consents to the terms of the Assignment and agrees that, upon receipt of notice from Lender or its successors or assigns that an Event of Default has occurred under the Assignment, it will perform all of its obligations, covenants, conditions and agreements under the Agreement for the benefit of Lender and its successors and assigns, so long as Lender performs the duties and obligations of the Owner under the Agreement.

For purposes of the Assignment, any notice, demand, request or other communication which any party hereto may be required or may desire to give hereunder shall be in writing and shall be deemed to have been properly given (a) if hand delivered, when delivered; (b) if mailed by United States Certified Mail (postage prepaid, return receipt requested), three (3) Business Days after mailing; or (c) if by Federal Express or other reliable overnight courier service, on the next Business Day after delivered to such courier service, with all options followed up by a copy of the notice sent via email:

If to the Contractor:      _____
                           _____
                           _____
                           Attention: _____
                           Telephone: _____
                           Email: _____

If to Lender:      BRMK Lending, LLC
                   1420 Fifth Avenue, Suite 2000
                   Seattle, WA  98101
                   Telephone: (206) 971-0800
                   Email: Jeff@Broadmark.com

or such other address as the party to be served with notice may have furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice.

The undersigned also agrees that in the event of a breach by Owner of any of the terms and conditions of the Agreement, Contractor will give Lender written notice of such breach and the opportunity to remedy or cure such breach within thirty (30) days thereafter except that the undersigned agrees that no default shall be deemed to have occurred if curing such default cannot by its nature be accomplished in such thirty (30) day period so long as Lender shall have

commenced curing the same within such thirty (30) day period and thereafter shall diligently and continuously prosecute the same to completion.

It is expressly understood that Lender neither assumes nor has any obligation to Contractor to exercise its rights under the Assignment, and that the option to exercise such right rests in the sole and absolute discretion of Lender. In the event Lender exercises its rights under the Assignment, Contractor agrees that Lender shall have no personal obligations or liabilities under the Agreement or the Assignment and the sole rights and remedies of Contractor as against Lender under the Agreement or under this Consent (hereinafter defined) shall be a suit against Borrower and enforcement of Contractor's lien rights, if any, against the property described in the Agreement. Notwithstanding the preceding sentence, Contractor shall have no obligation to continue construction on behalf of Lender in the event Lender exercises its rights under the Assignment unless Lender assumes the obligation to pay sums due to Contractor for work performed or materials supplied as and when such payments become due under the terms of the Agreement.

Contractor irrevocably and unconditionally subordinates any and all claims and mechanics' liens which it now has, or may hereafter have, for services rendered under the Agreement to the liens and security interests in favor of Lender under the Deed of Trust securing Lender's Loan to Borrower.

Contractor acknowledges that the execution and delivery of this Assignment and Consent to Assignment ("**Consent**") is a material inducement to Lender to make the Loan, and, without execution and delivery of this Consent, Lender will not make the Loan.

This Consent shall be binding on and inure to the benefit of Borrower, Contractor and Lender and their respective successors and assigns, except that neither Borrower nor Contractor shall have the right to assign any interest under this Consent without the prior written consent of Lender.

Irrespective of the place of execution and/or delivery, this Consent shall be governed by, and shall be construed in accordance with, the laws of the State of Idaho, which State the parties agree has a substantial relationship to the parties and the underlying transactions embodied hereby.

IN WITNESS WHEREOF, Contractor has delivered this Consent as of the date first written above.

"CONTRACTOR"     _____,

             a _____

             By: _____
             Name: _____
             Title: _____

## ASSIGNMENT OF ARCHITECTURAL DOCUMENTS

THIS ASSIGNMENT OF ARCHITECTURAL DOCUMENTS ("**Assignment**"), is made and entered into as of the _____ day of _____, 2021, by BEST VIEW CONSTRUCTION & DEVELOPMENT LLC, an Idaho limited liability company ("**Borrower**"), to and for the benefit of BRMK LENDING, LLC, a Delaware limited liability company ("**Lender**").

A.      On or about the date hereof, Lender has agreed to make a secured construction loan (the "**Loan**") available to Borrower in the maximum principal amount of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00) for the construction of certain improvements (the "**Improvements**") described in plans and specifications (the "**Plans and Specifications**") upon the real property (the "**Property**") described in the Loan Documents (as hereinafter defined) (the "**Property**" and the "**Improvements**" are hereinafter collectively called the "**Project**").

B.      In connection with the Loan, Borrower has executed and delivered a Promissory Note (the "**Note**") in favor of Lender of even date herewith in the maximum principal amount of the Loan, the payment of which is secured by, among other things, a Deed of Trust, Security Agreement and Fixture Filing With Assignment of Leases and Rents of even date herewith (hereinafter referred to as the "**Deed of Trust**"), made by Borrower in favor of Lender, and encumbering the Property. The Note, the Deed of Trust, and all other documents executed in connection with the Loan are referred to herein as the "**Loan Documents**" and each individually a "**Loan Document**." Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the applicable Loan Document.

C.      The execution and delivery of this Assignment is a condition precedent to the Loan.

NOW, THEREFORE, in consideration of the foregoing recitals set forth above, which are fully incorporated herein, and other good and valuable consideration on the terms, conditions, and covenants hereinafter set forth, Borrower agrees as follows:

1.      **Assignment**. Borrower hereby grants, transfers and assigns to Lender all the right, title and interest of Borrower now or hereafter acquired in and to the following:

(a)      all architectural, engineering and other design contracts, including the Architectural Contract dated _____, 2021, between Borrower and _____ (the "**Architect**"), together with any and all extensions, modifications, amendments, replacements and renewals thereof (collectively, the "**Architectural Contract**"); and

(b)      all plans, specifications and other design and construction documents, including, but not limited to, the Plans and Specifications.

The items referred to in subsections (a) and (b) above are sometimes hereinafter collectively referred to as the "**Architectural Documents**."

This Assignment is given for the purpose of securing the payment of all sums, including, without limitation, the payment of principal and interest due under the Note, now or at any time due Lender under the Loan Documents, and any extensions, modifications, amendments and renewals thereof, and the performance and discharge of the obligations, covenants, conditions, and agreements of Borrower contained herein and in the Loan Documents.

2.      **Borrower's Covenants**. Borrower covenants and agrees:

(a)      To faithfully abide by, perform and discharge each and every obligation, covenant, condition and agreement of the Architectural Documents to be performed by Borrower and to enforce performance by the other party thereto of each and every obligation, covenant, condition and agreement to be performed by such other party.

(b)      That the occurrence of any of the following shall constitute a Default hereunder:

(i)      Failure of Borrower for a period of thirty (30) days after written notice from Lender, to observe or perform any covenant or condition contained in this Assignment;

(ii)      Any representation or warranty made by Borrower herein which is not true and correct in any material respect as of the date hereof; and

(iii)      A Default by Borrower under the Note or any of the other Loan Documents, which shall not be cured within any applicable grace period.

(c)      Upon the occurrence of a Default hereunder, Lender shall have all rights granted to Lender under the Loan Documents, and Lender shall have the right (but not the obligation) to correct any default in such manner and to such extent as Lender may deem necessary to protect the security hereof, including specifically, without limitation, the right to appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Lender, and also the right to perform and discharge each and every obligation, covenant, condition and agreement of Borrower under the Architectural Documents, and, in exercising any such powers, to pay necessary costs and expenses, employ counsel and incur and pay reasonable attorneys' fees and expenses. Lender shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under any of the Architectural Documents, or by reason of this Assignment.

(d)      At any time after the occurrence of a Default, Lender may, at its option, without notice, and without regard to the adequacy of security for the Loan, either in person or by agent, with or without bringing any action or proceeding, or by a receiver to be appointed by a court at any time hereafter, enforce for its own benefit the Architectural Documents, or any of them. The exercise of any rights under this Assignment shall not be deemed to cure or waive any default under any of the Loan Documents, or waive, modify or affect any notice of default under any of the Loan Documents, or invalidate any act done pursuant to such notice.

(e)      That the Architect and any other parties to the Architectural Documents, upon written notice from Lender of the occurrence of a Default, shall be and are hereby

authorized by Borrower to perform for the benefit of Lender in accordance with the terms and conditions thereof without any obligation to determine whether or not such a Default has in fact occurred.

(f)    That in the exercise of the powers herein granted to Lender, no liability shall be asserted or enforced against Lender, all such liability being hereby expressly waived and released by Borrower. Borrower hereby agrees to indemnify and hold Lender, and its officers, directors, employees and agents, free and harmless from and against any and all liability, expense, cost, loss or damage which Lender may incur by reason of any act or omission of Borrower under any of the Architectural Documents. Should Lender incur any liability, expense, cost, loss or damage (i) under the Architectural Documents for which it is to be indemnified by Borrower as aforesaid, or (ii) by reason of the exercise of Lender's rights hereunder (including, but not limited to, the exercise of the rights granted to Lender under Section 2(c) hereof), the amount thereof, including costs, expenses and reasonable attorneys' fees and expenses, shall be secured hereby and by the Deed of Trust and all other Loan Documents (whether or not such amount, when aggregated with other sums secured by the Deed of Trust, exceeds the aggregate face amount of the Note) and shall (x) be due and payable immediately upon demand by Lender and (y) bear interest at the Default Rate set forth in the Note.

(g)    That all representations, warranties, covenants, powers and rights herein contained shall be binding upon, and shall inure to the benefit of, Borrower and Lender and their respective legal representatives, successors and assigns, except that Borrower not shall have the right to assign any interest under this Assignment without the prior written consent of Lender.

3.    **Borrower's Representations**. Borrower further hereby represents and covenants to Lender that (a) Borrower has not previously assigned, sold, pledged, transferred, mortgaged, hypothecated or otherwise encumbered the Architectural Documents or any of them, or its right, title and interest therein, (b) Borrower shall not assign, sell, pledge, transfer, mortgage, hypothecate or otherwise encumber its interests in the Architectural Documents, or any of them, (c) Borrower has not performed any act which might prevent Borrower from performing its undertakings hereunder or which might prevent Lender from operating under or enforcing any of the terms and conditions hereof or which would limit Lender in such operation or enforcement, (d) Borrower is not in default under the Architectural Documents, or any of them, and to the best knowledge of Borrower, no other party to the Architectural Documents is in default thereunder except as disclosed in writing to Lender, (e) no amendments to any of the Architectural Documents will be made without the prior written consent of Lender, and (f) upon execution of the Architectural Contract or any of the other Architectural Documents, Borrower will deliver a copy of such Architectural Documents to Lender and will require such of the parties thereto as Lender may designate to execute and deliver to Lender a consent to this Assignment in the form required by Lender. The form of the required consent for the Architect of the Project is attached hereto as Exhibit A.

4.    **Notices**. All notices, demands or documents which are required or permitted to be given or served hereunder shall be in writing and shall be deemed sufficiently given when delivered or mailed in the manner set forth in the Note.

5.      **Nature of Assignment**. This Assignment is made for collateral purposes only and the duties and obligations of Borrower under this Assignment shall terminate when all sums due Lender under the Loan Documents are paid in full and all obligations, covenants, conditions and agreements of Borrower contained in the Loan Documents are performed and discharged.

6.      **Governing Law; Venue**. This Assignment shall for all purposes be governed by and construed in accordance with the internal laws of the State of Idaho, without giving effect to principles regarding conflict of laws, and in the event any action is brought to enforce the provisions of this Assignment, the venue of same shall be laid in Canyon County, Idaho. This Assignment is the result of substantial negotiations between Borrower and Lender and shall be construed in accordance with the fair intent and meaning of the language contained in this Assignment in its entirety and not for or against either party, regardless of which party (or its legal counsel) was responsible for its preparation.

7.      **Third Party Rights**. It is expressly intended, understood and agreed that this Assignment is made and entered into for the sole protection and benefit of Borrower, Lender, and their respective successors and assigns (but in the case of assigns of Borrower, only to the extent permitted hereunder); that no other person or persons shall have any right at any time to action hereon or rights to the proceeds of the Loan; that such Loan proceeds do not constitute a trust fund for the benefit of any third party; that no third party shall under any circumstances be entitled to any equitable lien on any such undisbursed Loan proceeds at any time; and that Lender shall have a lien upon and right to direct application of any such undisbursed Loan proceeds as provided in the Loan Documents.

8.      **Severability**. Borrower and Lender intend and believe that each provision in this Assignment comports with all applicable local, state or federal laws and judicial decisions. However, if any provision or provisions, or if any portion of any provision or provisions, in this Assignment is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision or public policy, and if such court should declare such portion, provision or provisions of this Assignment to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent both of Borrower and Lender that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Assignment shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein and that the rights, obligations and interests of Borrower and Lender under the remainder of this Assignment shall continue in full force and effect.

9.      **Counterpart**. This Assignment may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT IN EXCESS OF $50,000.00, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER IDAHO LAW.**

[Signature(s) follow on next page]

IN WITNESS WHEREOF, Borrower has delivered this Assignment as of the date first written above.

"BORROWER"                  BEST VIEW CONSTRUCTION & DEVELOPMENT LLC,
                            an Idaho limited liability company


                            By_____
                              Gaven King, Member

**EXHIBIT A**

**ARCHITECT'S AGREEMENT AND CONSENT TO
ASSIGNMENT OF ARCHITECTURAL DOCUMENTS**

The undersigned (**"Architect"**) as architect under the architecture contract between Best View Construction & Development LLC, an Idaho limited liability company (**"Owner"**), and Architect, dated _____, 2021 (the **"Agreement"**), which is one of the Architectural Documents referred to in that certain Assignment of Architectural Documents dated _____, 2021 (the **"Assignment"**), made by Owner to BRMK Lending, LLC, a Delaware limited liability company (**"Lender"**), hereby consents to the terms of the Assignment and agrees that, upon receipt of notice from Lender or its successors or assigns that an Event of Default has occurred under the Assignment, it will perform all of its obligations, covenants, conditions and agreements under the Agreement for the benefit of Lender and its successors and assigns, so long as Lender performs the duties and obligations of the Owner under the Agreement.

For purposes of the Assignment, any notice, demand, request or other communication which any party hereto may be required or may desire to give hereunder shall be in writing and shall be deemed to have been properly given (a) if hand delivered, when delivered; (b) if mailed by United States Certified Mail (postage prepaid, return receipt requested), three (3) Business Days after mailing; or (c) if by Federal Express or other reliable overnight courier service, on the next Business Day after delivered to such courier service, with all options followed up by a copy of the notice sent via email:

If to the Architect:     _____
                         _____
                         _____
                         Attention: _____
                         Telephone: _____
                         Email: _____

If to Lender:     BRMK Lending, LLC
                  1420 Fifth Avenue, Suite 2000
                  Seattle, WA  98101
                  Telephone: (206) 971-0800
                  Email: Jeff@Broadmark.com

or such other address as the party to be served with notice may have furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice.

The undersigned also agrees that in the event of a breach by Owner of any of the terms and conditions of the Agreement, Architect will give Lender written notice of such breach and the opportunity to remedy or cure such breach within thirty (30) days thereafter except that the undersigned agrees that no default shall be deemed to have occurred if curing such default cannot by its nature be accomplished in such thirty (30) day period so long as Lender shall have

commenced curing the same within such thirty (30) day period and thereafter shall diligently and continuously prosecute the same to completion.

It is expressly understood that Lender neither assumes nor has any obligation to Architect to exercise its rights under the Assignment, and that the option to exercise such right rests in the sole and absolute discretion of Lender. In the event Lender exercises its rights under the Assignment, Architect agrees that Lender shall have no personal obligations or liabilities under the Agreement or the Assignment and the sole rights and remedies of Architect as against Lender under the Agreement or under this Consent (hereinafter defined) shall be a suit against Borrower and enforcement of Architect's lien rights, if any, against the property described in the Agreement. Notwithstanding the preceding sentence, Architect shall have no obligation to continue services on behalf of Lender in the event Lender exercises its rights under the Assignment unless Lender assumes the obligation to pay sums due to Architect for work performed as and when such payments become due under the terms of the Agreement.

Architect irrevocably and unconditionally subordinates any and all claims and mechanics' liens which it now has, or may hereafter have, for services rendered under the Architect Agreement to the liens and security interests in favor of Lender under the Deed of Trust securing Lender's loan to Borrower.

Architect acknowledges that the execution and delivery of this Agreement and Consent to Assignment (**"Consent"**) is a material inducement to Lender to make the Loan, and, without execution and delivery of this Consent, Lender will not make the Loan.

This Consent shall be binding on and inure to the benefit of Borrower, Architect and Lender and their respective successors and assigns, except that neither Borrower nor Architect shall have the right to assign any interest under this Consent without the prior written consent of Lender.

Irrespective of the place of execution and/or delivery, this Consent shall be governed by, and shall be construed in accordance with, the laws of the State of Idaho, which State the parties agree has a substantial relationship to the parties and the underlying transactions embodied hereby.

IN WITNESS WHEREOF, Architect has delivered this Consent as of the date first written above.

"ARCHITECT"    _____,

                     a _____

                     By: _____

                     Name: _____

                     Title: _____