UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | | |
|---|---|---|
| In re: | ) | Case No. 20-00674-JMM |
| | ) | |
| BEST VIEW CONSTRUCTION & | ) | |
| DEVELOPMENT, LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## ORDER GRANTING MOTION FOR LEAVE TO INCUR SECURED INDEBTEDNESS & PAY CERTAIN POST-PETITION OBLIGATIONS

The Debtor's Motion for Leave to Incur Secured Indebtedness & Pay Certain Post-Petition Obligations (Docket No. 175 – the "DIP Financing Motion") was heard before this court on the 18th day of March, 2021. The Court having considered the DIP Financing Motion, and having heard the evidence and statements of counsel at the hearing, having considered all relevant matters related thereto, and being otherwise fully advised of the issues, and after due deliberation and sufficient cause appearing therefor, the Court makes the following findings of fact and conclusions of law:

**THE COURT HEREBY FINDS AND DETERMINES AS FOLLOWS**:

A. On July 22, 2020 ("Petition Date") the Debtor filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Code") commencing this chapter 11 case (the "Case").

B. The Debtor has retained possession of its property, and continues the operation and management of its businesses as debtor in possession pursuant to sections 1107, 1108 and 1184 of the Bankruptcy Code. A subchapter V trustee was appointed in this case – Matthew Grimshaw.

C. The Court has jurisdiction over the Case, the parties and the Debtor's property pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for the Case and the DIP Financing Motion is proper under 28 U.S.C. §§ 1408 and 1409.

D. An ongoing need exists for the Debtor to obtain financing of the type sought in the DIP Financing Motion, to continue the operation of its business and completion of construction of property as debtor in possession under chapter 11 of the Bankruptcy Code, to minimize the disruption of its operations and to reassure its vendors and buyers and other constituents of the Debtor's continued viability and ability to complete construction of the property at issue.

E. Debtor has been unable to obtain financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense, or solely in exchange for the grant of an administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code. The Debtor is unable to obtain financing other than in the form of a credit facility secured by liens in the Debtor's assets senior to existing liens on property of its estate pursuant to sections 364(d) of the Bankruptcy Code, and the financing offered by BRMK Lending, LLC ("Broadmark" or the "DIP Lender") is on the best terms available to the Debtor at this time. Within the timeframe required to avoid immediate and irreparable harm, the Debtor can obtain financing in the amounts required only by the grant of liens as hereinafter described.

F. The Debtor has requested that DIP Lender make available to the Debtor a credit facility (the "DIP Facility") in a maximum principal amount at any time outstanding of up to One Million Five Hundred Thousand Dollars ($1,500,000), the proceeds of which shall be used by the Debtor to fund the construction necessary to complete the fourplexes and close on a sale of the property, and only to the extent permitted under that filed with the DIP Financing Motion (Docket No. 175-1, as modified by Docket No. 194). Those agreements, together with all schedules, exhibits and

annexes thereto, and as at any time amended or restated, is referred to here as the "DIP Loan Agreement."

G. A condition to the willingness of DIP Lender to establish the DIP Facility is that, as security for the prompt payment of all DIP loans, all interest, fees, costs, expenses, including attorneys' fees, and other charges at any time payable by the Debtor under the DIP Loan Agreement, Debtor shall provide DIP Lender with:

(i) A security interest in and lien upon, and pledge to DIP Lender of, all of Debtor's right, title and interest in and to all of its real and certain personal property assets (as outlined in the DIP Loan Agreement).  The foregoing are collectively referred to as the "Collateral."  The liens granted by this paragraph shall be senior in priority to any existing liens as of the entry of this Order.

(ii) An allowed super-priority administrative expense claim (the "DIP Super-Priority Claim") with priority in the Debtor's case under sections 364(b), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726(b), 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment, provided, that the DIP Super-Priority Claim shall not extend to any proceeds of Avoidance Claims.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, as follows:

**1. Disposition.** The DIP Financing Motion is hereby granted on a final basis to the extent and subject to the terms set forth here, with the foregoing findings incorporated here by reference. Any objections to the DIP Financing Motion that have not previously been withdrawn or resolved are hereby overruled. This Order shall be valid, binding on all parties in interest and fully effective immediately upon entry.

**2. Good Cause.** The ability of the Debtor to obtain sufficient working capital and liquidity under the DIP Loan Agreement is vital to the Debtor's estate, the ability of the Debtor to complete construction on the real property, and the Debtor's creditors, so that the Debtor can continue to operate its business.  The preservation and completion of the Debtor's real estate project is critical to any successful reorganization.  The Debtor's estate will be immediately and irreparably harmed if this Order is not promptly entered.  Accordingly, good cause has been shown for the granting of the final relief sought in the DIP Financing Motion.

**3. Good Faith.** Based upon the record before the Court, the DIP Loan Agreement and this Order have been negotiated in good faith and at arm's-length between the Debtor and DIP Lender. Any loans and/or other financial accommodations made to the Debtor by DIP Lender thereunder shall be deemed to have been extended by DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and DIP Lender shall be entitled to all protections afforded by section 364(e) of the Bankruptcy Code.

**4. Authorization of Borrowing.** Upon entry of this Order, the Debtor is authorized to continue to (a) obtain credit extensions pursuant to the DIP Loan Agreement and to incur any and all liabilities and obligations thereunder and to pay all interest, fees, costs, expenses (including

reasonable attorneys' fees) and other obligations provided for under the DIP Loan Agreement, and (b) satisfy all conditions precedent and perform all obligations hereunder and thereunder in accordance with the terms hereof and thereof. DIP Lender shall have no obligation or responsibility to monitor the Debtor's use of the DIP loans and may rely upon the Debtor's representations that the amount of credit extensions requested at any time, and the use thereof, are in accordance with the requirements of this Order, the DIP Loan Agreement and Bankruptcy Rule 4001(c)(2). All reasonable fees payable, expenses and/or costs reimbursable under the DIP Loan Agreement, this Order or otherwise by the Debtor to DIP Lender are approved. The Debtor is authorized and directed to pay all of the foregoing, in accordance with the terms of the DIP Loan Agreement and this Order, without the necessity of the Debtor or DIP Lender filing with the Court any further motion, notice or application for approval or payment thereof. Upon payment of such fees, such fees shall be deemed fully earned.

**5. Authority to Execute and Deliver Necessary Documents.** The DIP Loan Agreement constitutes a valid and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms. The Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements pledge agreements, mortgages, deeds of trust, financing statements and intellectual property filings), and to pay all filing and recording fees, in each case as may be necessary to give effect to any of the terms and conditions of the DIP Loan Agreement, to perfect the DIP Liens (as hereinafter defined) and as otherwise required or contemplated by the DIP Loan Agreement.

**6. Amendments.** The Debtor and DIP Lender are authorized to implement, in accordance with the terms of the DIP Loan Agreement, any amendments to and modifications of any of the DIP Loan Agreement without further order of the Court, subject to the following conditions:

(a) the amendment or modification must not constitute a material change (as hereinafter defined) to the terms of the DIP Loan Agreement,

(b) copies of the amendment or modification must be served upon the SubChapter V Trustee, the U.S. Trustee, and other interested parties that specifically make a written request for such notice to counsel for DIP Lender, and

(c) notice of the amendment must be filed with the Court.  Any amendment or modification that constitutes a material change must be approved by the Court (and, for purposes hereof, a "material change" shall mean a change that operates to shorten the maturity of the DIP Facility, increase the aggregate amount of the commitments under the DIP Facility, increase the rate of interest other than as currently provided in or contemplated by the DIP Loan Agreement, add specific Events of Default or enlarge the nature and extent of default remedies available to DIP Lender following an Event of Default).  A modification to or extension of the facility that does not increase the $1.5 million aggregate amount of the commitments under the DIP Facility shall not constitute a "material change" requiring Court approval.

**7. DIP Liens.** All credit extensions, together with all interest, fees, expenses (including attorneys' fees) and other charges, at any time or times payable by the Debtor to DIP Lender in connection therewith or otherwise pursuant to the DIP Loan Agreement (collectively, "Obligations") shall be, and hereby are, secured by security interests and liens in favor of DIP Lender with respect to all of the Collateral, as set forth in Section H above. Pursuant to section 364(d) of the Bankruptcy Code, DIP Lender shall have perfected security interests in and liens upon all Collateral as defined above, senior in priority to all existing security interests as of the Petition Date (including any vendee's liens asserted by creditors in this bankruptcy proceeding).

All of the security interests and liens referred to above, together with those granted and conveyed pursuant to the DIP Loan Agreement, are referred to here as the DIP Liens.

**8. Super Priority Claim.**

(a) DIP Lender shall be deemed to have the allowed administrative expense Super-Priority Claim pursuant to section 364(c) of the Bankruptcy Code having priority over all other administrative expenses in the Case of the kind specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c) (upon entry of final order with respect to the DIP Financing Motion), 507(a), 507(b), 546(c), 726 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, attachment or otherwise, provided, that the DIP Super-Priority Claim shall not extend to any proceeds of Avoidance Claims.

(b) No lien or security interest granted to DIP Lender hereunder, including the DIP Liens, shall (i) be subject to any postpetition lien or security interest that is (A) avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code, or (B) subject to subordination under section 510 of the Bankruptcy Code, or (ii) hereafter be subordinated to or made *pari passu* with any other lien or security interest under section 364(d) of the Bankruptcy Code.

(c) The DIP Liens and the Super-Priority Claim and other rights and remedies granted to DIP Lender under this Order shall continue in this case notwithstanding any conversion thereof, and such liens and security interests shall maintain their priority as provided in this Order until the DIP Lender has been indefeasibly satisfied in full in cash and the commitment is terminated in accordance with the terms of the DIP Loan Agreement.

**9. No Surcharge.** In no event shall any costs or expenses of administration be imposed upon DIP Lender or any of the Collateral pursuant to sections 506(c), 105(a), or otherwise of the Bankruptcy Code, without the prior written consent of DIP Lender or further order of the Court, and no such consent shall be implied from any action, inaction or acquiescence by DIP Lender.

**10. Repayment.**  The Debtor may pay the outstanding balance of the DIP Facility and thereafter terminate the DIP Facility at any time before the Maturity Date as defined in the Loan Agreement and for any reason in its discretion.

**11. Preservation of Rights Granted Under This Order.**

(a) If the Case is dismissed or converted, then neither the entry of this Order nor the dismissal or conversion of any such Case shall affect the rights of DIP Lender under the DIP Loan Agreement or this Order, and all of the respective rights and remedies thereunder of DIP Lender shall remain in full force and effect as if this Case had been dismissed, converted, or substantively consolidated. The Debtor shall not seek, and it shall constitute an Event of Default if the Debtor seeks, or if there is entered, any order dismissing this Case. If an order dismissing this Case is at any time entered then such order shall provide that the liens and security interests granted to DIP Lender hereunder and in the DIP Loan Agreement, as the case may be, shall continue in full force and effect, shall remain binding on all parties in interest who had notice of the Case and shall maintain their priorities as provided in this Order.

(b) The provisions of this Order, and any actions taken pursuant hereto, shall survive the entry of any order confirming any plan of reorganization for the Debtor or converting the Case to chapter 7.  This Court shall not enter a confirmation order or dismissal order that shall alter the terms of repayment from those set forth in the DIP Loan Agreement and this Order, unless otherwise agreed to in writing by the DIP Lender.

**12. Automatic Perfection of Liens**.  The DIP Liens shall be deemed valid, binding, enforceable and perfected upon entry of this Order.  DIP Lender shall not be required to file any UCC-1 financing statements notices of lien or any similar document or take any other action (including possession of any of the Collateral in order to perfect any of the DIP Liens).  If DIP Lender chooses, in its discretion, to file any such UCC-1 financing statements, or take any other action to perfect any part of the DIP Liens, the Debtor and its officers shall cooperate by executing any documents or instruments that DIP Lender shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Order. DIP Lender may, in its sole discretion, file a certified copy of this Order in any filing office in each jurisdiction in which the Debtor is organized or has or maintains any Collateral or an office, and each filing office is directed to accept such certified copy of either or both of such Order for filing and recording without the imposition of any stamp, intangibles, recording or similar tax in accordance with the provisions of Bankruptcy Code section 1146.

**13. Modification of Automatic Stay.** The automatic stay provisions of section 362 of the Bankruptcy Code, to the extent applicable, are hereby lifted, vacated, modified and/or terminated as to DIP Lender to the extent necessary to implement the provisions of this Order and the DIP Loan Agreement.  Notwithstanding the foregoing, the automatic stay provisions of Section 362 shall apply in the event of any default by the Debtor under the DIP Loan Agreement.

**14.  Subsequent Reversal or Modification.** Notwithstanding any reversal, stay, modification or vacatur of this Order, any post-petition indebtedness, obligation or liability incurred by the Debtor to DIP Lender under the DIP Loan Agreement prior to the effective date of such action shall be governed in all respects by the original provisions of this Order, and DIP Lender shall be entitled to all of the rights, remedies, privileges, benefits and priorities granted

here and pursuant to the DIP Loan Agreement, with respect to any such indebtedness, obligation or liability.

**15. Successors and Assigns.** The provisions of this Order shall be binding upon all parties-in-interest in this Chapter 11 Case, including, without limitation, DIP Lender, the Debtor and their respective successors and assigns and shall inure to the benefit of DIP Lender, the Debtor and their respective successors and assigns, including, without limitation, any trustee, examiner, responsible officer, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code or in any successor proceeding, whether under the Bankruptcy Code or otherwise.  Except in the event the Subchapter V Trustee is appointed to manage the bankruptcy estate, in no event shall DIP Lender have any obligation to make credit extensions to any trustee appointed for the estate.

**16. Priority of Terms.** To the extent of any conflict between or among the express terms or provisions of the DIP Loan Agreement, the DIP Financing Motion, any order of this Court, or any other agreements, the terms and provisions of this Order shall govern and control.

**NOW, THEREFORE, IT IS FURTHER ORDERED, ADJUDGED AND DECREED**, as follows:

1.    A portion of the DIP Financing Motion requested permission to pay certain post-petition administrative claims with funds from the DIP Loan.  That request is GRANTED, but only to the extent those post-petition administrative creditors file, and have approved, a request for administrative expense status.

2.    A copy of this Order, with these provisions specifically highlighted, shall be provided by the Debtor directly to each of the potential post-petition administrative expense creditors.  Each of the potential administrative expense creditors shall have 60 days from the date

of this Order to file a request for administrative expense status and request to be paid using DIP

Loan funds.  In the event such a request is not filed within 60 days of the date of this Order, the

potential administrative expense creditor shall not be treated as an administrative expense creditor,

but that entity's claim shall be treated as a general unsecured claim (classified together with other

general unsecured claims) with payment as outlined in any confirmed Chapter 11 Plan.


This Order shall take effect immediately upon execution hereof, notwithstanding the

possible application of Bankruptcy Rules 4001(a)(3), 6004(g), 7062. 9014, or otherwise, and the

Clerk of the Court is hereby directed to enter this Order on the Court's docket in this Case.  This

Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.




DATED:  May 10, 2021

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

Order Submitted by:
Matthew T. Christensen, attorney for the Debtor


Approved as to form by:


  /s/ Jason Naess (email approval 5/5/21)
Jason R. Naess
Attorney for Acting United States Trustee


Approved as to form and content by:


  /s/ Randy Peterman (email approval 5/5/21)
Randall A. Peterman
Attorney for Creditors Leibow and Perry


Approved as to form and content by:


  /s/ Heidi Buck Morrison (email approval 5/5/21)
Heidi Buck Morrison
Attorney for Josiah Silva Trust


Approved as to form and content by:


  /s/ Matt Grimshaw (email approval 5/5/21)
Matthew Grimshaw
Subchapter V Trustee


Approved as to form and content by:


  /s/ Trevor Hart (email approval 5/6/21)
Trevor L. Hart
Attorney for BRMK Lending, LLC