## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| **In Re:**<br><br>**BEST VIEW CONSTRUCTION &<br>DEVELOPMENT, LLC,**<br><br>**Debtor.** | **Bankruptcy Case<br>No. 20-00674-JMM** |

## MEMORANDUM OF DECISION

**Appearances:**

> Chad R. Moody, JOHNSON MAY, Boise, Idaho, Attorney for Debtor.
>
> D. Blair Clark, LAW OFFICES OF D. BLAIR CLARK, PC, Boise, Idaho, Attorney for creditor Nalin Enterprises, LLC.
>
> Matthew W. Grimshaw, Boise, Idaho, Subchapter V Trustee.
>
> Jason R. Naess, Boise, Idaho, Assistant United States Trustee.

### *Introduction*

For consideration in this decision is the Objection to Claim and Notice—Nalin Enterprises, LLC (and ABC Supply Co.) ("Objection") filed by debtor Best View Construction & Development, LLC ("Debtor") to the proof of claim ("Claim") filed by Nalin Enterprises, LLC ("Nalin") in this chapter 11, subchapter V[1] case.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION–1

Following preliminary briefing on the issues, the Court conducted an evidentiary hearing on the Objection and directed the parties to provide written simultaneous closing arguments. The Court ordered the parties to address, as part of their closing arguments, the applicability of § 546(b) to the facts present in this case. The parties filed closing briefs, Dkt. Nos. 309 & 311–13, and after consideration of the briefing, testimony, and exhibits presented, as well as the applicable law, the Court issues the following decision which resolves the Objection. Fed. R. Bankr. P. 7052; 9014.

### *Relevant facts*

Debtor was formed to develop and build a multifamily development of quadplexes on a parcel of property owned by Gaven[2] and Zandra King in Canyon County, Idaho (the "Project"). Debtor entered into an agreement[3] with Nalin in late 2019 or early 2020 whereby Nalin would furnish and install the roofing, siding, and window materials on the Project. Nalin performed work pursuant to this agreement between March and June of 2020, installing at least a portion of the roofing, siding and windows on five of the six buildings that were constructed as part the Project. *See* Exs. 105–10.

Nalin purchased roofing, siding, and window material that was to be incorporated in the Project from American Builders and Contractors Supply Co., Inc. ("ABC Supply") between March and June of 2020. *See* Ex. 103. This material was purchased on Nalin's

---

[2] Mr. King's first name is spelled either "Gaven" or "Gavin" in the documents filed on the Court's docket as well as those admitted into evidence in the proceedings at issue here. Because the signature pages filed with the Court indicate his name is "Gaven J. King," the Court will utilize that spelling.

[3] It is unclear whether the parties entered into a written or oral agreement for Nalin to perform work on the Project and a written contract between the parties has not been admitted as part of this case. It is not disputed that the parties entered into an agreement for Nalin to perform work on the Project.

MEMORANDUM OF DECISION–2

account at ABC Supply and the invoices for payment provided by ABC Supply generally contain a reference to the Project and/or a description of the material purchased. *Id.*

At some point in early June 2020, a dispute arose between Nalin Kesner, Nalin's managing member, and Mr. King, resulting in Mr. Kesner being removed from the Project. Nalin did not perform any work on the Project after being removed and Mr. King testified that Debtor entered into an agreement with a different subcontractor to complete the remaining roofing, siding, and window scopes of the Project. At the time that Nalin was removed from the Project, Nalin had purchased approximately $135,000 of material from ABC Supply and payment for these materials remained due to ABC Supply. Ex. 103.

During the time that Nalin performed work on the Project, Nalin submitted invoices to Debtor for work that was completed in the preceding month. Mr. Kesner testified that the amounts invoiced at the end of each month were based on the work performed relative to the total amounts included in the bid that he provided to Debtor prior to the parties entering into an agreement. These invoices generally designated the building on the Project where the work was performed and whether the amounts invoiced were for labor or materials provided by ABC Supply, or both. Nalin submitted invoices to Debtor between April and June of 2020 totaling $248,730.35. *See* Exs. 105–10. Nalin received payment of $20,000 on June 11, 2020, and an additional payment of $26,797 on June 18, 2020.

The only evidence of the payments made to Nalin comes in the form of two lien waivers signed by Mr. Kesner on June 11, 2020 and June 18, 2020. *See* Exs. 201-1 &

MEMORANDUM OF DECISION–3

201-3. It appears that these lien releases were provided to Nalin after it was removed

from the Project and were required to be completed in exchange for payment. Mr. Kesner

testified that these lien waivers were provided to him by an individual named "Jay".[4]

Nalin does not dispute that the payments of $20,000 and $26,797 were made and

deposited into Nalin's account.

The June 11, 2020 lien waiver signed by Mr. Kesner is incomplete, as it lacks any

description of the work performed by Nalin on the project and the time period for which

Nalin is purporting to release its lien rights. Ex. 202-1. Further, the word "partial" was

handwritten before the word "payment" and the phrase "or materials provided" was

crossed out by hand in the first sentence of the second paragraph of the form. *Id.* Mr.

Kesner testified that he was the person who hand wrote the word "partial" and crossed

out the phrase "or materials provided" in this sentence. Mr. Kesner also testified that Jay

told him to insert the word "partial" and remove the term "or materials provided" so that

the $20,000 would be applied to Nalin's labor costs up to that point and that they would

"let the big boys fight it out over materials."

The June 18, 2020 lien waiver signed by Mr. Kesner is generally complete but

contains slightly different terms than the first lien waiver. Ex. 202-3. The waiver notes

that Nalin performed work on the Project pursuant to an agreement between the parties

---

[4] Mr. Kesner testified that he did not know Jay's last name or who Jay worked for and further testified
that Jay would not tell him who he worked for when prompted by Mr. Kesner. Mr. King testified that
Jay's last name is Adams and he was hired by Debtor to perform work on the Project, including Nalin's
scope of work that remained incomplete when Nalin was removed from the Project.

MEMORANDUM OF DECISION–4

dated May 15, 2020 "for the installation of utilities summarized on attached progressive

invoice" and that in consideration of receipt of $26,797, Nalin:

> [R]eleases the Property and/or improvements located on the Property from
> any and all liens, rights, or claims, statutory or otherwise, that [Nalin] may
> have by reason of providing labor and/or materials for the Property and/or
> improvements located on the Property, but only for such labor and/or
> materials furnished on or before 05/30/2020.

*Id.* The waiver further notes: "Subcontractor agrees to pay for all materials first and [sic]

sole responsibility for all material costs." *Id.*

In addition to Debtor's failure to pay Nalin for the work completed and the

amounts thereafter invoiced, the Project encountered substantial issues. On July 22, 2020,

Debtor filed a bankruptcy petition under chapter 11, subchapter V. Dkt. No. 1. In its

petition, Debtor listed Nalin as one of the creditors having the twenty largest unsecured

claims, noting that Nalin had a disputed unsecured claim in the amount of $126,156.34

for unpaid labor. *Id.* Debtor also listed ABC Supply as one of the creditors having the

largest unsecured claims, noting that ABC Supply had a disputed unsecured claim in the

amount of $133,922.25 for supplies that were delivered to the Project. *Id.* Debtor listed

these claims as disputed nonpriority unsecured claims in its Schedule E/F. *Id.* Notice of

the chapter 11 bankruptcy case and the scheduled meeting of creditors was sent to Nalin

on July 26, 2020 by first class mail through the Bankruptcy Noticing Center. Dkt. Nos.

13 & 14. The notice indicated that the meeting of creditors would be held on August 27,

2020 and the deadline for filing a proof of claim was September 30, 2020. Dkt. No. 13.

On August 28, 2020, Nalin recorded a Claim of Lien in the amount of $197,009.10

with the Canyon County Recorder's Office. Ex. 100 p. 5–9. The Claim of Lien designates

MEMORANDUM OF DECISION–5

Nalin as the lien claimant and "Gavin King and Zandra King, Best View Quads LLC,

PBRELFI LLC" as the owner of the premises. *Id.* at 6. The Claim of Lien also contains

the following premises description:

> 1910 Sunny Ridge RD Nampa ID, 83686
> 34-3N-2W SE Best View Quads lots 3,4,5,6 BLK 1
> Parcel #s
> R32249101000
> R32249102000
> R32249103000
> R32249104000
> R32249105000

*Id.* It appears that the Claim of Lien was sent by certified mail to Debtor at the 1625

Mustang Mesa Avenue address listed in Debtor's petition but was unclaimed and

returned to Nalin. *Id.* at 4.

ABC Supply also recorded a Claim of Lien for the materials furnished by ABC

Supply and incorporated by Nalin on the Project. Ex. 201, p. 3. ABC Supply recorded its

Claim of Lien in the amount of $133,922.25 with the Canyon County Recorder's Office

on July 15, 2020, one week before Debtor filed its petition. *Id.* On October 23, 2020,

ABC Supply filed a Notice of Lien Perfection and Preservation and Intent to Enforce

Pursuant to 11 U.S.C. § 546(b). Ex. 201; Dkt. No. 76. This lien and corresponding

amounts due to ABC Supply are the subject of a Motion to Approve Compromise granted

by the Court on March 23, 2022. Ex. 203; Dkt. Nos. 299, 310, & 315. Debtor's efforts to

reach a compromise with ABC Supply for payment in exchange for release of ABC

Supply's lien is only relevant here to the extent that a portion of the amounts claimed in

MEMORANDUM OF DECISION–6

Nalin's Claim of Lien includes amounts owed to ABC Supply for material furnished and incorporated into the Project.

Nalin filed a Proof of Claim on November 5, 2020, in the amount of $197,009.10. Ex. 100; Claim 14-1 ("Claim"). In its Claim, Nalin designated the claim as secured in its entirety by the mechanic's lien recorded in Canyon County and attached a copy of the lien. Ex. 100. In response to Question 4 in Part 1 of the Claim involving amendment of an already filed claim, Nalin indicated that the "claim of ABC Supply includes materials owed by Creditor." *Id.* In response to Question 5 in Part 1 of the Claim involving whether someone else filed a proof of claim for this claim, Nalin responded:

> Naln [sic] Enterprises recorded claim of lien in Canyon County, Idaho on 8/28/20 and sent a copy thereof on 9/1/20 to Debtor at 1627 Mustang Mesa Ave., Middleton, ID 83644. Such is proper under § 546(b).

*Id.*

On March 17, 2021, Debtor filed its Objection. In its Objection, Debtor generally argued that Nalin's Claim should be disallowed because: (1) Nalin's Claim was untimely filed; (2) the mechanic's liens filed by Nalin and/or ABC Supply did not include a proper legal description of the property on which the Project was constructed; (3) at least a portion of the amount sought in the Claim included material that was either returned to ABC Supply, previously paid for by Debtor to Nalin, or accounted for in the amounts paid by Debtor in exchange for Nalin completing the lien waivers; and (4) the materials provided and the work performed were provided in an unworkmanlike manner. Dkt. No. 197. Nalin responded to Debtor's Objection on April 9, 2021 and scheduled a hearing on the Objection for April 29, 2021. Dkt. Nos. 207 & 208. The hearing on Debtor's

MEMORANDUM OF DECISION–7

Objection was vacated and rescheduled twice, with a hearing scheduled for January 26, 2022. Dkt. No. 296.

On January 25, 2022, Debtor filed a memorandum in support of its Objection providing support for the arguments contained in the Objection and further arguing that Nalin's mechanic's lien and Claim are invalid because Nalin was not properly licensed pursuant to the Idaho Contractor Registration Act ("ICRA") when it performed work on the Project. Dkt. No. 302. An evidentiary hearing was held on January 26, 2022 and the parties agreed to make their arguments in writing following the hearing. The Court subsequently ordered the parties to address, as part of their closing arguments, the applicability of § 546(b) to the facts present in this case. Dkt. No. 305. Closing briefs were submitted by both parties on February 18, 2022, and reply briefs were filed by both parties on February 25, 2022. Dkt Nos. 309, 311–13.

### *Analysis and Disposition*

As noted above, Debtor objects to Nalin's Claim on numerous grounds. Debtor's objections will be discussed in turn, with a particular focus on the Idaho statutes applicable to the validity of the underlying mechanic's lien due to the premises description contained in the Claim of Lien and Nalin's registration status under the ICRA, as these issues determine whether Nalin's Claim in this case may be allowed.

### 1. **Timeliness of Nalin's Claim**

Debtor filed its petition on July 22, 2020 and listed Nalin as having a disputed nonpriority unsecured claim in the amount of $126,156.34. Dkt. No. 1, p. 20. Notice of the chapter 11 bankruptcy case and the scheduled meeting of creditors was sent to Nalin

MEMORANDUM OF DECISION–8

on July 26, 2020, by first class mail through the Bankruptcy Noticing Center. Dkt. Nos. 13 & 14. The notice indicated that the meeting of creditors would be held on August 27, 2020 and the deadline for filing a proof of claim was September 30, 2020. Dkt. No. 13. Nalin, however, did not file its Claim until November 5, 2020, designating its claim in the amount of $197,009.10 as secured in its entirety by the mechanic's lien recorded in Canyon County. Ex. 100.

The Chapter 11 claims process is unique in comparison to the process employed in a chapter 7, 12, or 13 case. *In re Holyoak*, 04.2 I.B.C.R. 59, 60 (Bankr. D. Idaho 2004). "Provided it is not scheduled as contingent, unliquidated or disputed, once a debtor lists a creditor's claim in the schedules, that creditor's claim is 'deemed filed for purposes of § 501." *Id.* (citing *Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489, 495 (9th Cir. 2003)); § 1111(a). However, Rule 3003(c)(2) provides:

> **Who Must File.** Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

Thus, a creditor who is listed in the debtor's schedule as having a disputed, contingent, or unliquidated claim must file a proof of claim to be treated as a creditor in the bankruptcy proceeding. Rule 3003(c)(3) provides that the court shall fix the time within which proofs of claim or interest may be filed. Local Bankruptcy Rule 3003.1 implements this rule and provides:

> Pursuant to Fed. R. Bankr. P. 3003(c)(3) proofs of claim in a chapter 11 case shall be filed not later than seventy (70) days after the date of the order

MEMORANDUM OF DECISION–9

for relief. A claim of a governmental unit shall be filed not later than one hundred eighty (180) days after the date of the order for relief, except as otherwise provided in the Federal Rules of Bankruptcy Procedure. The clerk shall notify all creditors and parties in interest of such bar date.

LBR 3003.1. The timeline for calculating the claims bar date is properly reflected in Debtor's notice of the chapter 11 bankruptcy case and Nalin does not argue that the claims bar date was improperly calculated or that the Claim was filed prior to the bar date. Nalin argues that, as a creditor having a claim secured by the mechanic's lien recorded in Canyon County, it was not required to timely file its Claim to rely on its lien rights. Nalin does not provide any argument compelling this Court to equitably extend the claim bar date but insists that it has a secured claim that should be paid for out of the proceeds of the sale of the Project in exchange for release of the lien. Thus, according to Nalin's argument, for it to rely on its lien rights or receive treatment as a secured creditor and receive treatment under Class 10 of Debtor's plan, it must have a valid mechanic's lien securing its claim, as its claim was otherwise untimely.

## 2. Validity of the Premises Description in Nalin's Claim of Lien Filed with the Canyon County Recorder.

Debtor further objects to Nalin's Claim, arguing that the Claim of Lien recorded in Canyon County is invalid because it does not contain an adequate legal description of the property against which the lien is recorded. Debtor does not otherwise argue that the Claim of Lien is invalid.

"The right to acquire and enforce a mechanic's or materialman's lien was unknown at common law and originally was also not allowed in equity." *Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 132 Idaho 754, 760, 979 P.2d 627, 633 (1999).

MEMORANDUM OF DECISION–10

Idaho's mechanic's lien statutes are provided for in Idaho Code §§ 45-501 through 45-525.  Because mechanic's liens are creations of statute, these statutory requirements must be substantially complied with to perfect a valid lien. *Pierson v. Sewell*, 97 Idaho 38, 41, 539 P.2d 590, 593 (1975). However, Idaho courts have routinely recognized that these statutes are to be liberally construed to effectuate their purpose. *Id.*; *see also Ross v. Olson*, 95 Idaho 915, 917, 5232 P.2d 518, 520 (1974); *Baker v. Boren*, 129 Idaho 885, 895, 934 P.2d 951, 961 (1997); *Great Plains Equip.*, 132 Idaho at 760, 979 P.2d at 634; *L & W Supply Corp. v. Chartrand Family Tr.*, 136 Idaho 738, 742, 40 P.3d 96, 100 (2002). "The purpose of these statutes is to compensate persons who perform labor upon or furnish material to be used in the construction, alteration or repair of a building or structure." *Pierson*, 97 Idaho at 41, 539 P.2d at 593. Accordingly, a mechanic's lien itself is not a penalty, but is designed to provide a contractor with security. *Franklin Bldg. Supply Co. v. Sumpter*, 139 Idaho 846, 850, 87 P.3d 955, 959 (2004) (citing *Guyman v. Anderson,* 75 Idaho 294, 296, 271 P.2d 1020, 1021 (1954)).

Idaho's mechanic's lien statutes provide that every person who performs labor, furnishes materials or provides professional services in the construction of a building or other structure "has a lien upon the same for the work or labor done or professional services or materials furnished." Idaho Code § 45-501. Idaho Code § 45-507, details the requirements of a claim of lien, and provides:

> (1) Any person claiming a lien pursuant to the provisions of this chapter must file a claim for record with the county recorder for the county in which such property or some part thereof is situated.
> (2) The claim shall be filed within ninety (90) days after the completion of the labor or services, or furnishing of materials.

MEMORANDUM OF DECISION–11

(3) The claim shall contain:
    (a) A statement of his demand, after deducting all just credits and offsets;
    (b) The name of the owner, or reputed owner, if known;
    (c) The name of the person by whom he was employed or to whom he furnished the materials; and
    (d) A description of the property to be charged with the lien, sufficient for identification.
(4) Such claim must be verified by the oath of the claimant, his agent or attorney, to the effect that the affiant believes the same to be just.
(5) A true and correct copy of the claim of lien shall be served on the owner or reputed owner of the property either by delivering a copy thereof to the owner or reputed owner personally or by mailing a copy thereof by certified mail to the owner or reputed owner at his last known address. Such delivery or mailing shall be made no later than five (5) business days following the filing of said claim of lien.
(6) For purposes of this chapter, owner or reputed owner does not include a trustee of a deed of trust as defined and required by section 45-1502 et seq., Idaho Code.

Idaho Code § 45-507.[5] Relevant here, Idaho Code § 45-507(3)(d) requires that a claim of

lien contain: "A description of the property to be charged with the lien, sufficient for

identification." The parties spend a substantial portion of their briefing discussing the

description of the property contained in the Claim of Lien in the context of a legal

description that would be required to comply with Idaho's statute of frauds. While Idaho

Code § 45-507 certainly requires a claim of lien to include a description of the property to

be sufficient for identification, Idaho courts have consistently applied a different standard

than that identified by the parties in their briefing.

    The issue is not whether the Claim of Lien contained an adequate legal description

that complies with the statute of frauds, but whether the property description was

---

[5] It is worth noting that the Idaho Legislature made numerous modifications to § 45-507 in 2022. The Court must apply the law in force at the time that Nalin's Claim of Lien was recorded and the changes made by the Legislature do not have any impact on the outcome of the issue here.

"sufficient for identification." *See Treasure Valley Plumbing & Heating, Inc. v. Earth Res. Co.*, 106 Idaho 920, 922, 684 P.2d 322, 324 (1984). "If there appears enough in the description to enable a party familiar with the locality to identify the premises intended to be described with reasonable certainty, to the exclusion of others, it will be sufficient." *Turnboo v. Keele*, 86 Idaho 101, 105, 383 P.2d 591, 593 (1963). Further, Idaho courts have recognized "that a claim of lien is not invalid simply because it describes more property than is subject to the lien." *Beall Pipe & Tank Corp. v. Tumac Intermountain, Inc.*, 108 Idaho 487, 490, 700 P.2d 109, 112 (Ct. App. 1985) (citing *White v. Constitution Mining & Milling Co.*, 56 Idaho 403, 55 P.2d 152 (Idaho 1936)). "So long as there is no fraudulent intent on the part of the lien claimant and no one is injured by the overly broad property description, the land properly subject to the lien is for the court to determine, after hearing all the evidence." *White*, 55 P.2d at 159.

In *Ross*, the plaintiff, a paving contractor, entered into an agreement with a dairy farm purchaser, Olson, to install an asphalt mat in the feedlot area of the dairy. 95 Idaho at 916, 523 P.2d at 519. After the work was completed on the project, Olson refused to make further payment beyond the amounts that had already been advanced to Ross. *Id.* Ross then filed a notice of claim of lien pursuant to Idaho Code § 45-507 that described the premises subject to the lien as: "The North one-half of the Southeast Quarter of the Northwest Quarter of Section 30, Township 4 South Range 7 East, Boise Meridian." *Id.* This premises description was also included in the complaint filed as part of Ross's lien foreclosure action. *Id.* At trial, it was discovered that the correct description of the premises at issue was: "The South one-half of the Southeast Quarter of the Northeast

MEMORANDUM OF DECISION–13

Quarter of Section 30 Township 4 South, Range 7 East, Boise Meridian." *Id.* During the

trial, Olson acknowledged that he had not been misled by the erroneous property

description in the claim of lien and the district court allowed Ross to amend his complaint

to include the correct property description. *Id.* at 917, 523 P.2d at 520. The district court

upheld the lien in spite of the erroneous property description, relying on the fact that

Olson had not been misled and the rights of innocent third parties were not prejudiced by

the error in the description. *Id.*

On appeal, the Supreme Court of Idaho recognized that substantial compliance

with the requirements of Idaho's lien statutes is necessary for the creation of a valid lien,

but stated:

> Although the rule may be different with regard to a description which is
> merely loose, vague, or ambiguous, where the real property description in a
> mechanic's lien claim notice is 'unambiguously erroneous' and describes
> with exactitude the wrong parcel of real property, substantial compliance
> with the statute is not achieved, and the claim of lien is invalid.

*Id.* (citing *Linch v. Perrine*, 51 Idaho 152, 4 P.2d 353 (1931)). The court then stated that

the claim of lien "contained an explicit and unambiguous description of the wrong parcel

of land on the Olson's farm, upon which no portion of the improvement giving rise to the

lien was located." *Id.* Because the claim of lien contained a completely erroneous

description of the location of the improvement and the defect was not timely remedied,

the lien was invalid. *Id.* at 918, 523 P.2d at 521.

In *Treasure Valley*, the plaintiff subcontractor performed work at the Delamar

Silver Mine owned by Earth Resources Company and was not paid by the general

MEMORANDUM OF DECISION–14

contractor after the work was completed. 106 Idaho at 921, 684 P.2d at 323. Treasure

Valley timely filed a notice of claim of lien, stating that the lien was for:

> [L]abor . . . provided and plumbing and piping materials and supplies
> furnished for a project known as the Delamar Silver Mine. The labor,
> materials, and supplies were used for the construction, alteration and repair
> of certain buildings, improvements, structures, pipeline and other mining
> and mineral processing systems on the following described lands, to wit: In
> the State of Idaho, County of Owyhee: Section Eight (8) of Township Five
> (5), South, Boise Meridian.

*Id.* at 921–22, 684 P.2d at 323–24. The district court observed that the range number

usually included in a metes-and-bounds description was not included in the notice of

claim and ruled that the description was inadequate because it failed to identify the

location of the property. *Id.* at 922, 684 P.2d at 324.

On appeal, the Idaho Court of Appeals noted that the omission of the range

number was not necessarily fatal to Treasure Valley's lien. *Id.* Treasure Valley submitted

two undisputed affidavits of individuals living in Owyhee County, where the mine was

located, stating that there is only one Delamar Silver Mine in the county and that the

affiants could identify the Delamar Silver Mine to the exclusion of other mines in the

county. *Id.* The Court of Appeals further noted that the record was similar to *Phillips v.*

*Salmon River Mining & Dev. Co.,* 9 Idaho 149, 72 P. 886 (1903), where the court forwent

a technical approach to property descriptions in notices of lien claims and upheld a

laborer's claim of lien where the property was described as "the 'Salem Bar,' situated on

the Idaho side of the main channel of the Snake River, one-half mile north or down the

river from the mouth of the Grand Ronde, in Nez Perce county, Idaho." *Id.* at 923, 684

P.2d at 325. The Court of Appeals distinguished the property description at issue from the

MEMORANDUM OF DECISION–15

erroneous description in *Ross* and held that the district court erred when it ruled that the

location of the subject property had not been described adequately for identification. *Id.*

This Court has addressed the adequacy of a property description in a notice of a

mechanic's lien against a debtor's real property. *See In re Koski*, 149 B.R. 170 (Bankr. D.

Idaho 1992). In *Koski*, the debtor and her husband entered into a contract to have the

siding on their house replaced and, as security for the debt, permitted the contractor to

file a statutory lien against the property. *Id.* at 171. The contractor assigned its interest in

the lien to the bank that financed the project and the bank subsequently filed a notice of a

mechanic's lien against the property. *Id.* The debtor then filed bankruptcy under chapter 7

and received a discharge, but prior to discharge entered into a "Performance Notice"

which provided that the bank would retain its lien until the full amount of the debt was

paid. *Id.* Approximately two years later, the bank brought an action in state court to

foreclose the mechanic's lien and reform the property description in the notice of lien. *Id.*

The state court granted summary judgment in favor of the bank. *Id.*

The debtor filed bankruptcy under chapter 13 before the state court judgment was

entered and filed an adversary proceeding seeking a determination, among other things,

that the bank's lien was invalid and thus discharged in the prior chapter 7 case. *Id.* The

debtor and the chapter 13 trustee argued that the property description in the notice of lien

was inadequate because it covered a larger tract of ground than was actually owned by

the debtor and referred to a "tract number" that did not exist. *Id.* at 173. This Court held

these arguments to be unavailing because the bank submitted evidence "to show that a

party familiar with the locality could identify the property described with reasonable

MEMORANDUM OF DECISION–16

certainty, to the exclusion of other properties." *Id.* This evidence was presented in the

form of an affidavit of a title officer in the county where the property was located, stating

that he was able to locate the deed to the property based on the description provided in

the notice of lien. *Id.* Neither the bank nor the trustee put forth "any evidence to show

that a party reasonably familiar with the locale would have been misled by the description

found in the notice, or otherwise would have identified the wrong piece of property." *Id.*

Even though the description of the property contained in the notice of lien was "larger

than the property actually subject to the lien and included a meaningless term, the

evidence showed that the description was legally sufficient to create a valid mechanic's

lien." *Id.*

  Here, Nalin's Claim of Lien contained the following description of the premises

subject to the mechanic's lien:

> 1910 Sunny Ridge RD Nampa ID, 83686
> 34-3N-2W SE Best View Quads lots 3,4,5,6 BLK 1
> Parcel #s
> R32249101000
> R32249102000
> R32249103000
> R32249104000
> R32249105000

Ex. 100 p. 6. Mr. Kesner testified that he completed the Claim of Lien form using

"landproDATA" documents provided to him by a real estate professional. These

documents each contain information regarding the property owner; the Canyon County

tax parcel number; and parcel information, including the legal description "34-3N-2W SE

BEST VIEW QUADS LT [1 through 6] BLK 1" *See* Ex. 102. It appears to the Court that

MEMORANDUM OF DECISION–17

Mr. Kesner used the information contained in these documents to generate a premises description in the Claim of Lien that included the address of the project, as well as a partial legal description and the Canyon County tax parcel numbers for each of the parcels that Nalin performed work on. The partial legal description contained in the Claim of Lien differs from the final plat of the Best View Quads Subdivision, recorded on September 23, 2019 in Book 48, Page 47 of the Canyon County records, describing the property as:

> SW 1/4 of the SE 1/4 Section 34, T.3N., R.2W., B.M., City of Nampa, Canyon County, Idaho.

Ex. 101. While the premises description in Nalin's Claim of Lien appears to be lacking the detailed section information or a reference to the book and page numbers of the final plat recorded in Canyon County, a precise legal description of the property was not required to create a valid mechanic's lien. All that was required was a "description to enable a party familiar with the locality to identify the premises intended to be described with reasonable certainty, to the exclusion of others." *Turnboo*, 86 Idaho at 105, 383 P.2d at 593.

The premises description contained in Nalin's Claim of Lien is similar to those at issue in *Treasure Valley* and *Koski*, in that it may contain a partial legal description that describes a larger portion of property than is subject to the lien or describes the property in a different manner than the final plat. It does not appear to the Court that the premises description is "unambiguously erroneous" or describes the wrong piece of property. The address of the project, along with the partial legal description and Canyon County tax

MEMORANDUM OF DECISION–18

parcel numbers would enable a party familiar with the area to identify the premises with reasonable certainty, to the exclusion of others. Debtor has not provided any evidence that a party familiar with the area would be misled by the premises description in the Claim of Lien or otherwise would have identified the wrong piece of property. On these facts, the Court finds that the premises description contained in the Claim of Lien was sufficient to create a valid lien. This, however, does not fully resolve the issue of the validity of the mechanic's lien underlying Nalin's Claim.

**3. Effect of the Signed Lien Waivers on Nalin's Claim.**

In its Objection, Debtor argues that Nalin waived a majority of its claim and right to enforce a mechanic's lien when it executed two subsequent lien waivers on June 11, 2020 and June 18, 2020, respectively. The arguments of the parties regarding the effect of these lien waivers are somewhat underdeveloped but the Court finds there is enough evidence contained in the record to make a determination regarding the effect of these waivers.

As noted above, it is unclear whether the parties entered into a written subcontract agreement for Nalin to perform work on the Project and a written subcontract agreement has not been admitted into evidence in this matter. The parties, however, do not dispute that some form of agreement was made for Nalin to perform work on the Project and that this work was performed between March and June of 2020. During the time that Nalin performed work on the Project, Nalin submitted invoices to Debtor for work that was completed in the preceding month. Nalin submitted invoices to Debtor between April and June of 2020, totaling $248,730.35. *See* Exs. 105–10. The only evidence of payment to

MEMORANDUM OF DECISION–19

Nalin for these invoiced amounts comes in the form of the two lien waivers. While the

parties limit their analysis on this issue to the plain language of the two lien waivers, a

more thorough discussion of the parties' contractual arrangement and the intent of the

hand-written adjustments to the first lien waiver is required when determining whether

Nalin did in fact waive its right to a mechanic's lien for the work performed on the

project.

"What constitutes a waiver is essentially a question of intention." *Smith v. Faris-*

*Kesl Constr. Co.*, 27 Idaho 407, 150 P. 25, 32 (1915).

> In order to establish a waiver, the intention to waive must clearly appear,
> and a waiver of the lien will not be presumed or implied, contrary to the
> intention of the party whose rights would be injuriously affected thereby,
> unless, by his conduct, the opposite party was misled, to his prejudice, into
> the honest belief that such waiver was intended or consented to.

*Id.* Further, in Idaho, "an express waiver of a materialman's lien must be supported by

consideration in order to be binding." *Pierson v. Sewell*, 97 Idaho 38, 42–43, 539 P.2d

590, 594–95 (1975) (citing *McCorkle v. Lawson & Co., Inc.*, 259 S.W.2d 27, 28 (Ky. Ct.

App. 1953) & *Beebe Const. Corp. v. Circle R Co.*, 226 N.E.2d 573, 576 (1967)). Thus,

"[t]he right to a lien is not waived by an agreement of waiver executed in consideration of

a promise which was not performed." *Id.* at 43, 539 P.2d at 595 (quoting 10 Thompson

on Real Property (1957)).

The June 11, 2020 lien waiver signed by Mr. Kesner on behalf of Nalin is

incomplete, as it lacks any indication of the time period for which Nalin is purporting to

release its lien rights. Ex. 202-1. Further, the word "partial" has been handwritten just

before the word "payment" and the term "or materials provided" has been crossed out by

MEMORANDUM OF DECISION–20

hand in the first sentence of the pre-printed form. *Id.* Mr. Kesner testified that he was the person who hand wrote these items at the suggestion of Jay so that the $20,000 would be applied to Nalin's labor costs up to that point and they would "let the big boys fight it out over materials." Due to the numerous handwritten adjustments made by Mr. Kesner to the June 11, 2020 lien waiver and the lack of terms relevant to the determination of what lien rights Nalin was purportedly waiving, the Court finds that Nalin did not intend to waive all lien rights for work performed prior to the date the waiver was signed. Accordingly, the June 11, 2020 waiver did not impair Nalin's right to a mechanic's lien for work performed prior that date.

The June 18, 2020 lien waiver, however, contains more information and presents an additional issue. This lien waiver is also signed by Mr. Kesner on behalf of Nalin but contains slightly different terms than the first lien waiver. Ex. 202-3. The waiver notes that Nalin performed work on the Project pursuant to an agreement between the parties dated May 15, 2020 "for the installation of utilities summarized on attached progressive invoice" and that in consideration of receipt of $26,797, Nalin:

> [R]eleases the Property and/or improvements located on the Property from any and all liens, rights, or claims, statutory or otherwise, that [Nalin] may have by reason of providing labor and/or materials for the Property and/or improvements located on the Property, but only for such labor and/or materials furnished on or before 05/30/2020.

*Id.* This waiver further notes: "Subcontractor agrees to pay for all materials first and [sic] sole responsibility for all material costs." *Id.*

Again, evidence of a written subcontract agreement between Debtor and Nalin that required Nalin to complete a lien waiver in exchange for payment has not been admitted

MEMORANDUM OF DECISION–21

into evidence in this matter. The Court cannot speculate as to whether the May 15, 2020

agreement referenced in the June 18, 2020 contained any terms requiring Nalin to provide

a lien release in exchange for payment. Further, the lien waiver notes that Nalin

performed utility work on the project pursuant to this agreement, while the parties have

never argued, and the invoices provided by Nalin do not indicate, that Nalin performed

any utility work on the Project. *See* Exs. 105–10. There also does not appear to be an

attached progressive invoice, as noted in the lien waiver, that would allow this Court to

determine which portions of the material and labor lien rights were waived by Nalin.

Nalin also points out that it did not receive any consideration for releasing its lien

rights in the June 18, 2020 waiver. Again, consideration is required in Idaho for an

express waiver of a mechanic's or materialman's lien rights to be effective. *Pierson*, 97

Idaho at 42–43, 539 P.2d at 594–95. Consideration is not provided where a party is

merely doing that which it is already legally obligated to do. *See Woodcrest Homes, Inc.*

*v. First Nat'l Bank of Pueblo (In re Woodcrest Homes, Inc.)*, 11 B.R. 342, 344 (Bankr. D.

Colo. 1981) (citing *Beebe Const. Corp.*, 226 N.E.2d at 576). Thus, where a lien waiver is

not incorporated into the parties' original agreement, the lien waiver must be supported

by independent valuable consideration.

Here, the parties do not dispute that an agreement was made for Nalin to perform

work on the Project and that Nalin performed work on the Project between March and

June of 2020. The parties also do not dispute that Nalin would submit invoices to Debtor

for work that was completed in the preceding month. Mr. Kesner testified that the

amounts invoiced were based on the work completed relative to the total amount included

MEMORANDUM OF DECISION–22

in the bid that Nalin provided to Debtor prior to starting work on the project. This, at a minimum, amounts to a contract implied in fact whereby Nalin would furnish and install the materials as provided for in the initial bid and then invoice Debtor at the end of the month for work completed the previous month. *See Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008) (citing *Barry v. Pacific West Constr., Inc.*, 140 Idaho 827, 834, 103 P.3d 440, 447 (2004)). Debtor has not provided any argument or evidence to indicate that the lien waivers here were a condition to payment incorporated into the parties' original agreement. Accordingly, each lien waiver was required to be supported by independent valuable consideration.

The June 18, 2020 lien waiver indicates that, in consideration of payment in the amount of $26,797, Nalin would release its lien rights against the Property. Ex. 202-3. However, the invoices that Nalin submitted to Debtor indicate that it invoiced Debtor in the amount of $248,730.35 for the work that it had performed prior to May 30, 2020. Exs. 105–10. Pursuant to the agreement that existed between Nalin and Debtor, Debtor was obligated to pay Nalin over $248,000. Thus, Debtor's payment of $26,797 was not adequate consideration to support an effective release of Nalin's lien rights and had no effect in impairing Nalin's right to a mechanic's lien for work performed prior that date.

**4. Nalin's Performance of Work on the Project Without a Contractor's License.**

Debtor filed its Memorandum in Support of Debtor's Objections to Claim ("Pre-Hearing Memorandum") on January 25, 2022, the evening prior to the scheduled evidentiary hearing on this matter. Dkt. No. 302. In its Pre-Hearing Memorandum, Debtor, for the first time, argued that Nalin's Claim of Lien was invalid because Nalin

MEMORANDUM OF DECISION–23

was not properly registered pursuant to the ICRA when it performed work on the Project. *Id.*

During the hearing on this matter, Nalin objected to Debtor's argument as untimely and pointed out that Debtor did not include Nalin's apparent lack of registration as a basis for the Objection filed on March 17, 2021. *See* Dkt. No. 197. In light of this new contention first argued by Debtor in its Pre-Hearing Memorandum on the eve of the scheduled hearing, the Court offered to continue the hearing to allow Nalin to address this new argument. Nalin declined this offer and opted to proceed with the hearing and provide any additional arguments on the matter in the form of simultaneously filed closing briefs. After the hearing on this matter, Debtor filed an Amended Objection to Claim – Nalin Enterprises LLC (and ABC Supply Co.) ("Amended Objection"), incorporating Nalin's apparent lack of registration as a basis for its Amended Objection. Dkt. No. 308.

The Court recognizes that the issue of Nalin's apparent lack of registration was not raised on the record until approximately ten months after Debtor filed its Objection. However, Nalin declined the Court's offer to continue the hearing to allow Nalin to properly address the issue and it is clear that the parties had discussed the issue at some point prior to the hearing, as Nalin included a copy of its registration status history in the exhibits filed prior to the hearing and prior to Debtor filing its Pre-Hearing Memorandum. *See* Ex. 111; Dkt. Nos. 298 & 302. Nalin has not cited to any legal authority preventing Debtor from amending its Objection and the Court will not accommodate Nalin's procedural argument where it anticipated making arguments

MEMORANDUM OF DECISION–24

regarding its registration status and forewent the Court's offer to continue the hearing on the matter.

The ICRA, Idaho Code §§ 54-5201 through 54-5219, was enacted in 2005 "to provide a mechanism to remove from practice incompetent, dishonest, or unprincipled practitioners of construction" and require "the registration of construction contractors within the state of Idaho." Idaho Code § 54-5202. Idaho Code § 54-5204 provides: "On and after January 1, 2006, it shall be unlawful for any person to engage in the business of, or hold himself out as, a contractor within this state without being registered as required in this chapter." Accordingly, "a contract for work subject to the requirements of the ICRA is illegal if the contractor is unregistered when the contract is executed because the consideration consists of an act that is contrary to law and public policy." *AED, Inc. v. KDC Inv., LLC*, 155 Idaho 159, 167, 307 P.3d 176, 184 (2013).

Idaho Code § 54-5208 further provides: "A contractor who is not registered as set forth in this chapter, unless otherwise exempt, shall be denied and shall be deemed to have conclusively waived any right to place a lien upon real property as provided for in chapter 5, title 45, Idaho Code."[6] The Supreme Court of Idaho has recognized the impact of the ICRA on unregistered contractors, stating:

> When the Legislature enacted the ICRA, it made specific findings that construction "affects the public health, safety and welfare" of Idaho's citizens and "that it is in the public interest to provide a mechanism to remove from practice incompetent, dishonest, or unprincipled practitioners of construction." In order to advance these important public interests, the Legislature adopted harsh penalties for contractors that do not comply with the ICRA, providing that unregistered contractors "shall be denied and shall

---

[6] Nalin recorded the subject lien under Idaho Code § 45-507.

be deemed to have conclusively waived any right to place a lien upon real property."

*Stonebrook Constr., LLC v. Chase Home Fin., LLC*, 152 Idaho 927, 932–33, 277 P.3d 374, 379–80 (2012) (internal citations omitted). In addition to the limitation on an unregistered contractor's ability to secure payment through a mechanic's lien, the ICRA also provides for the following penalties:

> (1) Any person acting in the capacity of a contractor within the meaning of this chapter without a *current registration* as herein required shall be guilty of a misdemeanor and shall, upon conviction thereof, be punished by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment in the county jail for a term not to exceed six (6) months, or by both such fine and imprisonment, in the discretion of the court.
> (2) No person engaged in the business or acting in the capacity of a contractor, unless otherwise exempt, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which registration is required by this chapter without alleging and proving that he was a duly registered contractor, or that he was otherwise exempt as provided for in this chapter, *at all times during the performance of such act or contract*.

Idaho Code § 54-5217 (emphasis added). Accordingly, a contractor in Idaho must allege and prove that it was a registered contractor or exempt "at all times during the performance of such act or contract" in order to bring a lawsuit to collect compensation for labor performed or material supplied on a construction project. *ParkWest Homes LLC v. Barnson*, 149 Idaho 603, 608, 238 P.3d 203, 208 (2010).

The ICRA also created the Idaho Contractors Board ("Board") to be incorporated into the Division of Occupational and Professional Licenses to "exercise such powers and duties as are reasonably necessary to enforce the provisions of this chapter." Idaho Code § 54-5206. Idaho Code § 54-5211(1) requires the Board to issue registrations "for a

MEMORANDUM OF DECISION–26

period of not less than one (1) year nor more than five (5) years" and notify a registered

contractor "no less than thirty (30) days prior to the expiration of such registration."

Idaho Code § 54-5211(3) further provides: "Reinstatement of a lapsed registration shall

require the payment of a renewal fee and reinstatement fee in accordance with the

administrative rules adopted by the board."

Additional to the specific requirements of the ICRA, contractors must comply with

the general Division of Occupational and Professional Licenses statutes contained in

Idaho Code §§ 67-2601 through 67-2614. Idaho Code § 67-2614 provides:

> (1) Licenses or registrations issued by the division of occupational and
> professional licenses as a prerequisite to engaging in a trade, occupation, or
> profession may be subject to annual renewal and may expire and be
> canceled unless renewed prior to expiration as provided by this section,
> unless otherwise specified in law or rule.
>
> (2) All natural persons required to procure a license or registration must
> annually renew the same on or before the birthday of the holder of the
> license or registration in the manner prescribed in subsection (4) of this
> section, unless otherwise specified in law or rule. However, the first
> renewal of the license or registration shall not be required until twelve (12)
> months after the holder's next birthday following the initial licensure or
> registration, unless otherwise specified in law or rule.

Idaho Code § 67-2614(1) & (2). This section further provides: "If a license, registration,

certificate, or authority is not renewed on or before the expiration date, it shall be

immediately canceled by the division following the date of expiration, unless otherwise

specified in law or rule." Idaho Code § 67-2614(7).

In *Stonebrook*, two individuals began operating a contracting business under the

assumed business name of "Stonebrook Construction" and at that time one of the

individuals applied for and received a registered contractor license. 152 Idaho at 929, 277

MEMORANDUM OF DECISION–27

P.3d at 374. The individuals then organized and continued operating their contracting business as an LLC but the entity did not register pursuant to the ICRA, believing that the registration requirement was fulfilled because one of the individuals had obtained a contractor's license. *Id.* Shortly after organizing the business as an LLC, Stonebrook entered into a contract to build a home and provided labor and materials for the construction of the home. *Id.* Stonebrook was not paid the amount owed for the work and recorded a claim of lien against the property. *Id.* Stonebrook brought an action to foreclose the lien and the deed of trust beneficiary moved for summary judgment on the ground that Stonebrook was prevented from placing a lien on the property because it was not registered pursuant to the ICRA. *Id.* The district court granted this motion and dismissed Stonebrook's claim of lien. *Id.*

On appeal, Stonebrook argued that the registration of one of the individual LLC members satisfied the registration requirement because there is no requirement under the ICRA that every member of a unit register separately. *Id.* at 931, 277 P.3d at 378. The Supreme Court of Idaho noted that the ICRA defines a "contractor" as "[a]ny person who in any capacity undertakes, offers to undertake, purports to have the capacity to undertake, or submits a bid to, or does himself or by or through others, perform construction." *Id.* (quoting Idaho Code § 54-5203(4)(a)). The court further noted that the ICRA defines "person" as "any individual, . . . limited liability company, . . . or other entity or organization capable of conducting business, or any combination thereof acting as a unit." *Id.* (quoting Idaho Code § 54-5203(4)(a)). The court concluded that "the literal words of the statute unambiguously indicate that the legislature intended to require

MEMORANDUM OF DECISION–28

limited liability companies engaged in the business of construction to register as

contractors." *Id.*

Stonebrook further argued that the court should apply the doctrine of substantial

compliance, due to the fact that one of the LLC's members had registered prior to

performing work on the project. *Id.* at 932, 277 P.3d at 379. The court noted that the

ICRA does not specifically provide that substantial compliance will allow a contractor to

avoid the penalties included in §§ 54-5208 and 54-5217, but there may be circumstances

that would permit an unregistered contractor to avoid these penalties. *Id.* In discussing the

circumstances that may permit the application of the doctrine of substantial compliance,

the court stated:

> For example: situations where a contractor's attempted registration fails
> because of either an unintentional error in the application, an administrative
> error by the Idaho contractor's board, or a temporary lapse in a previously
> registered contractor's registration.

*Id.* at n.4. Because Stonebrook did not make any effort to comply with the registration

requirements contained in the ICRA until after the lawsuit was filed, well after the work

was completed on the project, it could not be found that Stonebrook substantially

complied with the statute.

Lastly, Stonebrook argued that the court should recognize the compliance of one

of the LLC's members with the ICRA's requirements to avoid an unreasonably harsh

result. *Id.* The court found this argument to be unavailing, stating:

> Although the result for Stonebrook is harsh, it is the result the Legislature
> intended. We are not at liberty to disregard this legislative determination as
> to the most effective means of protecting the public. Thus, we decline to
> vacate the district court's decision.

MEMORANDUM OF DECISION–29

*Id.* at 933, 277 P.2d at 380.

In *ParkWest Homes*, the plaintiff entered into an agreement to construct a home for a client but was not registered pursuant to the ICRA when the parties entered into the agreement. 149 Idaho at 604, 238 P.3d at 204. ParkWest did, however, properly register prior to performing work on the project. *Id.* After a dispute arose between the parties regarding non-payment, ParkWest recorded a mechanic's lien against the property. *Id.* at 605, 238 P.3d at 205. ParkWest filed suit to foreclose its lien and the deed of trust beneficiary filed a motion for summary judgment arguing, among other things, that the lien was void because ParkWest was not registered under the ICRA when it entered into the agreement. *Id.* The district court held that ParkWest did not have a valid mechanic's lien because its claim of lien was defective and the agreement was void. *Id.*

On appeal, the Supreme Court of Idaho noted that the district court implicitly held that ParkWest's lien was void because the agreement was void. *Id.* at 608, 238 P.3d at 208. However, Idaho Code § 54-5208 is written in the present tense and the court held that a contractor is only denied a lien under this statute for work done or materials provided in the construction period that the contractor is not registered. *Id.* The court went on to state: "Although work done by ParkWest while unregistered was illegal, work done after it registered was certainly legal." *Id.* (citing *Farrell v. Whiteman,* 146 Idaho 604, 611, 200 P.3d 1153, 1160 (2009)). It is important to note that the Supreme Court of Idaho, in *AED, Inc. v. KDC Inv., LLC*, clarified that the *ParkWest* court "did not hold that the contract was somehow validated by the contractor's later registration." 155 Idaho at 168–69, 307 P.3d at 185–86. "Rather, the Court determined that a lien is valid for work

MEMORANDUM OF DECISION–30

done while a contractor is registered, even if the contractor started the work prior to becoming registered." *Id.* at 169, 307 P.3d at 186.

Here, Nalin applied for and was issued a contractor registration on July 24, 2017. Ex. 111. Nalin's registration expired on July 25, 2018 when Nalin did not renew the registration before the expiration date. *Id.* Mr. Kesner testified that he attempted to renew Nalin's registration prior to its date of expiration through the Board's online payment system but that the payment apparently was not successful. Mr. Kesner testified that he was made aware of the expiration of his registration in 2021 and subsequently paid the fee to have Nalin's registration reinstated. Nalin's registration was reinstated on July 29, 2021. *Id.* The parties do not dispute that Debtor and Nalin entered into an agreement in late 2019 or early 2020 whereby Nalin would furnish and install the roofing, siding, and window materials on the Project. The parties also do not dispute that Nalin performed work on the Project between March 2020 and June 2020. This is generally reflected in the invoices that Nalin provided to Debtor for materials purchased and installation work performed. *See* Exs. 105–10.

It is clear that Nalin performed construction services on the Project after Nalin's registration expired and before it was reinstated. Accordingly, Nalin's Claim of Lien is void and Nalin is prohibited from enforcing the agreement entered into between the parties. The three-year period that Nalin was unregistered is not a circumstance that the Court may look to the doctrine of substantial compliance. Three years is far too long to consider the period that Nalin was unregistered a "temporary lapse in a previously registered contractor's registration" and far too much time for Nalin to argue that it was

MEMORANDUM OF DECISION–31

not registered due to a technical error in the registration system. This, unfortunately, is a harsh result for Nalin but this is the result the Idaho legislature intended when it enacted the ICRA.

Nalin offers a handful of arguments in an effort to overcome the unambiguous language of the ICRA requiring Nalin to have a current registration when it performed construction services on the Project. None of these arguments have merit.

First, Nalin argues that its lien and ability to recover, if prohibited, should only be prohibited to the extent of the labor provided, and not for the material furnished. Nalin relies on the language of Idaho Code § 54-5203, which provides the definition of the term "contractor" under the ICRA, to argue that the supply of materials by an unlicensed contractor is not prohibited by the ICRA. Nalin, however, fails to recognize Idaho Code § 54-5205, which expressly provides for the exemptions from registration under the ICRA. Idaho Code § 54-5205 exempts "[a] person who only furnishes materials, supplies or equipment without that person installing or fabricating them into or consuming them in the performance of the work of the construction contractor," so long as that "person does not hold himself out as a registered contractor." Idaho Code § 54-5205(2)(e). The legislature clearly contemplated Nalin's position when it drafted the ICRA and limited the exemption from registration to people who only furnish material, without installing it in the performance of the work as a contractor. Here, Nalin purchased the materials from ABC Supply and installed them on the Project. Nalin cannot divide the material and labor aspects of its work to avoid the contractor registration requirement.

Next, Nalin argues that the reinstatement of its registration in 2021 relates back to

MEMORANDUM OF DECISION–32

the effective period in 2018, curing the entire period that the registration was expired.

The ICRA and the general Division of Occupational and Professional Licenses statutes

do not support this argument. Nalin is correct that there does not appear to be any Idaho

case law discussing the effect of reinstatement on construction services performed during

the period that a contractor's registration was expired. "When state law is unsettled or has

not directly addressed an issue, this Court 'must predict how the highest state court would

decide the issue.'" *In re McCurdie*, 448 B.R. 826, 829 (Bankr. D. Idaho 2010) (citing *In

re Sterling Mining Co.,* 415 B.R. 762, 767–68 (Bankr. D. Idaho 2009) (quoting *First

Alliance Mortgage Co. v. Lehman Com. Paper, Inc. (In re First Alliance Mortgage Co.)*,

471 F.3d 977, 993 (9th Cir. 2006))).

To support this argument Nalin cites a South Dakota case involving the personal

liability of a corporation's president where the corporation entered into three subcontract

agreements while administratively dissolved. *See Black Hills Excavating Serv., Inc. v.

Retail Constr. Serv.*, Inc., 877 N.W.2d 318 (2016). In that case, the court pointed to the

South Dakota business corporation statute that provides: "When the reinstatement is

effective, it relates back to and takes effect as of the effective date of the administrative

dissolution and the corporation resumes carrying on its business as if the administrative

dissolution had never occurred." *Id.* at 326. Because the reinstatement resulted in a

seamless registration, the president was not personally liable for the corporation's

actions. *Id.*

Nalin's attempt to draw a similarity between the cases involving registration

pursuant to Idaho's business entity registration statutes and the ICRA fails to account for

MEMORANDUM OF DECISION–33

the legislature's purpose in enacting the ICRA and decision to forgo a provision providing for seamless registration upon reinstatement. Although Idaho's Uniform Business Organizations Code provides that "reinstatement relates back to and takes effect as of the effective date of the administrative dissolution," this express language is conspicuously absent in both the ICRA and general Division of Occupational and Professional Licenses statutes.

It is fundamental that when this Court is interpreting a statute, the Court "must presume that a legislature says in a statute what it means and means in a statute what it says there." *In re Harmon*, No. ID-20-1168-LSG, 2021 WL 3087744, at *5 (9th Cir. BAP July 20, 2021) (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S. Ct. 1146, 1149, 117 L. Ed. 391 (1992)). Thus, if a statute is unambiguous, the "judicial inquiry is complete." *Id.* (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S. Ct. 698, 701, 66 L. Ed. 2d 633 (1981)).

Idaho Code § 67-2614(7) unambiguously provides: "If a license, registration, certificate, or authority is not renewed on or before the expiration date, it shall be immediately canceled by the division following the date of expiration, unless otherwise specified in law or rule." Idaho Code § 67-2614(7). The ICRA does not provide an exception to this requirement and does not provide for any relation back to the date of expiration in the case that a registration is renewed. Nalin's registration expired on July 25, 2018 when it did not renew the registration before the expiration date and was not reinstated until July 29, 2021. The ICRA and general Division of Occupational and Professional Licenses statutes do not relate this reinstatement back to July 25, 2018.

MEMORANDUM OF DECISION–34

Nalin was therefore not registered pursuant to the ICRA when it performed construction services on the Project and waived any right to place a lien on the property or enforce the agreement entered into by the parties.[7]

## *Conclusion*

Based upon the forgoing, the Court will sustain Debtor's objection to Nalin's Claim. Nalin was not properly registered under the ICRA during the time that it performed construction services on the Project and waived any right to place a lien on the property or enforce any agreement made between the parties.

A separate order will be entered.

DATED:  April 15, 2022

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

---

[7] While the Court requested that the parties address, as part of their briefing, the continuation of perfection of Nalin's mechanic's lien and the sufficiency of the notice required under § 546(b)(2), Nalin's lack of registration pursuant to the ICRA is determinative of the validity of Nalin's lien and related Claim. Accordingly, the Court will not address whether Nalin properly maintained perfection of the lien in bankruptcy under § 546(b)(2). The Court appreciates the arguments made by the parties on this issue but will leave the discussion of the notice required under § 546(b)(2) for another day.

MEMORANDUM OF DECISION–35